**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CLAUDE L. PATTERSON, Derivatively on Behalf of CANOO INC., f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL J. HENNESSY, *et al.*,<br><br>Defendants,<br><br>- and -<br><br>CANOO INC., f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV,<br><br>Nominal Defendant. | C.A. No. 1:21-cv-00907-RGA |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
OR, IN THE ALTERNATIVE, STAY VERIFIED DERIVATIVE COMPLAINT**

OF COUNSEL:

KIRKLAND & ELLIS LLP

Mark C. Holscher, P.C. (*pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
(213) 680-8400
mark.holscher@kirkland.com

David A. Klein (*pro hac vice*)
2049 Century Park East
Los Angeles, CA  90067
(310) 552-4200
david.klein@kirkland.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Martin S. Lessner (No. 3109)
Daniel M. Kirshenbaum (No. 6047)
M. Paige Valeski (No. 6336)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
dkirshenbaum@ycst.com
bswadley@ycst.com

*Attorneys for Nominal Defendant Canoo Inc. and Defendants Tony Aquila, Ulrich Kranz, Paul Balciunas, Greg Ethridge, Thomas Dattilo, Foster Chiang, Rainer Schmueckle, Josette Sheeran, and Debra von Storch*

[Additional Defendants and Counsel on Signature Page]

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT ..................................................................................................2

STATEMENT OF FACTS ..........................................................................................................3

    A.    Canoo and Its Current Board ................................................................3

    B.    The Federal Securities Class Actions ....................................................5

    C.    This Derivative Action..........................................................................6

ARGUMENT ...............................................................................................................................7

I.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE OF PLAINTIFF'S UNEXCUSED FAILURE TO MAKE A DEMAND ON THE BOARD...........................................................................................................................7

    A.    Delaware Law Imposes a High Bar to Find Demand Futility ...............8

    B.    Plaintiff Does Not Plead That a Majority of Canoo's Current Board Received a Material Personal Benefit from the Alleged Misconduct...................10

    C.    Plaintiff Fails to Sufficiently Plead That a Majority of Canoo's Current Board Faces a Substantial Likelihood of Liability .................................................11

        1.    Only Two of Canoo's Nine Board Members Are Named As Defendants in Counts I and II .................................................12

        2.    Plaintiff Fails to Sufficiently Plead That a Majority of the Current Board Faces a Substantial Likelihood of *Caremark* Liability ..................12

        3.    Plaintiff Fails to Sufficiently Plead That a Majority of the Current Board Faces a Substantial Likelihood of Liability Based on Misrepresentations ......................................................................15

        4.    The Canoo Board Defendants Are Not Likely to Face Liability on Count IV.........................................................................18

    D.    Plaintiff Fails to Plead That Any Director Lacks Independence from an Interested Director ..................................................................................19

II.    THE COURT SHOULD, IN THE ALTERNATIVE, DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION ...............................................................................................20

A.  There Is No Actionable Claim for Violations of Exchange Act §§ 14(**a**) and 20(a) ......................................................................................................20

    1.  The Alleged False Statements Are Not Actionable ...................................20

    2.  Plaintiff's § 14(a) Claim Sounds in Fraud and Does Not Meet the Heightened Pleading Requirements of Rule 9(b) ......................................24

    3.  Plaintiff Fails to Adequately Allege Loss Causation .................................25

B.  Plaintiff's Claim for Contribution Under Exchange Act § 21D Is Not Ripe .........27

C.  The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Breach of Fiduciary Duty and Unjust Enrichment Claims ..................27

D.  There Is No Viable Claim for Breach of Fiduciary Duty or Unjust Enrichment ..............................................................................................28

III.  THE COURT SHOULD, IN THE ALTERNATIVE, STAY THIS DERIVATIVE ACTION PENDING RESOLUTION OF THE RELATED SECURITIES ACTIONS ....................................................................................................29

A.  A Stay Is Necessary to Prevent Prejudicial Harm to Canoo .................................30

B.  A Stay Is Necessary to Promote the Orderly Course of Justice and to Avoid Duplicative Litigation and a Waste of Resources....................................................32

C.  Plaintiff Will Not Be Prejudiced by a Stay ...........................................................34

D.  This Derivative Action Is in the Earliest Stages of Litigation ...............................35

IV.  CONCLUSION ..................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Wainscott*,
 2013 WL 6021953 (D. Del. Nov. 13, 2013) ........................................................10

*In re Advanta Corp. Sec. Litig.*,
 180 F.3d 525 (3d Cir. 1999), *abrogated on other grounds by Tellabs, Inc. v.*
 *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................25

*In re Aetna, Inc. Sec. Litig.*,
 617 F.3d 272 (3d Cir. 2010) ..................................................................................23

*In re AgFeed USA, LLC*,
 558 B.R. 116 (Bankr. D. Del. 2016) .....................................................................17

*Aronson v. Lewis*,
 473 A.2d 805 (Del. 1984), *overruled in part on other grounds by Brehm v.*
 *Eisner*, 746 A.2d 244 (Del. 2000) ...........................................................................8

*Ash v. Brunswick Corp.*,
 405 F. Supp. 234 (D. Del. 1975) ...........................................................................22

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................3

*Baca v. Insight Enterprises Inc.*,
 2010 WL 2219715 (Del. Ch. June 3, 2010) ..........................................................34

*Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*,
 544 F.2d 1207 (3d Cir. 1976) ................................................................................29

*Behrmann v. Brandt*,
 2020 WL 4432536 (D. Del. July 31, 2020) .....................................................15, 18

*Blake v. Canoo Inc., et al.*,
 No. 2:21-cv-02873 (C.D. Cal. filed Apr. 2, 2021) ...................................1, 5, 6, 31

*Brenner v. Albrecht*,
 2012 WL 252286 (Del. Ch. Jan. 27, 2012) ...............................................29, 31, 33

*Brudno v. Wise*,
 2003 WL 1874750 (Del. Ch. Apr. 1, 2003) ..........................................................34

*Butorin v. Blount*,
 2018 WL 4700217 (D. Del. Sept. 30, 2018) ......................................................7, 11

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)....................................................................21, 24, 25

*Canty v. Day*,
    13 F. Supp. 3d 333 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015)..........................17

*In re Caremark Int'l Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996)...................................................................................12

*In re Caterpillar Inc. Derivative Litig.*,
    2014 WL 2587479 (D. Del. June 10, 2014)..................................................................9

*In re China Auto. Sys. Inc. Derivative Litig.*,
    2013 WL 4672059 (Del. Ch. Aug. 30, 2013) ...............................................................15

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009)...................................................................................16

*In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*,
    2021 WL 4476954 (D. Del. Sept. 30, 2021)..................................................30, 32, 35

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985)........................................................................................30

*Cucci v. Edwards*,
    2007 WL 3396234 (C.D. Cal. Oct. 31, 2007).............................................................33

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007)...................................................................................11

*Dibattista v. Greco*,
    2021 WL 327399 (D. Del. Jan. 31, 2021)....................................................15, 18, 27

*In re Dow Chem. Co. Deriv. Litig.*,
    2010 WL 66769 (Del. Ch. Jan. 11, 2010)...................................................................10

*Garfield v. Shutterfly, Inc.*,
    857 F. App'x 71 (3d Cir. 2021) .................................................................................24

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
    2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ..............................................................13

*In re GoPro Inc.*,
    2020 WL 2036602 (Del. Ch. Apr. 28, 2020)..............................................................15

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. May 5, 2003) .......................................................................17

iv

*In re Hecla Min. Co. Derivative S'holder Litig.*,
   2014 WL 689036 (D. Idaho Feb. 20, 2014)................................................17

*Highland Legacy Ltd. v. Singer*,
   2006 WL 741939 (Del. Ch. Mar. 17, 2006)................................................19

*Hoeller v. Tempur Sealy Int'l, Inc.*,
   2019 WL 551318 (Del. Ch. Feb. 12, 2019) ...............................................18

*Howard v. Arconic Inc.*,
   395 F. Supp. 3d 516 (W.D. Pa. 2019)........................................................5

*In re INFOUSA, Inc. S'holders Litig.*,
   953 A.2d 963 (Del. Ch. 2007)..................................................................20

*In re Isolagen Inc., Sec. & Derivative Litig.*,
   2007 WL 1101278 (E.D. Pa. Apr. 10, 2007) .............................................34

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
   741 A.2d 377 (Del. Ch. 1999)..................................................................16

*Janklow on Behalf of Stericycle, Inc. v. Alutto*,
   2018 WL 6499869 (D. Del. Dec. 11, 2018)...............................................35

*Johansson v. Ferrari*,
   2015 WL 5000848 (D. Del. Aug. 20, 2015) ..............................................21

*Kamen v. Kemper Fin. Servs.*,
   500 U.S. 90 (1991).....................................................................................8

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007)....................................................................7, 8

*In re Keryx Biopharmaceuticals, Inc.*,
   454 F. Supp. 3d 407 (D. Del. 2020).........................................................23

*Kojak v. Canoo Inc., et al.*,
   No. 2:21-cv-02879 (C.D. Cal. filed Apr. 2, 2021).....................1, 5, 6, 31

*Laborers' Local #231 Pension Fund v. Cowan*,
   2018 WL 3243975 (D. Del. July 2, 2018) .................................................21

*Landis v. N. American Co.*,
   299 U.S. 248 (1936).............................................................................29, 30

*Gen. Elec. Co. ex rel. Levit v. Cathcart*,
   980 F.2d 927 (3d Cir. 1992)................................................................25, 27

*Mack v. Resolute Energy Corp.*,
  2020 WL 1286175 (D. Del. Mar. 18, 2020) ....................................................20, 26

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ...............................................................................15

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) ......................................................................8, 19

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
  2011 WL 2176479 (Del. Ch. May 31, 2011) ..............................................30

*Kates ex rel. MetLife, Inc. v. Kandarian*,
  2020 WL 4287374 (D. Del. July 27, 2020) .................................................10

*Metro v. Adv. Mobilecomm Tech, Inc.*,
  854 A.2d 121 (Del. Ch. 2004) ....................................................................16

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) .....................................................................21

*In re Nantkwest, Inc. Deriv. Litig.*,
  2018 WL 2303360 (Del. Ch. May 18, 2018) ..............................................17

*Nat'l Distillers & Chem. Corp. v. Dep't of Energy*,
  1980 WL 1057 (D. Del. Oct. 23, 1980) ......................................................28

*City of Detroit Police & Fire Ret. Sys. ex rel. NiSource, Inc. v. Hamrock*,
  2021 WL 877720 (D. Del. Mar. 9, 2021) ...................................................25

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
  2015 WL 4036179 (D. Del. July 1, 2015) ..................................................21

*Patel v. Duncan*,
  2021 WL 4482157 (Del. Ch. Sept. 30, 2021) .............................................19

*Postorivo v. AG Paintball Holdings, Inc.*,
  2008 WL 553205 (Del. Ch. Feb. 29, 2008) ................................................20

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) .............................................................................9

*In re Resolute Energy Corp. Sec. Litig.*,
  2021 WL 327385 (D. Del. Feb. 1, 2021), *appeal filed*, No. 21-1412 (3d Cir.
  Mar. 4, 2021)..........................................................................................25, 26

*In re Rh S'holder Derivative Litig.*,
  2019 WL 580668 (N.D. Cal. Jan. 23, 2019) ...............................................30

*Ryan v. Gursahaney*,
   2015 WL 1915911 (Del. Ch. Apr. 28, 2015) ...........................................................10

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)......................................................................................28

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992).................................................................................24, 25

*South v. Baker*,
   62 A.3d 1 (Del. Ch. 2012)..........................................................................................30

*Spiegel v. Bunstrock*,
   571 A.2d 767 (Del. 1990) .............................................................................................9

*In re STEC, Inc. Derivative Litig.*,
   2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ...............................................31, 33, 34

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2007) ................................................................................11, 12, 13

*In re Tableau Software, Inc. & Salesforce.com, Inc. Derivative Litig.*,
   2021 WL 495149 (D. Del. Feb. 10, 2021) .....................................................10, 11, 20

*Tansey v. Rogers*,
   2016 WL 3519887 (D. Del. June 27, 2016)............................................................29, 32

*Taylor v. Kissner*,
   893 F. Supp. 2d 659 (D. Del. 2012)............................................................................17

*Tilden v. Cunningham*,
   2018 WL 5307706 (Del. Ch. Oct. 26, 2018) ..............................................................19

*Tuckman v. Aerosonic Corp.*,
   1982 WL 17810 (Del. Ch. May 20, 1982) ..................................................................19

*In re Twitter, Inc. S'holder Derivative Litig.*,
   2018 WL 3536085 (D. Del. July 23, 2018) ....................................................... *passim*

*Tyler v. Canoo Inc., et al.*,
   No. 2:21-cv-03080 (C.D. Cal. filed Apr. 9, 2021)......................................1, 5, 6, 31

*UCB, Inc. v. Hetero USA Inc.*,
   277 F. Supp. 3d 687 (D. Del. 2017)............................................................................30

*United Food & Com. Workers Union v. Zuckerberg*,
   -- A.3d --, 2021 WL 4344361 (Del. Sept. 23, 2021)................................................8, 9

*In re Washington Mut. Inc.*,
    741 F. App'x 88 (3d Cir. 2018) ........................................................................28

*Wilkin v. Narachi*,
    2018 WL 1100372 (Del. Ch. Feb. 28, 2018) ...................................................17

*Wise v. Biowish Techs., Inc.*,
    2019 WL 192876 (D. Del. Jan. 11, 2019) .........................................................10

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ..................................................................................12

*Smith ex rel. Zion Oil & Gas, Inc. v. Carrillo*,
    2019 WL 6328033 (D. Del. Nov. 26, 2019) ............................................ *passim*

*Zomolosky v. Kullman*,
    70 F. Supp. 3d 595 (D. Del. 2014) .................................................................9, 11

**Statutes**

8 *Del. C.* § 102(b)(7) ...............................................................................................11

15 U.S.C. 78u-4(f)(2)(A) ........................................................................................27

15 U.S.C. § 78u-5 ....................................................................................................23

28 U.S.C. § 1367 .....................................................................................................27

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................24, 25

Fed. R. Civ. P. 12(b)(1) ..........................................................................................27

Fed. R. Civ. P. 12(b)(6) .....................................................................................25, 28

Fed. R. Civ. P. 23.1 ........................................................................................ *passim*

**Other Authorities**

17 C.F.R. § 230.415 .................................................................................................29

Defendants respectfully submit this opening brief in support of their motion to dismiss Plaintiff Claude L. Patterson's ("Plaintiff") Complaint or, in the alternative, stay this shareholder derivative action (the "Derivative Action") pending resolution of related, earlier-filed putative securities class actions pending in the Central District of California (the "Securities Actions").

## NATURE AND STAGE OF THE PROCEEDINGS

This lawsuit is a follow-on Derivative Action that advances claims regarding the liability that may arise from three Securities Actions filed against, among others, Nominal Defendant Canoo Inc. ("Canoo" or the "Company") in early April 2021 in the Central District of California. *See Kojak v. Canoo Inc., et al.*, No. 2:21-cv-02879 (C.D. Cal. filed April 2, 2021); *Blake v. Canoo Inc., et al.*, No. 2:21-cv-02873 (C.D. Cal. filed April 2, 2021); and *Tyler v. Canoo Inc., et al.*, No. 2:21-cv-03080 (C.D. Cal. filed April 9, 2021). Plaintiff, a purported Canoo stockholder, is attempting to displace Canoo's Board of Directors ("Board") and assert claims on behalf of the corporation against certain of its current and former officers and directors. Plaintiff filed this Derivative Action without first making a demand on Canoo's Board pursuant to Federal Rule of Civil Procedure 23.1. Given that the Derivative Action asserts claims to recover the liability that might arise (if any) from the Securities Actions, Canoo requested that Plaintiff stipulate to a stay of the Derivative Action pending resolution of the Securities Actions. Ex. 1 (emails re: stay).[1] Plaintiff refused without explanation. The parties stipulated to a briefing schedule for this response to Plaintiff's Complaint. D.I. 29. Defendants respectfully request that the Court dismiss Plaintiff's Complaint for failure to make a pre-suit demand or for failure to state a claim and lack of subject matter jurisdiction. In the alternative, Defendants respectfully request that the Court stay the Derivative Action pending the resolution of the Securities Actions.

---

[1]   "Ex." refers to Exhibits to the Declaration of David A. Klein ("Klein Decl.")).

## SUMMARY OF ARGUMENT

Plaintiff's claims should be dismissed based on a bedrock principle of Delaware corporate law—Canoo, a Delaware corporation, and its Board are supposed to decide whether to pursue these claims. Plaintiff is seeking to displace the Board, but Delaware law requires stockholders to ask the Board to pursue claims in the first instance (the "Demand"). Demand can be excused only in the narrow circumstance where plaintiffs plead with particularity why a majority of the Board is so conflicted that Demand is futile. Plaintiff has neither made Demand nor even approached the showing necessary to plead futility.

**1. *Plaintiff's failure to make a pre-suit Demand is unexcused*.** The Complaint does not allege a majority of directors is conflicted because they received a personal benefit or are beholden to an interested person. Instead, the only argument Plaintiff even attempts to advance regarding the Board's purported inability to consider a Demand is that a majority of directors supposedly face a substantial likelihood of liability associated with the claims Plaintiff is advancing. Plaintiff's argument lacks any merit. Merely suing directors does not render them "interested."

Not a single director, let alone a majority of the Board, faces a substantial likelihood of liability on any of Plaintiff's claims. *First*, Plaintiff did not bring his federal securities claims against a majority of the Board. *Second*, Plaintiff's breach of fiduciary duty claims, based on alleged misleading statements or failures to implement controls to prevent the alleged misleading statements, are not adequately pled. Canoo's certificate of incorporation exculpates directors from liability for any breaches of fiduciary duty that were not in bad faith. Delaware law also requires Plaintiff to plead that these alleged breaches of fiduciary duty were intentional or in bad faith. But the Complaint is devoid of any specific facts showing that any directors knowingly failed to correct alleged misleading statements or deliberately misinformed shareholders. Plaintiff comes nowhere close to pleading a bad faith breach of fiduciary duty claim against any director. *Third*, there is no

2

substantial likelihood of liability for Plaintiff's unjust enrichment claim, as it is premised entirely on the alleged breaches of fiduciary duty that Plaintiff fails to plead with sufficient particularity.

**2. *Plaintiff's claims are not actionable.*** For similar reasons, Plaintiff fails to clear substantive hurdles necessary to state a legal claim. Plaintiff fails to adequately plead essential elements of a § 14(a) claim, including the existence of a false statement and loss causation. Plaintiff's second claim for contribution seeks contribution for liabilities Canoo has yet to incur, and is therefore unripe and fails for lack of subject matter jurisdiction. Finally, this Court should not exercise supplemental jurisdiction over Plaintiff's state-law claims, which in any event fail because Plaintiff's conclusory allegations create no inference that defendants breached fiduciary duties or were unjustly enriched by insider trading. The Complaint should be dismissed.

**3. *In the alternative, this case should be stayed.*** If the Court declines to dismiss the Complaint, the Court should stay this case pending resolution of the Securities Actions. Litigating this case when the Securities Actions are pending is not in Canoo's or its shareholders' best interest; and thus, a stay is necessary to prevent prejudicial harm to Canoo, which Plaintiff purports to represent. Absent a stay, Plaintiff will seek to prove—purportedly on Canoo's behalf—the very allegations against which Canoo is *defending* in the Securities Actions. Courts routinely stay derivative litigation in situations like this. A stay also is warranted because litigating substantially similar claims in two different cases is inefficient and an unnecessary waste of resources.

**STATEMENT OF FACTS[2]**

**A.     Canoo and Its Current Board**

Canoo is an electric vehicle ("EV") company that has developed a breakthrough EV

---

[2]   Defendants recite Plaintiff's allegations here solely for the purposes of the motion, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), but do not concede their accuracy.

3

platform to facilitate rapid development of multiple EV programs.  D.I. 1 ¶ 70.  Canoo became a

public company in a merger with a special purpose acquisition company ("SPAC").

On August 18, 2020, Canoo Holdings Ltd. announced that it entered into a merger

agreement with Hennessy Capital Acquisition Corp. IV ("HCAC IV"), a SPAC listed on the

Nasdaq Stock Market ("Nasdaq").  D.I. 1 ¶ 5.  HCAC IV's private equity sponsor was Hennessy

Capital IV LLC, an affiliate of Hennessy Capital Group LLC (collectively, "Hennessy").   On

December 21, 2020, HCAC IV stockholders approved the merger and the merger closed.  The

combined company was named Canoo Inc. and continued to be listed on Nasdaq.  D.I. 1 ¶ 5.  As

reflected briefly below and in the Company's most recent Proxy Statement, Ex. 2 (4/29/2021

Proxy) at 6–10, Canoo is currently managed by nine highly qualified directors:

| Canoo Directors (Appointment Date) | Background |
|---|---|
| Tony Aquila (12/21/2020) | Canoo's Executive Chairman and CEO and former Chairman and CEO of the publicly traded company Solera Holdings Inc. |
| Foster Chiang (12/21/2020) | Director at TES Touch Embedded Solutions and former Vice Chairman of TPK Holding Co. Ltd, a company listed on the Taiwan Stock Exchange |
| Thomas Dattilo (12/21/2020) | Chairman of L3 Harris Technologies, Inc., a publicly traded company |
| Claudia Romo Edelman (03/15/2021) | Founder and CEO of the We Are All Human Foundation and former Chief of Public Advocacy at UNICEF |
| Greg Ethridge (12/21/2020) | President, COO, and Director of Hennessy Capital Investment Corp. V, Chairman of Motorsports Aftermarket Group, and former President, COO, and Director of HCAC IV |
| Arthur Kingsbury (03/15/2021) | Former Vice Chairman and COO of BPI Communications and former COO of VNU-USA who served on the boards of six public companies |
| Josette Sheeran (12/21/2020) | Canoo's President and Executive Chair of the McCain Institute for International Leadership who served as a Deputy U.S. Trade Representative and Undersecretary of State for Economics, Energy, Transportation and Agriculture |
| Rainer Schmueckle (12/21/2020) | Chairman of the Board of Directors at STIGA S.p.A and former COO of Mercedes Car Group at Daimler AG |

4

| Canoo Directors (Appointment Date) | Background |
|---|---|
| Debra von Storch (01/12/2021) | Director of the publicly traded company CSW Industrials |

Aside from Aquila, Ethridge, and Sheeran, all of them have been and are designated independent directors under Nasdaq's listing rules.[3]

### B.     The Federal Securities Class Actions

On a March 29, 2021 Earnings Release Conference Call, Canoo announced that its Board approved de-emphasizing two parts of its business model: (i) providing contract engineering services to other companies; and (ii) offering vehicles to consumers through a subscription service. *See* D.I. 1 ¶¶ 111–118; Ex. 4 (3/29/21 Earnings Call Tr.) at 5, 14, 16.[4]  After this announcement, Canoo's stock price dropped and, in early April 2021, purported shareholders filed the Securities Actions on behalf of individuals who purchased stock in HCAC IV or Canoo between August 18, 2020 and March 29, 2021.   The three Securities Actions named as defendants Canoo, Aquila, Canoo's former CEO Ulrich Kranz, and Canoo's former CFO Paul Balciunas.   Ex. 5 ("*Blake* Compl.") ¶¶ 7–10; Ex. 6 ("*Tyler* Compl.") ¶¶ 7–10.   One of the Securities Actions also named as defendants Ethridge and other officers and directors of HCAC IV.   Ex. 7 ("*Kojak* Compl.") ¶¶ 13–24.

The Securities Actions allege that Canoo and the individual defendants made statements

---

[3]   Nasdaq listing rules define "Independent Director" to mean a person other than an Executive Officer or employee of the Company or any other individual having a relationship which, in the opinion of the Company's board of directors, would interfere with the exercise of independent judgment in carrying out the responsibilities of a director.  Sheeran was designated independent when Plaintiff filed the Complaint.  She is no longer independent under Nasdaq listing rules, as Canoo employed her as President on July 22, 2021.  Ex. 3 (7/26/21 Form 8-K), Item 5.02.

[4]   The Court may take judicial notice of the earnings call transcript.  *See, e.g.*, *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 529 n.1 (W.D. Pa. 2019).

regarding its engineering services business and subscription model that were false, misleading, or omitted material facts. *Blake* Compl. ¶¶ 21–38, 52–65; *Kojak* Compl. ¶¶ 28–36, 63–77; *Tyler* Compl. ¶¶ 21–31, 52–65. In particular, the Securities Actions allege that these purportedly misleading statements concern the role of engineering services in Canoo's business, the revenue it would generate, and Canoo's engineering services arrangement with Hyundai. *Blake* Compl. ¶¶ 21–38, 52–65; *Kojak* Compl. ¶¶ 28–36, 63–77; *Tyler* Compl. ¶¶ 21–31, 52–65. The plaintiffs contend that the defendants supposedly knew and failed to disclose that Canoo's engineering services business would not generate meaningful revenue in 2021 and Canoo would no longer have a relationship with Hyundai. *Blake* Compl. ¶ 38; *Kojak* Compl. ¶ 36; *Tyler* Compl. ¶ 38. The Securities Actions assert claims for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder as well as Section 20(a) of the Exchange Act. *Blake* Compl. ¶¶ 52–65; *Kojak* Compl. ¶¶ 63–77; *Tyler* Compl. ¶¶ 52–65. Motions to consolidate the Securities Actions and appoint a lead plaintiff and counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA") of 1995, 15 U.S.C. §§ 77z-l(a)(3)(B) and 78u-4(a)(3)(B), are pending before Judge Fernando Olguin in the Central District of California.[5]

### C.    This Derivative Action

On June 29, 2021, Plaintiff commenced this Derivative Action without first making a Demand on the Board. Plaintiff is a purported Canoo stockholder, who purchased stock in December 2020. D.I. 1 ¶ 34. Plaintiff sued seven of Canoo's nine current directors: Aquila;

---

[5]    On April 29, 2021, the SEC advised Canoo that it opened an investigation related to, among other things, HCAC IV's merger with the Company. The SEC also informed Canoo that the investigation does not mean that it has concluded that anyone has violated the law, and does not mean that it has a negative opinion of any person, entity or security. Canoo intends to provide the requested information and cooperate fully with the SEC investigation. Ex. 8 (10-Q) at 18.

Chiang; Datillo; Ethridge; Schmueckle; Sheeran; and von Storch ("Canoo Board Defendants"). Plaintiff also sued pre-merger officers and directors of HCAC IV: Daniel J. Hennessy; Nicholas A. Petruska; Bradley Bell; Peter Shea; Richard Burns; James F. O'Neil III; Juan Carlos Mas; and Gretchen McClain ("HCAC IV Defendants").   In addition, Plaintiff sued Kranz and Balciunas (collectively with the Canoo Board Defendants and the HCAC IV Defendants, the "Individual Defendants").  Plaintiff's Complaint named Hennessy and Canoo as additional defendants (Canoo is named only as a nominal defendant).  D.I. 1 ¶¶ 35–55.  Plaintiff brings claims for: (1) violations of Exchange Act §§ 14(a) and 20(a) against certain of the Individual Defendants and Hennessy; (2) contribution under Exchange Act § 21D against the Individual Defendants named as defendants in the Securities Actions; (3) breach of fiduciary duties against the Individual Defendants; and (4) unjust enrichment against the Individual Defendants.  Much like the Securities Actions, Plaintiff seeks to hold Defendants liable for purportedly misleading statements about Canoo's engineering services business and for potential damages that Canoo might incur in the Securities Actions.  *See* D.I. 1 ¶¶ 27–28, 122.  Plaintiff brings all his claims, including the securities claims, derivatively.

## **ARGUMENT**

### I.     **THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE OF PLAINTIFF'S UNEXCUSED FAILURE TO MAKE A DEMAND ON THE BOARD**

The Complaint should be dismissed under Federal Rule of Civil Procedure 23.1.  Delaware law, which governs this issue since Canoo is a Delaware corporation, requires stockholders to make a Demand on the Board before pursuing a derivative lawsuit.[6]  Plaintiff has not done so.  Nor

---

[6]     In shareholder derivative actions, federal courts apply "the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused."  *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007); *see also Butorin v. Blount*, 2018 WL 4700217, at *4 (D. Del. Sept. 30, 2018) ("KBR is a Delaware corporation and, therefore, Delaware law governs the demand futility or refusal analysis.") (citation omitted).

does he plead with the required specificity facts to fit the narrow circumstances in which Demand would be excused.  Those facts do not exist.

A.      **Delaware Law Imposes a High Bar to Find Demand Futility**

"[D]irectors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  The directors' authority "extends to decisions about what remedial actions a corporation should take after being harmed, including whether the corporation should file a lawsuit against its directors, its officers, its controller, or an outsider." *United Food & Com. Workers Union v. Zuckerberg*, -- A.3d --, 2021 WL 4344361, at *6 (Del. Sept. 23, 2021). Accordingly, "[i]n order for a stockholder to . . . bring a derivative action on behalf of the corporation, the stockholder must (1) make a demand on the company's board of directors or (2) show that demand would be futile." *Id.*  "The purpose of the demand-futility analysis is to assess whether the board should be deprived of its decision-making authority because there is reason to doubt that directors would be able to bring their impartial business judgment to bear on a litigation demand." *Id.* at *16.  "[D]irectors are entitled to a *presumption* that they were faithful to their fiduciary duties." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004).  Demand is excused only under "extraordinary conditions." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991).  "[T]he demand requirement is not excused lightly because derivative litigation upsets the balance of power that [Delaware law] establishes between a corporation's directors and its stockholders." *Zuckerberg*, 2021 WL 4344361, at *7.

In a derivative action, a plaintiff who failed to make a Demand "is obliged to plead, with particularity, facts that establish demand futility." *Kanter*, 489 F.3d at 176; *see also* Fed. R. Civ. P. 23.1(b)(3)(B).  To satisfy these "stringent requirements of factual particularity[,]" a complaint must "set forth particularized factual statements that are essential to the claim." *Smith ex rel. Zion*

*Oil & Gas, Inc. v. Carrillo*, 2019 WL 6328033, at *2 (D. Del. Nov. 26, 2019) (citation and internal quotations omitted).  Conclusory allegations are insufficient to establish demand futility under Rule 23.1.  *Zomolosky v. Kullman*, 70 F. Supp. 3d 595, 607 (D. Del. 2014).  Courts are "not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false."  *In re Caterpillar Inc. Derivative Litig.*, 2014 WL 2587479, at *7 (D. Del. June 10, 2014).

In *United Food & Commercial Workers Union v. Zuckerberg*, the Delaware Supreme Court recently articulated a three-part test for assessing whether Demand is futile:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

2021 WL 4344361, at *17.  Demand is not excused if the answers to these three questions are "no" for at least half of the members of the board of directors at the time that the complaint was filed. *Id.* at *6 (defining the "Demand Board" to consist of the directors in place "[w]hen [Plaintiff] filed its complaint").  Where, as here, a plaintiff alleges that directors are "interested" due to the risk of personal liability, the plaintiff must plead particularized facts showing a "substantial likelihood" of liability, not a "mere threat."  *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).  That the directors are defendants in the underlying lawsuit does not render them "interested."  *Spiegel v. Bunstrock*, 571 A.2d 767, 774 n.14 (Del. 1990).  Rather, Delaware courts excuse Demand "only in the rare case when a plaintiff is able to show director conduct that is *so egregious on its face*

that . . . a substantial likelihood of director liability therefore exists." *In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *12 (Del. Ch. Jan. 11, 2010).

Courts in this district routinely dismiss derivative actions for failure to sufficiently plead demand futility under Rule 23.1. *See, e.g.*, *In re Tableau Software, Inc. & Salesforce.com, Inc. Derivative Litig.*, 2021 WL 495149, at *4 (D. Del. Feb. 10, 2021); *Smith*, 2019 WL 6328033, at *1; *Wise v. Biowish Techs., Inc.*, 2019 WL 192876, at *3 (D. Del. Jan. 11, 2019); *Abrams v. Wainscott*, 2013 WL 6021953, at *5 (D. Del. Nov. 13, 2013). Plaintiff's conclusory allegations fail to pass this high hurdle as to a single director, let alone a majority, and thus he cannot pursue these claims.

**B.    Plaintiff Does Not Plead That a Majority of Canoo's Current Board Received a Material Personal Benefit from the Alleged Misconduct**

None of the Complaint's allegations show that any director received a material personal benefit from the alleged misconduct. *See* D.I. 1 ¶¶ 140–48 (futility allegations). Plaintiff claims that Aquila and Ethridge are interested because Canoo has employed them. But "simple allegations that a director is also employed by the company, without more, are insufficient to show that director lacks independence." *Smith*, 2019 WL 6328033, at *5. The Complaint also mentions salaries and Canoo equity that directors received as compensation. D.I. 1 ¶¶ 44, 46, 50–54. That too is insufficient as a matter of law. Under Delaware law, mere allegations of ordinary director compensation are not enough to show demand futility." *See Kates ex rel. MetLife, Inc. v. Kandarian*, 2020 WL 4287374, at *12 n.9 (D. Del. July 27, 2020) (holding that "conclusory allegations related to Defendants' compensation," without more, are insufficient to show demand futility); *Ryan v. Gursahaney*, 2015 WL 1915911, at *8 (Del. Ch. Apr. 28, 2015) (similar).

Likewise, Plaintiff's conclusory allegations that the Individual Defendants received "share-based compensation awarded at share prices that were artificially inflated by their misconduct" are

insufficient.  *See* D.I. 1 ¶¶ 119, 175.  Plaintiff fails to plead particularized facts showing that any director sold his or her shares, or otherwise profited from, the allegedly inflated price before the decline in Canoo's stock price in late March and early April 2021.  Although the Complaint generally alleges that the "Individual Defendants" sold Canoo stock at inflated prices, *id.* ¶ 181, it does not identify which defendants did so or the circumstances of any of the sales, and therefore does not satisfy the pleading requirements of Rule 23.1.  *See Tableau Software*, 2021 WL 495149 at *2–3 (holding that a complaint failed to adequately allege demand futility when it failed to "plead facts 'specific to each director'") (quoting *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007)).[7]  Plaintiff's Complaint accordingly fails to plead that a majority of Canoo's Board received any material personal benefit from any alleged misconduct.

### C.    Plaintiff Fails to Sufficiently Plead That a Majority of Canoo's Current Board Faces a Substantial Likelihood of Liability

Plaintiff's Complaint also does not plead with sufficient particularity that a majority of the Board faces a substantial likelihood of liability on any of Plaintiff's claims.  Canoo's certificate of incorporation contains a Delaware General Corporation Law § 102(b)(7) provision, which permits corporate charters to "exculpate directors from monetary liability for a breach of the duty of care" provided their actions were not in bad faith.  *Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2007).[8]  To

---

[7]    Indeed, it is unclear if the Complaint is alleging that the Canoo Board Defendants sold shares at inflated prices, as the Complaint defines "Individual Defendants" to include individuals who are not members of the Demand Board.  D.I. 1 ¶ 55.  This alone precludes a finding of demand futility on these grounds.  *See Butorin*, 2018 WL 4700217 at *7 (finding a complaint that merely alleged that "senior management" knew of key concerns to be insufficient when only one defendant director was a member of senior management).

[8]    Canoo's § 102(b)(7) provision extends to the fullest extent permitted by Delaware law.  Ex. 9 (Certificate of Incorporation).  The Court may take judicial notice of the certificate of incorporation.  *Zomolosky*, 70 F. Supp. 3d at 607 n.16 (taking judicial notice of company's charter).

plead an unexculpated claim, plaintiffs must allege "particularized facts that, if proven, would show that a majority of the [board] defendants knowingly engaged in 'fraudulent' or 'illegal' conduct or breached 'in bad faith'" their fiduciary duties. *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). Plaintiff has not met this high bar.

### 1. Only Two of Canoo's Nine Board Members Are Named As Defendants in Counts I and II

Plaintiff brings claims for violations of §§ 14(a) and 20(a) of the Exchange Act (Count I) and contribution under Exchange Act § 21D (Count II) against only two directors on Canoo's Board: Aquila and Ethridge. Setting aside that the claims against these individuals fail as a matter of law (*see infra* § II.A-B), Plaintiff effectively concedes that a majority of the Board (seven of the nine directors) cannot face a substantial likelihood of liability on Counts I and II of the Complaint, and Plaintiff thus fails to plead Demand is futile for these claims.[9]

### 2. Plaintiff Fails to Sufficiently Plead That a Majority of the Current Board Faces a Substantial Likelihood of *Caremark* Liability

The third claim for relief—breach of fiduciary duties—fares no better. Plaintiff's theory is that the directors failed to "ensure the Company's compliance with relevant legal and regulatory requirements, as well as its own internal policies and procedures," or "implement, maintain and monitor adequate internal controls," leading to purported misleading statements about Canoo's engineering services business. D.I. 1 ¶ 175. This is a *Caremark* claim, which is recognized as "possibly the most difficult [claim] in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

---

[9]    As to Aquila and Ethridge, Plaintiff fails to plead a substantial likelihood of liability on Counts I and II for the reasons detailed below, *infra* § II.A–B. Further, because Plaintiff alleges that "Aquila and Ethridge . . . violated § 14(a) of the Exchange Act by negligently making material misstatements and omitting material facts" (D.I. 1 ¶ 146), the "Section 14(a) claims are exculpated claims." *Smith*, 2019 WL 6328033, at *8; *see also Stone*, 911 A.2d at 367.

To establish *Caremark* liability, Plaintiff must show that either "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370. "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Id.*; *see also id.* ("[A] showing of bad faith conduct . . . is essential to establish director oversight liability."); *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *20 (Del. Ch. Oct. 12, 2011) (dismissing *Caremark* claim because, "[t]o act in bad faith, there must be scienter on the part of the defendant director").

The Complaint does not come close to meeting this demanding standard for *any* director, let alone the required majority of five of the nine directors. Rather, in his 63-page Complaint, Plaintiff makes only boilerplate, conclusory allegations that directors "ma[de] or allow[ed] to be made improper statements in Canoo's (and/or HCAC IV's) SEC filings, press releases and other public statements." D.I. 1 ¶ 144. Plaintiff identifies only a single allegedly "improper" statement made when at least five Canoo Board Defendants served on the board—the "January 12 [sic], 2021 Shelf Registration Statement [S-1]," which purportedly "misrepresented and/or omitted material fact [sic] around the revenues derived from the Company's engineering and technology services business and the status of Canoo's relationship with Hyundai." *Id.* Plaintiff also alleges that because Dattilo, Schmueckle, and von Storch are members of the Audit Committee, they were supposedly responsible for "knowingly or recklessly allowing the improper statements contained in the false and misleading January 12 [sic], 2021 Shelf Registration Statement" and other unidentified "post-merger communications." *Id.* ¶ 145. These allegations are insufficient as a matter of law because Plaintiff fails to plead particularized facts to support them.

13

This Court's decision in *Smith* is on point.  In *Smith*, the derivative plaintiff alleged that directors caused an oil and gas exploration company "to fail to maintain internal controls . . . and . . . make false and misleading statements about [the company's] business, operations, [and] prospects . . . ."  *Smith*, 2019 WL 6328033, at *1.  The Court rejected inferences that the directors "knowingly issued statements misrepresenting [the company's] prospects of generating revenue" because these "inferences of knowledge" were not "supported by particularized facts as required by Rule 23.1."  *Id.* at *5.  The Court noted that the complaint failed to "allege specific facts to demonstrate that Defendants knew . . . that the oil well would not be commercially successful." *Id.*

As in *Smith*, Plaintiff fails to allege particularized facts showing that directors knowingly allowed Canoo to make misleading statements about its engineering services business or prospects. Plaintiff's claims rely only on a March 29, 2021 announcement of fourth quarter 2020 revenue, which did not include engineering services revenue, and a March 29, 2021 earnings call announcing that Canoo would "'de-emphasize the . . . contract engineering services line'" and indicating that its "arrangement with Hyundai had been placed 'on hold.'"  D.I. 1 ¶¶ 111–12. Plaintiff does not allege any particularized facts showing that Canoo abandoned its engineering services business line or an opportunity for additional work with Hyundai more than two months before these announcements, let alone particularized facts showing what directors knew and did or did not do at that time.  In fact, the timing of the Canoo Board Member Defendants' appointments to the Board belie an inference that a majority consciously disregarded their duties.[10]

---

[10]  Four of the seven Canoo Board Defendants—Datillo, Schmueckle, Sheeran, and von Storch— did not have roles at Canoo until they joined the Board shortly before the January 13, 2021 S-1 was filed with the SEC.  Datillo, Schmueckle, and Sheeran joined on December 21, 2020, and von Storch joined on January 12, 2021.

Further, Plaintiff cannot infer deliberate, knowing directorial inaction by referencing the remits of the Audit Committee. *E.g.*, *In re China Auto. Sys. Inc. Derivative Litig.*, 2013 WL 4672059, at *8 n.94 (Del. Ch. Aug. 30, 2013) (rejecting as "non-particularized" claims that committee members violated their *Caremark* duties simply because a subject was within the "responsibilities assigned to the Committee in its charter"). Nor can Plaintiff state a *Caremark* claim based on the mere approval or signing of public filings or registration statements. *Behrmann v. Brandt*, 2020 WL 4432536, at *16 (D. Del. July 31, 2020). Canoo's January 13, 2021 S-1 referred to "projected revenue . . . in 2021." D.I. 1 ¶ 107. Plaintiff does not plead any particularized factual basis from which the Court can infer that the Canoo Board Defendants knew that any statements about Canoo's projected 2021 revenue were false or misleading. *See Dibattista v. Greco*, 2021 WL 327399, at *13 (D. Del. Jan. 31, 2021) (concluding that derivative plaintiff did not sufficiently plead demand futility as to a *Caremark* claim based on allegations that the demand board allowed false and misleading statements regarding revenue projections); *In re GoPro Inc.*, 2020 WL 2036602, at *14 (Del. Ch. Apr. 28, 2020) (same). Thus, there is no basis to say that the Board willfully ignored red flags such that they face a substantial likelihood of liability.

### 3. Plaintiff Fails to Sufficiently Plead That a Majority of the Current Board Faces a Substantial Likelihood of Liability Based on Misrepresentations

Plaintiff also alleges that Board members breached their fiduciary duties by "affirmatively making, allowing, controlling, and/or failing to correct improper and misleading statements . . . ." D.I. 1 ¶ 175(a). This alleged misrepresentation claim is based on *Malone v. Brincat*, 722 A.2d 5 (Del. 1998). When plaintiffs challenge purported "misdisclosure . . . in the absence of a request for shareholder action," they must show with the requisite particularity that the directors "knowingly disseminate[d] false information." *Id.* at 9. "[P]laintiffs must plead particularized factual allegations that support the inference that the disclosure violation was made in bad faith,

knowingly or intentionally." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009).[11]

Plaintiff does not meet *any* of these requirements.  Plaintiff's main theory appears to be that the Board should have made disclosures to investors but did not.  *See* D.I. 1 ¶ 82.  But absent a request for specific stockholder action, Delaware imposes no affirmative duty of disclosure. "The duty of disclosure is merely a specific application of the more general fiduciary duty of loyalty that applies only in the setting of a transaction or other corporate event that is being presented to the stockholders for action." *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 388–89 (Del. Ch. 1999).  Such a claim thus necessarily fails.

As noted above, the only statements by a majority of the Board that Plaintiff alleges were false or misleading are in the January 13, 2021 SEC Form S-1 Registration Statement.  The S-1 did not request stockholder action, as it registered stock for sale.  D.I. 1 ¶ 15.  The only specific statements that Plaintiff alleges were false or misleading are the statements in the S-1 that Canoo's engineering and technology services business was "supportive of a projected $120 million of revenue in 2021" and that "[i]n February 2020, [Canoo] entered into an agreement with Hyundai Motor Group to co-develop a future EV platform . . . ." *See* D.I. ¶¶ 107–08.  According to Plaintiff, these statements were false and misleading because the Canoo Board Defendants allegedly failed to disclose that Canoo "had already, or was in the process of, abandoning [sic] its engineering and technology services business" (D.I. ¶ 83(a)), "was no longer generating engineering and technology services revenues" (D.I. ¶ 83(b)), and "had already, or was in the process of, curtailing

---

[11]   *Malone* is a "high bar," intended to ensure that Delaware fiduciary duty claims were "not discordant with federal standards and that [Delaware] law did not encourage a proliferation of disclosure claims outside the discretionary vote or tender context." *Metro v. Adv. Mobilecomm Tech, Inc.*, 854 A.2d 121, 158 (Del. Ch. 2004).

[sic] its arrangement with Hyundai." (D.I. ¶ 83(c)).  *See* D.I. ¶¶ 83, 109.  Given that the statements in the S-1 were made months before Canoo announced it would be de-emphasizing its engineering services business, Plaintiff fails to plead with the requisite particularity that any statements in the S-1 were false when the S-1 was filed.

Plaintiff also fails to meet the extraordinarily demanding scienter standard.  Plaintiff must plead "factual allegations speaking to the directors' subjective awareness of the allegedly false and misleading statements."  *In re Hecla Min. Co. Derivative S'holder Litig.*, 2014 WL 689036, at *12 (D. Idaho Feb. 20, 2014).  Plaintiff must plead individualized facts showing that a majority of the current directors (some of whom were not on the Board at the relevant times) "understood that the statements in question were false or materially misleading when made."  *Id.*; *In re Nantkwest, Inc. Deriv. Litig.*, 2018 WL 2303360, at *4 (Del. Ch. May 18, 2018); *In re AgFeed USA, LLC*, 558 B.R. 116, 125 (Bankr. D. Del. 2016); *Taylor v. Kissner*, 893 F. Supp. 2d 659, 671 (D. Del. 2012).

The Complaint is devoid of any specific facts as to what any director knew—either about Canoo's decision to de-emphasize its engineering services business or about the contents of the voluminous securities disclosures.  Courts have consistently rejected *Malone* claims without specifics of what each director knew and when.  *See, e.g.*, *Guttman v. Huang*, 823 A.2d 492, 498 (Del. Ch. May 5, 2003); *Canty v. Day*, 13 F. Supp. 3d 333, 349 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015).  Plaintiff's theory of intentional deception is also nonsensical:  in January 2021, why would directors deliberately misrepresent revenue the Company would receive in 2021, when the accuracy of the statements would manifest only a short time later?  Nor do plaintiffs even attempt to plead individual reliance.  *See Wilkin v. Narachi*, 2018 WL 1100372, at *15 (Del. Ch. Feb. 28, 2018) (finding *Malone* claim could not support demand futility if individual reliance was not pleaded).

17

Plaintiff's vague allegations of misleading disclosures about Canoo's engineering services business, devoid of particularized facts showing that directors knew they were making allegedly false statements, or individual reliance, do not plead a *Malone* fiduciary misrepresentation claim. *See also Hoeller v. Tempur Sealy Int'l, Inc.*, 2019 WL 551318, at *13 (Del. Ch. Feb. 12, 2019).

* * *

Plaintiff falls well short of the high standard necessary to show that a majority of the current Board faces a substantial likelihood of liability for breach of fiduciary duty, either on a *Caremark* or *Malone* theory.[12]  Plaintiff thus fails to plead demand futility, and Count III must be dismissed.

### 4. The Canoo Board Defendants Are Not Likely to Face Liability on Count IV

Count IV (unjust enrichment) similarly does not adequately plead demand futility.  Plaintiff claims that the Individual Defendants "were unjustly enriched as a result of the compensation and officer and director remuneration they received while breaching their fiduciary duties."  D.I. 1 ¶ 180.  This claim is predicated on breaches of fiduciary duties that Plaintiff failed to sufficiently plead, and it thus falls with that claim.  *See Smith*, 2019 WL 6328033, at *8 (finding that plaintiffs failed to demonstrate demand futility on unjust enrichment claim predicated on breaches of fiduciary duty "insufficiently supported by particularized facts."); *Dibattista*, 2021 WL 327399, at *9 n.5 (same); *see also Behrmann*, 2020 WL 4432536, at *17 ("Courts have rejected similar allegations that recipients of compensation were unjustly enriched . . . by receiving payment while

---

[12]  Plaintiff also alleges that Canoo Board Defendants breached their fiduciary duties by "[p]aying or causing Canoo to pay themselves compensation while in breach of their fiduciary duties, which also included share-based compensation awarded at share prices that were artificially inflated by their misconduct."  D.I. 1 ¶ 175(d).  But receiving routine compensation, including share-based compensation, is not sufficient to plead a breach of fiduciary duty.  *See, e.g.*, *Behrmann*, 2020 WL 4432536, at *4 ("Courts have rejected similar allegations that recipients of compensation were unjustly enriched and committed waste by receiving payment while breaching their fiduciary duties.").  Thus, there is no likelihood of liability on this basis either.

18

breaching their fiduciary duties.").

Plaintiff also asserts that the Individual Defendants were "unjustly enriched" by selling Canoo stock while in possession of material, non-public information that "artificially inflated the price of Canoo stock." D.I. 1 ¶ 181. Plaintiff's failure to plead any particularized facts showing that the Individual Defendants knew of any material, non-public information precludes demand futility on this claim. Moreover, it is well-established that conclusory allegations of insider trading, like those in the Complaint, are insufficient to plead an unjust enrichment claim. *See Tilden v. Cunningham*, 2018 WL 5307706, at *19 (Del. Ch. Oct. 26, 2018) (citing *Tuckman v. Aerosonic Corp.*, 1982 WL 17810, at *11 (Del. Ch. May 20, 1982)). Thus, Count IV fails both for this additional pleading deficiency and for the reasons Count III fails.

**D.      Plaintiff Fails to Plead That Any Director Lacks Independence from an Interested Director**

Finally, even if the Complaint adequately pleaded that a director lacked independence, Plaintiff cannot meet the *Zuckerberg* test by claiming that directors are beholden to an interested director. Delaware courts have held that non-interested directors are only beholden to interested directors for demand futility purposes if the relationship between the directors is so extensive that "the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Beam*, 845 A.2d at 1052. The Complaint fails to mention *any* relationship between directors beyond their common service on Canoo's Board, let alone one that is so extensive as to satisfy this exacting standard. *See generally* D.I. 1 ¶¶ 44, 46, 50–54. Delaware courts have consistently found common board service to be "insufficient to show that [directors] were dominated by or beholden to one another" even in cases where directors "'served together on a few boards of unaffiliated companies.'" *Patel v. Duncan*, 2021 WL 4482157, at *20 (Del. Ch. Sept. 30, 2021) (quoting *Highland Legacy Ltd. v. Singer*, 2006 WL 741939, at *5 (Del.

19

Ch. Mar. 17, 2006)).[13]  Thus, Plaintiff also failed to meet the third prong of the *Zuckerberg* test.

## II.   THE COURT SHOULD, IN THE ALTERNATIVE, DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION

Even assuming, for the sake of argument, that Plaintiff adequately pleaded demand futility, the Complaint does not state any claims for relief and the Court lacks subject matter jurisdiction.

### A.   There Is No Actionable Claim for Violations of Exchange Act §§ 14(a) and 20(a)

The Complaint's first claim is that the HCAC IV Defendants, Ethridge, Kranz, Aquila, Balciunas, and Hennessy (the "Proxy Defendants") are liable for violating §§ 14(a) and 20(a) of the Exchange Act.  Plaintiff alleges that proxy solicitations for stockholder votes in favor of the merger violated § 14(a) by making material misstatements about Canoo's business, operations and prospects.  D.I. 1 ¶ 160.  Plaintiff also alleges that all of the Proxy Defendants are "also, or alternatively, liable as control persons of Canoo (or its predecessor) pursuant to § 20(a) of the Exchange Act."  D.I. 1 ¶ 165.  Plaintiff's § 14(a) claim fails as a matter of law.  Absent a § 14(a) violation, Plaintiff's § 20(a) claim fails too.  *Mack v. Resolute Energy Corp.*, 2020 WL 1286175, at *14 (D. Del. Mar. 18, 2020) ("Because Plaintiffs do not adequately plead a Section 14(a) violation, Plaintiffs' Section 20(a) claim necessarily fails.").

#### 1.   The Alleged False Statements Are Not Actionable

None of the alleged misstatements is actionable.  Plaintiff argues that the Proxy Defendants

---

[13]  The Complaint's conclusory allegations that "Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct" (D.I. 1 ¶¶ 149–154) also cannot satisfy Delaware law's requirement of a "detailed, fact-intensive, director-by-director analysis" for demand futility.  *Tableau Software*, 2021 WL 495149, at *2 (quoting *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007)); *see also Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 553205, at *7 (Del. Ch. Feb. 29, 2008) (holding that a complaint failed to adequately allege that non-defendant directors were beholden to interested directors when it "fail[ed] to provide any pertinent facts on a director-by-director basis").

failed to disclose that Canoo "had already, or was in the process of, abandoning [sic] its engineering services business" (D.I. 1 ¶ 160(a)) and "had already, or was in the process of, curtailing [sic] its arrangement with Hyundai" (*id.* ¶ 160(c)).  But, critically, absent from the Complaint is any allegation that Canoo had decided to abandon its engineering services business or curtail its Hyundai arrangement by the time any alleged proxy statements were made.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("[I]nsofar as Appellants' claims are based on events that took place after [the] allegedly fraudulent statements, they are not actionable for securities fraud."); *Johansson v. Ferrari*, 2015 WL 5000848, at *6 (D. Del. Aug. 20, 2015) (holding that consideration of a "new strategy" did not render projections "grounded in the then-current strategy" false or misleading).  The absence of this allegation is fatal to Plaintiff's claim.

Section 14(a) plaintiffs must allege that defendants made statements that were false or misleading at the time they were made, not just that defendants mismanaged the company or breached fiduciary duties by failing to anticipate future developments.  *See, e.g.*, *Laborers' Local #231 Pension Fund v. Cowan*, 2018 WL 3243975, at *5 (D. Del. July 2, 2018) ("The filer of a proxy statement is not obligated to predict the future, unless the filer has reason to believe a future event will occur."); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1330 ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."); *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004) ("We have long rejected attempts to plead fraud by hindsight.").  Here, Plaintiff does not allege the existence of any contemporaneous facts that contradict the information in any proxy statement.  *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 2015 WL 4036179, at *5 (D. Del. July 1, 2015) ("Difficulties . . . in a subsequent quarter do not indicate that the internal controls during the second quarter were inadequate.").  Instead, Plaintiff relies solely on an

21

announcement that Canoo decided to "de-emphasize" its engineering services business line months *after* HCAC IV filed proxy statements with the SEC to solicit votes for the merger.

Plaintiff also appears to rely on statements that ***are true or were never made***.  Omissions are actionable under § 14(a) ***only if*** "they are both material and make other statements false or misleading."  *Ash v. Brunswick Corp.*, 405 F. Supp. 234, 245 (D. Del. 1975).  Plaintiff identifies no statement capable of being rendered false or misleading by the alleged omission with respect to Canoo's arrangement with Hyundai.  During an August 18, 2020 investor conference call regarding the merger, Balciunas stated that Canoo had a partnership with Hyundai that was "in the first phase . . . [w]ith . . . *potential opportunity to move forward into future phases*."  D.I. 1 ¶ 96 (emphasis added).  HCAC IV's S-4 registration statement, which included a proxy solicitation for the merger, states: "In February 2020, Hyundai Motor Group entered into an agreement with Canoo to co-develop a future EV platform . . . , providing further validation of Canoo's technical leadership.  . . . The agreement provides that it may be terminated for convenience by either party . . . ."  D.I. 1 ¶ 103, Ex. 10 (11/27/20 S-4) at 167.  Plaintiff does not allege that there is anything false or misleading about any description of this agreement that Plaintiff concedes Hyundai entered into with Canoo.  Plaintiff further argues the Proxy Defendants failed to disclose that Canoo "was no longer generating engineering services revenues."  D.I. 1 ¶ 160(b).  During the August 18, 2020 conference call, however, Kranz stated that Canoo was "already making money" with the engineering services revenue stream.  D.I. 1 ¶ 91.  That is true.  *See* Ex. 11 (1/13/21 S-1) at 44 (identifying $2.55 million in revenue in 2020).  Plaintiff fails to identify any misstatement of revenue received in any proxy statement.

Rather, the challenged statements are forward-looking statements regarding "projected [engineering services] revenue in 2021."  *See, e.g.,* D.I. 1 ¶¶ 94, 95, 97, 100.  "Projections cannot

22

form the basis of a § 14(a) claim for the . . . reason that they fall within the PSLRA's 'safe harbor' for forward-looking statements." *In re Keryx Biopharmaceuticals, Inc.*, 454 F. Supp. 3d 407, 413 (D. Del. 2020). "The PSLRA's safe harbor applies to forward-looking statements that 'are (1) identified as such, and accompanied by meaningful cautionary statements; or (2) immaterial; or (3) made without actual knowledge that the statement was false or misleading.'" *Id.* (quoting *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 278–79 (3d Cir. 2010)); *see also* 15 U.S.C. § 78u-5.

Each of HCAC IV's SEC Form S-4 registration statements caution that "any statements that refer to projections, forecasts or other characterizations of future events or circumstances, including any underlying assumptions, are forward-looking statements." Ex. 12 (S-4) at 35; Exs. 10 & 13 (Am. S-4s) at 37. They go on to state that words such as "expect", "project", and "potential" may identify forward-looking statements. Ex. 12 at 35; Exs. 10 & 13 at 37. They also state that "[t]hese forward-looking statements are based on information available as of the date of this proxy statement/prospectus . . . and involve a number of judgments, risks and uncertainties." Ex. 12 at 35; Exs. 10 & 13 at 37. These cautionary statements further note: "factors that could cause actual results to differ include . . . the ability of Canoo to execute its business model . . . ." Ex. 12 at 36; Exs. 10 & 13 at 38.[14] Plaintiff relies on statements in HCAC IV's S-4, including:

- "Canoo's engineering and technology services business . . . offers a unique opportunity to generate immediate revenues in advance of the offering of [its] first vehicles and [its] current pipeline in this area is supportive of a *projected* $120 million of revenue in 2021."

- "[Canoo *expect[s]* [its] engineering and technology services business to offer significant growth *potential in the future*."

D.I. 1 ¶ 100 (emphasis added). These statements about what Canoo "project[s]" or "expect[s]"

---

[14]   HCAC IV's August 18, 2020 investor call transcript and presentation also identify forward-looking statements with similar cautionary language. Ex. 14 (8/18/20 Transcript) at 17; Ex. 15 (8/18/20 Presentation) at 2.

about its "potential in the future" are clearly identified, non-actionable forward-looking statements. These forward-looking statements are also not actionable under the second prong of the PSLRA's safe-harbor, as the Complaint does not allege that the Proxy Defendants made the statements with actual knowledge that the statements were false or misleading. *See supra* § I.C.2–3.

### 2.   Plaintiff's § 14(a) Claim Sounds in Fraud and Does Not Meet the Heightened Pleading Requirements of Rule 9(b)

Plaintiff fails to plead his § 14(a) claim with the particularity required by Rule 9(b). While Plaintiff asserts that his § 14(a) claim is "based solely on negligence" and "do[es] not sound in fraud," D.I. 1 ¶ 157, this "disavowment of fraud . . . does not require [the court] to infer that the claim[] [is a] . . . negligence claim[]." *Chubb*, 394 F.3d at 160; *see also Garfield v. Shutterfly, Inc.*, 857 F. App'x 71, 80 (3d Cir. 2021) ("Allowing Plaintiff to avoid [Rule 9(b)] through the mere inclusion of the term "negligence" would create an improper loophole undermining Rule 9(b)."). Instead, Rule 9(b) applies to purported negligence claims that sound in fraud by "accus[ing] the defendants of 'intentionally, knowingly, or recklessly misrepresenting certain material information.'" *Garfield*, 857 F. App'x at 79 (quoting *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287 (3d Cir. 1992)). That is what Plaintiff accuses the Proxy Defendants of here. Allegations that the Individual Defendants engaged in an "unlawful scheme" and "initiated a course of conduct that was designed to . . . deceive the investing public" are incorporated by reference as support for Plaintiff's sparsely pled § 14(a) claim. D.I. 1 ¶¶ 24, 111, 150, 155. These allegations of a course of conduct that was "designed" to "deceive the investing public" are inconsistent with mere negligence. *See Garfield*, 857 F. App'x at 79 (finding a claim to sound in fraud when "the gravamen of the Complaint is that management . . . proceeded to intentionally deceive shareholders"). Plaintiff's § 14(a) claim sounds in fraud, and thus Rule 9(b)'s particularized pleading requirements apply.

Rule 9(b) "has been rigorously applied in securities fraud cases," and requires plaintiffs to plead the "'who, what, when, where, and how'" of an alleged fraud. *Chubb*, 394 F.3d at 144 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 329 (2007)). Here, Plaintiff fails to allege any specific facts to plead that the Proxy Defendants knew that statements in a proxy were actually false or misleading when made. And the Complaint fails to allege any specific facts to show the alleged misleading facts induced shareholders to approve the merger. *See* D.I. 1 ¶ 162; *see also Shapiro*, 964 F.2d at 284 (noting that Rule 9(b) requires a showing "that the plaintiff acted upon [false representations] to his damage"). Indeed, in the ten paragraphs devoted to pleading a § 14(a) claim, Plaintiff does not specifically identify the proxy statements, who was responsible for providing the content of the statements, or what information the Proxy Defendants knew at the time of the statements. Because Plaintiff failed to plead his allegations of fraud with particularity, and his § 14(a) claim is grounded in these allegations, the claim should be dismissed under Rule 12(b)(6) and Rule 9(b).

### 3.     Plaintiff Fails to Adequately Allege Loss Causation

Plaintiff makes no effort to plead loss causation, "an essential element of a Section 14(a) claim." *In re Resolute Energy Corp. Sec. Litig.*, 2021 WL 327385, at *4 (D. Del. Feb. 1, 2021), *appeal filed*, No. 21-1412 (3d Cir. Mar. 4, 2021). To state a claim under § 14(a), a plaintiff must show that the transaction authorized as the result of a false proxy statement was "the *direct* cause of the pecuniary injury for which recovery is sought." *Gen. Elec. Co. ex rel. Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (emphasis added); *see also City of Detroit Police & Fire Ret. Sys. ex rel. NiSource, Inc. v. Hamrock*, 2021 WL 877720, at *6 (D. Del. Mar. 9, 2021) ("At least in the Third Circuit, a 14(a) claim for damages must be based on a specific transaction being authorized by the allegedly misleading proxy."). Here, Plaintiff seeks to recover for alleged

injuries to Canoo.  Since Plaintiff's § 14(a) claim focuses on statements made to "solicit[] stockholder votes in favor of the Merger" between HCAC IV and Canoo Holdings, D.I. 1 ¶ 160, the loss causation element of Plaintiff's derivative § 14(a) claim requires a direct connection between the damages that Canoo allegedly suffered and the merger.  The damages alleged in the Complaint cannot meet this standard.

The merger did not directly cause any of the damages described in the Complaint.  Plaintiff alleges five types of injury to Canoo:

> (i) costs and damages associated with the overpayment for the acquisition of Canoo Holdings in the Merger; (ii) costs incurred in connection with issuing false and misleading proxy solicitations seeking approval of the Merger; (iii) costs incurred in investigating and defending Canoo and its top insiders in the Securities Class Actions; (iv) lost sales and orders resulting from exposure of the Company's misleading disclosures regarding its business, operations and prospects; and (v) costs incurred from compensation and benefits paid to the Individual Defendants, who have breached their fiduciary duties to Canoo.

D.I. 1 ¶ 123.  The merger did not directly cause any alleged acquisition overpayment.  Injuries related to "a hypothetically better offer price in the merger agreement" do not meet the loss causation requirements of § 14(a) because "the cause of the harm is the Board's failure to negotiate a better offer and not, as required by the law, the material misstatements."  *In re Resolute Energy*, 2021 WL 327385 at *3.  The merger did not directly cause the costs of the proxy solicitations, as the solicitations issued before the merger closed, *see* D.I. 1 ¶¶ 79, 100–03, and Canoo/HCAC IV would have incurred these costs regardless of whether the merger closed.  *See Mack v. Resolute Energy Corp.*, 2020 WL 1286175, at *10 (D. Del. Mar. 18, 2020) ("As a general matter, loss causation requires some comparison between what did happen and what would have happened but for the alleged wrong.").  Finally, the remaining alleged harms have no direct connection to the merger, as they generally relate to indirect consequences of the alleged misleading statements, not

the merger transaction authorized by shareholders. *See Gen. Elec. Co.*, 980 F.2d at 933 (finding no "cognizable harm" under § 14(a) when "the shareholders' votes did not authorize the transactions that caused the losses"). Thus, Plaintiff has not alleged any injury to Canoo that directly resulted from the merger itself, and accordingly has failed to plead loss causation.

### B.    Plaintiff's Claim for Contribution Under Exchange Act § 21D Is Not Ripe

Plaintiff's second claim is for contribution under § 21D of the Exchange Act, 15 U.S.C. § 78u-4(f)(2)(A). A claim for contribution under § 21D is ripe, however, only once "final judgment is entered" on the underlying securities claims. *DiBattista*, 2021 WL 327399, at *7 (quoting 15 U.S.C. 78u-4(f)(2)(A)). Here, Plaintiff's contribution claim is based on the Securities Actions that have not yet reached final judgment. *See* D.I. 1 ¶¶ 28, 168. Thus, the contribution claim is not ripe, and must be dismissed under Rule 12(b)(1) due to lack of subject matter jurisdiction. *DiBattista v. Greco*, 2021 WL 327399, at *7.

### C.    The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Breach of Fiduciary Duty and Unjust Enrichment Claims

The Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claims for breach of fiduciary of duty and unjust enrichment if the Court dismisses Plaintiff's claims under § 14(a), § 20(a), and § 21D. 28 U.S.C. § 1367. The Court should decline to exercise supplemental jurisdiction here as "these [federal] claims are asserted as a thinly-pled basis for bringing the case in federal court." *Smith*, 2019 WL 6328033, at *1 n.1. Under Canoo's certificate of incorporation, the Delaware Court of Chancery is the exclusive forum for any derivative action brought on behalf of the Company unless the Court of Chancery lacks subject matter jurisdiction. Ex. 9 (Certificate of Incorporation) at 4. Plaintiff appears to have included his § 14(a), § 20(a), and § 21D claims to circumvent the Court of Chancery's jurisdiction. The Court should not countenance this forum shopping.

27

**D.       There Is No Viable Claim for Breach of Fiduciary Duty or Unjust Enrichment**

If the Court declines to dismiss Plaintiff's breach of fiduciary duty and unjust enrichment claims under Rule 23.1 and chooses to exercise supplemental jurisdiction over these claims, the Court should dismiss these claims under Rule 12(b)(6).  Plaintiff's fiduciary duty claims against the current and former officers and directors fail to state *Caremark* or *Malone* claims, let alone unexculpated claims, as explained above, *supra* §§ I.C.2–3.  Similarly, Plaintiff fails to state unjust enrichment claims against the Individual Defendants because these claims are predicated on breaches of fiduciary duty and based only on conclusory allegations.  *See supra* § I.C.4.

In fact, SEC filings referenced throughout the Complaint contradict the insider trading theory underlying Plaintiff's unjust enrichment claim.  D.I. 1 ¶¶ 15 (Form S-1), 82 (Form S-4).[15] As reflected in these filings, Aquila, Kranz, Balciunas, and the HCAC IV Defendants were subject to "Lock-Up Agreements" that restricted them from selling Canoo stock until 180 days after the merger closed on December 21, 2020.  *See, e.g.*, Ex. 10 (Am. S-4) at 2–4, 22, 137–38 (noting that "all Canoo officers," which includes Aquila, Kranz, and Balciunas, agreed to not "sell . . . or otherwise dispose of" any shares of New Canoo Common Stock), Annex J1–4, 12, 16–17 (noting that pre-IPO holders of Canoo common stock—Ethridge and the HCAC IV Defendants—were subject to Lock-Up Agreements).  The "Lock-Up" period ended in June 2021—months ***after*** the drop in Canoo's stock price in late March and early April 2021.  These Individual Defendants were therefore restricted from selling stock during the period when Plaintiff alleges the stock price was

---

[15]   In ruling on this motion to dismiss, the Court need not credit allegations contradicted by documents incorporated by reference into the complaint or subject to judicial notice.  *See Nat'l Distillers & Chem. Corp. v. Dep't of Energy*, 1980 WL 1057, at *1, 3 (D. Del. Oct. 23, 1980); *In re Washington Mut. Inc.*, 741 F. App'x 88, 91 n.3 (3d Cir. 2018).  The Court may take judicial notice of SEC filings.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

"artificially inflated."   D.I. 1 ¶ 181.[16]   Plaintiff relies on the January 13, 2021 Form S-1

Registration Statement that registered Individual Defendants' stock for sale. *Id.* ¶¶ 36–43.  The

registration of stock for sale does not equate to the sale of stock.   The function of a Shelf

Registration is to allow security holders to offer their shares "on a delayed or continuous basis *in

the future.*" 17 C.F.R. § 230.415 (emphasis added).  The S-1 specifically references the "Lock-Up

Agreements," which effectively prevented the relevant Individual Defendants from selling shares

until mid-2021.   Ex. 11 (S–1) at 123.   Given the "Lock-Up Agreements", Plaintiff's unjust

enrichment claim based on insider trading allegations is implausible on its face and should be

dismissed.

## III.   THE COURT SHOULD, IN THE ALTERNATIVE, STAY THIS DERIVATIVE ACTION PENDING RESOLUTION OF THE RELATED SECURITIES ACTIONS

In the event that the Court is not inclined to dismiss this action, the case should be stayed

pending resolution of the Securities Actions.  Indeed, courts routinely stay derivative actions in

cases like this one.  *See, e.g.*, *In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at

*2 (D. Del. July 23, 2018) (granting stay of derivative action pending resolution of related

securities action), *report and recommendation adopted*, 2018 WL 4326986 (D. Del. Sept. 10,

2018); *Tansey v. Rogers*, 2016 WL 3519887, at *1 (D. Del. June 27, 2016) (same); *Brenner v.

Albrecht*, 2012 WL 252286, at *5–6 (Del. Ch. Jan. 27, 2012) (same).  The Court has "broad power

to stay proceedings." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544

F.2d 1207, 1215 (3d Cir. 1976).  The Court's power to stay proceedings is "incidental to the power

---

[16]   Plaintiff does not allege that the remaining Defendants, Chiang, Datillo, Schmueckle, Sheeran, and von Storch sold stock.  *Compare* D.I. 1 ¶ 15, 36–47 (identifying the HCAC IV Defendants, Aquila, Kranz, and Balciunas as "Selling Shareholders" in SEC Form S-1 Registration Statement) *with id.* ¶¶ 50–54 (identifying Chiang, Datillo, Schmueckle, Sheeran, and von Storch without alleging they sold Canoo stock).  Plaintiff only alleges they received stock as routine director compensation.

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936).  "[I]t is a matter of the court's inherent power to conserve judicial resources by controlling its own docket."  *See Cost Bros., Inc. v. Travelers Indem. Co*., 760 F.2d 58, 60 (3d Cir. 1985).

To determine whether to grant a stay, the Court must "weigh competing interests and maintain an even balance."  *Landis*, 299 U.S. at 254–55.  The factors courts typically consider in determining whether a proceeding should be stayed include whether: (1) "a stay will simplify the issues for trial"; (2) "discovery is complete and a trial date has been set"; (3) "a stay would unduly prejudice . . . the non-moving party"; and (4) "the moving party would face hardship or inequity in going forward with the litigation."  *In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*, 2021 WL 4476954, at *1 (D. Del. Sept. 30, 2021) (quoting *UCB, Inc. v. Hetero USA Inc.*, 277 F. Supp. 3d 687, 690 (D. Del. 2017)).  These factors support a stay here.

## A.    A Stay Is Necessary to Prevent Prejudicial Harm to Canoo

The hardship and inequity Canoo would suffer if this case proceeds now weighs strongly in favor of a stay.  A derivative suit allows shareholders to bring claims to enforce a company's rights. Fed. R. Civ. P. 23.1.  In bringing such claims, the derivative plaintiff has a duty to act as the company's fiduciary and in the company's best interest.  *See South v. Baker*, 62 A.3d 1, 21 (Del. Ch. 2012) ("[A] derivative plaintiff serves in a fiduciary capacity as representative of persons whose interests are in plaintiff's hands and the redress of whose injuries is dependent upon her diligence, wisdom and integrity.").

Pursuing this action now is not in the best interest of Canoo or its stockholders.  *In re Massey Energy Co. Deriv. & Class Action Litig.*, 2011 WL 2176479, at *27 (Del. Ch. May 31, 2011) ("[P]laintiffs, as fiduciaries for other [company] stockholders, [should] be reluctant to prosecute the Derivative Claims they claim are so valuable until the direct claims against [the

company] are resolved."). Litigating the Derivative Action would divert the Company's financial and managerial resources from defending the pending Securities Actions. *See, e.g.*, *In re Rh S'holder Derivative Litig.*, 2019 WL 580668, at *4 (N.D. Cal. Jan. 23, 2019) (granting a stay and noting that the company "may suffer if the Derivative Action continues because it would necessarily divert [the company's] financial and management resources away from its defense in Securities Class Action"); *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *4–6 (C.D. Cal. Jan. 11, 2012) ("The diversion of resources is an appropriate consideration and one that can weigh in favor of granting a stay" (internal citation omitted)).

Proceeding with this action now would also require Canoo (through this derivative Plaintiff) to prove the very same alleged misconduct that is the basis of the Securities Actions against it, and to attack the credibility of witnesses also named as defendants in those actions. These efforts—whether or not meritorious or successful—would undermine Canoo's defense in the Securities Actions. Here, Plaintiff contends that the Individual Defendants are responsible for purportedly misleading statements about Canoo's engineering services and technology business. The Securities Actions allege the same statements were purportedly misleading. *Compare* D.I. 1 ¶ 87 *with Kojak* Compl. ¶ 28 (August 18, 2020 press release); *compare* D.I. 1 ¶¶ 91, 95 *with Blake & Tyler* Compls. ¶¶ 22, 24 (August 18, 2020 analyst and investor conference call statements); *compare* D.I. 1 ¶¶ 98, 104 *with Blake & Tyler* Compls. ¶ 24 (August 18, 2020 analyst and investor day presentation); c*ompare* D.I. 1 ¶¶ 100–01 *with Kojak* Compl. ¶ 29 (September 18, 2020 S-4 statements); *compare* D.I. 1 ¶ 107 *with Blake*, *Tyler & Kojak* Compls. ¶ 33 (January 13, 2021 S-1 statement). Given this, Plaintiff (supposedly for Canoo) would be in this Derivative Action trying to prove up the same allegations Canoo would be defending against in the Securities Actions. Courts routinely stay derivative actions in favor of securities class actions to avoid this obvious

conflict.  *See, e.g.*, *Brenner v. Albrecht*, 2012 WL 252286, at \*6 (finding significant risk of prejudice to company as "[p]rosecution of . . . derivative action would involve taking actions designed to refute the merits of the Company's defense of the Securities Class Action, and vice versa"); *In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at \*3 (finding that staying a derivative action in favor of a securities action would "relieve the tension on [the company] caused by alleging wrongful conduct in this matter while defending against substantially similar allegations of wrongful conduct in the Securities Action"); *In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*, 2021 WL 4476954, at \*1 ("[A] stay would alleviate the tension between Plaintiffs bringing this case on [the company's] behalf while [the company] defends the Securities Action.").

### B.    A Stay Is Necessary to Promote the Orderly Course of Justice and to Avoid Duplicative Litigation and a Waste of Resources

Allowing simultaneous prosecution of this case and the earlier-filed Securities Actions will lead to duplicative litigation and result in an unnecessary waste of resources.  For this reason, Delaware courts routinely stay a derivative action pending resolution of a parallel securities class action where, as here, the substantive allegations in both actions are substantially similar.  *See, e.g.*, *In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at \*2 (staying derivative action in favor of pending securities class actions because the derivative action asserted the same underlying allegations as the securities actions); *Tansey v. Rogers*, 2016 WL 3519887, at \*1 ("[T]his court granted Defendants' motion to stay the Federal Derivative Action in favor of a related securities class action that was pending . . . on the grounds that Plaintiffs' complaints asserted the same allegations that underlie the Securities Class Action."); *In re Cmty. Health Sys.*, 2021 WL 4476954, at \*1 ("Given the significant overlap, a stay of the Derivative Action will promote judicial efficiency.").

Given that the factual allegations and claims in the actions overlap, the outcome of the Securities Actions would resolve or simplify the issues in this case.  For example, Plaintiff's § 14(a), fiduciary duty, and unjust enrichment claims are predicated on the alleged misleading statements.  *See* D.I. 1 ¶¶ 175, 180–81.  If the Central District of California court determines that the defendants made no material misrepresentations or omissions, then Plaintiff's Exchange Act, fiduciary duty, and unjust enrichment claims fail.  Because the claims and issues in both cases overlap substantially—and thus will call for the determination of the same or substantially related questions of fact—litigating these same issues twice before two different courts at two different times would create a significant "risk of inconsistent decisions in the two districts" and waste judicial resources.  *See In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at *3; *accord In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *6 ("Given the substantial overlap in the Federal Securities Class Action and the present action . . . a stay would promote judicial efficiency and avoid duplicative efforts."); *Cucci v. Edwards*, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) ("If Defendants are successful on the motion to dismiss the Securities Class Action complaint, Plaintiffs may have little basis for pursuing this Shareholder Derivative Action. Consequently, the Court finds that staying the Shareholder Derivative Action pending resolution of the motion to dismiss would promote judicial economy.").

Further, Plaintiff's claim for contribution (Count II) and alleged damages depend on the outcome of the Securities Actions.  Plaintiff seeks contribution from the individual defendants in the Securities Actions "[i]f the Company is found liable for violating the federal securities laws" in those actions.  D.I. 1 ¶ 168.  Liability for this claim therefore cannot be determined without a ruling against Canoo in the Securities Actions.  Likewise, the principal damages Plaintiff alleges are from Canoo being "subjected . . . to potentially enormous damages in connection with the

Securities Class Actions." D.I. 1 ¶ 122. Any damages Plaintiff could conceivably recover are thus dependent upon a ruling against Canoo in the Securities Actions. In these circumstances, courts routinely stay derivative claims to allow the underlying action giving rise to potential liability to unfold. *See, e.g.*, *Brenner v. Albrecht*, 2012 WL 252286, at *1, *6 (staying derivative action in favor of class action where relief sought was "only partially contingent on the outcome of the Securities Class Action"); *Brudno v. Wise*, 2003 WL 1874750, at *5 (Del. Ch. Apr. 1, 2003) ("Given that the overwhelming thrust of the Delaware Action complaint is a demand for indemnification largely for harm to be incurred by [the corporation] in the Federal Securities Action, the sensible ordering of events is for the Federal Securities Action to proceed first."); *In re Isolagen Inc., Sec. & Derivative Litig.*, 2007 WL 1101278, at *2 (E.D. Pa. Apr. 10, 2007) (finding the action premature where damages were "clearly contingent on the related securities class action lawsuit"). The Court should do the same here. *Brudno*, 2003 1874750, at *4; *see also In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *7 ("If the Federal Securities Class Action concludes with a finding that [the company] and its officers and directors did not violate the Exchange Act by issuing or causing [the company] to issue materially false and misleading statements, it may not be in [the company's] best interest to pursue the derivative action.").

### C.   Plaintiff Will Not Be Prejudiced by a Stay

In contrast to the hardship that moving forward with this action now would cause the Company and Defendants, no possible prejudice will befall Plaintiff if this case is stayed pending resolution of the Securities Actions. The mere delay of this Derivative Action "alone does not warrant a finding that [p]laintiffs will be unduly prejudiced." *In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at *3 (internal citations and quotations omitted). Indeed, because Plaintiff's potential relief depends to a significant extent on the outcome of the Securities Actions, a stay will not significantly prolong any resolution of the claims at issue in this case. *See*

34

*Baca v. Insight Enterprises Inc.*, 2010 WL 2219715, at \*5 (Del. Ch. June 3, 2010) ("Because [the derivative] lawsuit seeks indemnification for losses resulting from the Federal Securities Action, a rational stockholder plaintiff, free of the compulsion to win a first-to-file sweepstakes, would wait until after a ruling on a motion to dismiss the Federal Securities Action before commencing a derivative suit."). There is simply no need for Plaintiff to pursue his derivative claims now.

### D. This Derivative Action Is in the Earliest Stages of Litigation

Finally, the early stage of this litigation also favors staying this action pending resolution of the securities class actions. *See In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*, 2021 WL 4476954, at \*2 (finding that early stage of derivative action supported stay in favor securities class action); *Janklow on Behalf of Stericycle, Inc. v. Alutto*, 2018 WL 6499869, at \*2 (D. Del. Dec. 11, 2018) (staying derivative action because "[t]he present derivative litigation is in its infancy, and the Court has not yet directed its scarce resources to the merits of this dispute."). In *In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*, the court concluded that the absence of formal discovery, a trial date or even a scheduling order cut "strongly" in favor of granting a stay because the parties had "invested relatively few resources." 2021 WL 4476954, at \*2 (internal citations omitted). The same is true here.

### IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this Derivative Action or, in the alternative, stay any remaining proceedings until the final resolution of the Securities Actions.

OF COUNSEL:

KIRKLAND & ELLIS LLP

Mark C. Holscher, P.C. (*pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
(213) 680-8400
mark.holscher@kirkland.com

David A. Klein (*pro hac vice*)
2049 Century Park East
Los Angeles, CA  90067
(310) 552-4200
david.klein@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Martin S. Lessner*
Martin S. Lessner (No. 3109)
Daniel M. Kirshenbaum (No. 6047)
M. Paige Valeski (No. 6336)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
dkirshenbaum@ycst.com
bswadley@ycst.com

*Attorneys for Nominal Defendant Canoo Inc.
and Defendants Tony Aquila, Ulrich Kranz, Paul
Balciunas, Greg Ethridge, Thomas Dattilo,
Foster Chiang, Rainer Schmueckle, Josette
Sheeran, and Debra Von Storch*

OF COUNSEL:

SIDLEY AUSTIN LLP

James W. Ducayet (*pro hac vice*)
Heather Benzmiller Sultanian (*pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
(312) 853 7621
Jducayet@sidley.com
HSultanian@sidley.com

POTTER ANDERSON & CORROON LLP

*/s/ Kevin R. Shannon*
Kevin R. Shannon  (No. 3137)
Jonathan A. Choa (No. 5319)
Christopher N. Kelly (No. 5717)
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000
kshannon@potteranderson.com
jchoa@potteranderson.com
ckelly@potteranderson.com

*Attorneys for Defendants Hennessy Capital
Group LLC, Hennessy Capital Partners IV LLC,
Daniel J. Hennessy, Nicholas A. Petruska,
Bradley Bell, Peter Shea, Richard Burns, James
F. O'Neil III, Juan Carlos Mas, and Gretchen W.
McClain*

Dated: November 1, 2021