## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CLAUDE L. PATTERSON, Derivatively on )
Behalf of CANOO INC., f/k/a HENNESSY )
CAPITAL ACQUISITION CORP. IV, )
             )
               Plaintiff, )
             )
     v. )
             )
DANIEL J. HENNESSY, NICHOLAS A. )
PETRUSKA, BRADLEY BELL, PETER )
SHEA, RICHARD BURNS, JAMES F. )
O'NEIL III, JUAN CARLOS MAS, )
GRETCHEN W. MCCLAIN, GREG )
ETHRIDGE, ULRICH KRANZ, TONY )
AQUILA, PAUL BALCIUNAS, )
HENNESSY CAPITAL PARTNERS IV )
LLC, HENNESSY CAPITAL GROUP )
LLC, THOMAS DATTILO, FOSTER )
CHIANG, RAINER SCHMUECKLE, )
JOSETTE SHEERAN and DEBRA VON )
STORCH, )
             )
            Defendants. )
             )
     – and – )
             )
CANOO INC., f/k/a HENNESSY )
CAPITAL ACQUISITION CORP. IV, a )
Delaware corporation, )
             )
           Nominal Defendant. )
             )

Civil Action No. 1:21-cv-00907-RGA

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY THE DERIVATIVE COMPLAINT

*Of Counsel*:

Travis E. Downs III
Benny C. Goodman III
Erik W. Luedeke
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
(619) 231-1058

ANDREWS & SPRINGER LLC
Peter B. Andrews (#4623)
Craig J. Springer (#5529)
David M. Sborz (#6203)
4001 Kennett Pike, Suite 250
Wilmington, DE 19807
(302) 504-4957

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..........................................................................................1

II.   FACTUAL ALLEGATIONS .......................................................................3

III.  ARGUMENT................................................................................................7

    A.   Demand Is Excused as Futile .................................................................7

        1.    Pleading Standards for Demand Futility .......................................7

        2.    Defendants Aquila, Dattilo, Chiang, Etheridge, Schmueckle, Sheeran, and Von Storch Each Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty ........................................10

        3.    Demand Is Excused as to Defendants Aquila and Ethridge Because They Each Received a Unique Material Personal Benefit from the Alleged Misconduct..........................................16

    B.   Plaintiff Adequately Alleges Claims Against the Individual Defendants ............................................................................................17

        1.    Applicable Legal Standards.........................................................17

        2.    Plaintiff Has Stated Claims for Breach of Fiduciary Duty and Unjust Enrichment ....................................................................18

    C.   Plaintiff Has Stated a Claim for Violations of Section 14(a)..................19

        1.    Legal Standards Applicable to Section 14(a) ..............................19

        2.    Plaintiff Adequately Alleges that the Proxy Defendants Made Materially Misleading Statements and Omissions ......................21

        3.    Plaintiff Adequately Pleads Loss Causation ...............................24

    D.   Plaintiff's Contribution Claim Should Stand or Be Stayed ....................25

    E.   Defendants' Alternative Request for a Stay Pending Resolution of the Related Securities Class Actions Should Be Denied...............................27

        1.    A Stay Would Harm Canoo and Plaintiff.....................................28

        2.    Concurrent Prosecution Will Not Compromise Canoo's Defenses in the Securities Class Actions .....................................29

        3.    Efficiencies Support the Denial of a Stay ....................................30

**Page**

4.    The Stage of Litigation Supports Denial of a Stay .......................33

IV.    CONCLUSION ................................................................................................35

## TABLE OF AUTHORITIES

Page

## CASES

*In re Abbott Lab'ys Deriv. S'holders Litig.*,
325 F.3d 795 (7th Cir. 2003) ................................................................................ 9

*In re Am. Apparel, Inc. S'holder Deriv. Litig.*,
2012 WL 9506072 (C.D. Cal. July 31, 2012) .............................................. 32, 33

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007) ......................................................................... 29

*In re Apple Inc. Deriv. Litig.*,
No. 5:06-cv-04128-JF (N.D. Cal.) ..................................................................... 27

*In re Apple Inc. Sec. Litig.*,
No. C-06-5208-JF (N.D. Cal.) ............................................................................ 27

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984), *overruled in part by Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ............................................................... 7, 8, 10, 16

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ............................................................................................ 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 17

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010) ...................................................... 19, 20, 24

*Bakerman v. Sidney Frank Importing Co., Inc.*,
2006 WL 3927242 (Del. Ch. Oct. 10, 2006) .................................................... 18

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
2010 WL 3522327 (D. Del. Sept. 2, 2010) ....................................................... 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 17, 20

*Bergstein v. Tex. Int'l Co.*,
453 A.2d 467 (Del. Ch. 1982) ............................................................................ 9

*BNSF Ry. Co. v. FirstEnergy Generation, LLC*,
2017 WL 7512944 (N.D. Tex. Nov. 27, 2017) ................................................ 28

Page

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ............................................................................................ 8

*Calma ex rel. Citrix Sys., Inc. v. Templeton*,
   114 A.3d 563 (Del. Ch. 2015).................................................................................... 16

*In re Cambrex Corp. Sec. Litig.*,
   2005 WL 2840336 (D.N.J. Oct. 27, 2005)................................................................ 23

*In re Caremark Int'l Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996)................................................................................. 8, 9

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
   2019 WL 3451523 (D.N.J. July 31, 2019)................................................................ 22

*In re China Agritech, Inc. S'holder Deriv. Litig.*,
   2013 WL 2181514 (Del. Ch. May 21, 2013) .......................................................... 8, 30

*City of Hialeah Emps.' Ret. Sys. v. Begley*,
   2018 WL 1912840 (Del. Ch. Apr. 20, 2018) .............................................................. 8

*Clark v. Lutcher*,
   77 F.R.D. 415 (M.D. Pa. 1977) ................................................................................. 28

*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................................................... 26

*In re Cnty. Health Sys., Inc. S'holder Deriv. Litig.*,
   No. 3:11-cv-00489 (M.D. Tenn.) .............................................................................. 27

*In re CytRx S'holder Deriv. Litig.*,
   2015 WL 12745085 (C.D. Cal. June 24, 2015)..............................................27, 28, 30, 32

*Del. Cnty. Emps.' Ret. Fund v. Sanchez*,
   124 A.3d 1017 (Del. 2015) .......................................................................................... 8

*Duke Power Co. v. Carolina Env't Study Grp.*,
   438 U.S. 59 (1978)..................................................................................................... 25

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................................. 24

*In re First Solar Derivative Litig.*,
   2016 WL 687138 (D. Ariz. Feb. 19, 2016) ............................................................... 32

**Page**

*Forestal v. Caldwell,*
  2016 WL 9774914 (C.D. Cal. Nov. 14, 2016) ................................................13, 15

*In re Galena Biopharma, Inc. Deriv. Litig.,*
  83 F. Supp. 3d 1033 (D. Or. 2015) ...................................................28, 29, 32

*Gen. Elec. Co. v. Cathcart,*
  980 F.2d 927 (3d Cir. 1992) ..................................................................... 24

*In re Gen. Instrument Corp. Sec. Litig.,*
  23 F. Supp. 2d 867 (N.D. Ill. 1998) .........................................................16, 17

*Gould v. American-Hawaiian S.S. Co.,*
  535 F.2d 761 (3d Cir. 1976) ..................................................................... 20

*H & N Mgmt. Grp., Inc. v. Couch,*
  No. 12847-VCMR, 2017 WL 3500245
  (Del. Ch. Aug. 1, 2017).......................................................................... 18

*Hallam v. Gemini Ins. Co.,*
  2015 WL 11237479 (S.D. Cal. Apr. 8, 2015) ................................................... 26

*In re HealthSouth Corp. S'holders Litig.,*
  845 A.2d 1096 (Del. Ch. 2003), *aff'd,*
  847 A.2d 1121 (Del. 2004) ...................................................................... 18

*In re Heckmann Corp. Sec. Litig.,*
  869 F. Supp. 2d 519 (D. Del. 2012)............................................................. 20

*Hefler v. Wells Fargo & Co.,*
  No. 3:16-cv-5479 (N.D. Cal.)................................................................... 27

*Hemostemix, Inc. v. Accudata Sols., Inc.,*
  2021 WL 1198137 (D. Del. Mar. 30, 2021)...................................................... 30

*Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC,*
  2017 WL 495869 (N.D. Tex. Feb. 7, 2017)...................................................... 31

*Hughes v. Xiaoming Hu,*
  2020 WL 1987029 (Del. Ch. Apr. 27, 2020) ................................................14, 30

*In re INFOUSA, Inc. S'holders Litig.,*
  953 A.2d 963 (Del. Ch. Aug. 13, 2007)......................................................13, 15

Page

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)..................................................................22, 23

*Int'l Equity Cap. Growth Fund, L.P. v. Clegg*,
  1997 WL 208955 (Del. Ch. Apr. 22, 1997) ...................................................... 9

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964)................................................................................... 25

*Kahn v. Portnoy*,
  2008 WL 5197164 (Del. Ch. Dec. 11, 2008) .................................................. 16

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)...................................................................................... 7

*Kandell ex. rel. FXCM, Inc. v. Niv*,
  2017 WL 4334149 (Del. Ch. Sept. 29, 2017) ................................................. 14

*In re Kandi Techs. Grp., Inc. Sec. Litig.*,
  No. 17 Civ. 1944 (ER), 2019 WL 4918649
  (S.D.N.Y. Oct. 4, 2019) ...........................................................................30, 31

*King v. Baldino*,
  648 F. Supp. 2d 609 (D. Del. 2009), *aff'd, King ex. rel. Cephalon Inc. v. Baldino*,
  409 F. App'x 535 (3d Cir. 2010).................................................................. 17

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*,
  No. 09-799, 2011 WL 2444675 (D. Del. June 14, 2011) ................................... 23

*In re Lumber Liquidators Holdings, Inc. S'holder Deriv. Litig.*,
  No. 4:15-cv-00016-AWA-LRL (E.D. Va.)...................................................... 27

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ............................................................................... 9

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004)................................................................... 9, 15

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)................................................................................... 25

*Minerva Surgical, Inc. v. Hologic, Inc.*,
  2021 WL 1840645 (D. Del. May 7, 2021), *aff'd*,
  2021 WL 2856596 (D. Del. July 8, 2021) ...................................................... 31

**Page**

*Mitzner v. Hastings*,
2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ........................................................ 15

*Nicholas v. Wyndham Int'l, Inc.*,
149 F. App'x 79 (3d Cir. 2005) ........................................................................... 26

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
No. 3:11-cv-0433 (M.D. Tenn.) .......................................................................... 27

*In re Oracle Corp.*,
867 A.2d 904 (Del. Ch. 2004), *aff'd*,
872 A.2d 960 (Del. 2005) .................................................................................... 19

*Patel v. Duncan*,
2021 WL 4482157 (Del. Ch. Sept. 30, 2021) ....................................................... 8

*Pfeiffer v. Leedle*,
2013 WL 5988416 (Del. Ch. Nov. 8, 2013) ........................................................ 14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
2012 WL 424557 (N.D. Cal. Feb. 9, 2012) ..................................................10, 13

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) ...........................................................................7, 8, 10

*Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ................................................................................ 20

*In re Rh S'holder Deriv. Litig.*,
2019 WL 580668 (N.D. Cal. Jan. 23, 2019) ....................................................... 32

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ................................................... 15

*In re Rural Metro Corp.*,
88 A.3d 54 (Del. Ch. 2014) ................................................................................. 10

*Ryan v. Gifford*,
918 A.2d 341 (Del. Ch. 2007) ............................................................................. 18

*Schock v. Nash*,
732 A.2d 217 (Del. 1999) .................................................................................... 19

Page

*Seibert v. Gene Sec. Network, Inc.*,
2013 WL 5645309 (N.D. Cal. Oct. 16, 2013) ................................................................. 25

*SEPTA v. Orrstown Fin. Servs., Inc.*,
2015 WL 3833849 (M.D. Pa. June 22, 2015) ................................................................. 20

*In re SFBC Int'l, Inc. Sec. & Deriv. Litig.*,
495 F. Supp. 2d 477 (D.N.J. 2007) ................................................................................... 7

*Shaev v. Baker*,
2017 WL 1735573 (N.D. Cal. May 4, 2017) ............................................................. 10, 14

*Smith ex. rel. Apollo Grp., Inc. v. Sperling*,
2012 WL 79237 (D. Ariz. Jan. 11, 2012) ..................................................................... 29

*Sonkin v. Barker*,
670 F. Supp. 249 (S.D. Ind. 1987) ............................................................................. 27, 30

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ............................................................................................. 8, 9

*Teamsters Loc. 443 Health Servs. & Ins. Plan v. Chou*,
2020 WL 5028065 (Del. Ch. Aug. 24, 2020) ............................................................. 14, 15

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .................................................................................................... 19, 20

*In re Twitter, Inc. S'holder Deriv. Litig.*,
2018 WL 3536085 (D. Del. 2018) ................................................................................. 33

*In re Tyco Int'l Ltd.*,
2004 WL 524429 (D.N.H. Mar. 16, 2004) .................................................................... 25

*Tyler v. Diamond State Port Corp.*,
816 F. App'x 729 (3d Cir. 2020) ................................................................................... 27

*In re Tyson Foods, Inc.*,
2007 WL 2351071 (Del. Ch. Aug. 15, 2007) ............................................................. 10, 13

*United Food & Com. Workers Union v. Zuckerberg*,
2021 WL 4344361 (Del. Sept. 23, 2021) ............................................................... *passim*

*In re UnitedHealth Grp. Inc. Deriv. Litig.*,
No. 0:06-cv-1216 (D. Minn.) ....................................................................................... 27

**Page**

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
  No. 06-cv-01691-JMR-FLN (D. Minn.) ............................................... 27

*In re Universal Health Servs., Inc., Deriv. Litig.*,
  2018 WL 8758704 (E.D. Pa. Dec. 10, 2018) ............................... 28, 30

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
  No. 3:16-cv-5541 (N.D. Cal.) .......................................................... 27

*In re Veeco Instruments, Inc. Sec. Litig.*,
  434 F. Supp. 2d 267 (S.D.N.Y. 2006) ........................................... 15

*In re Viropharma Inc. Sec. Litig.*,
  21 F. Supp. 3d 458 (E.D. Pa. 2014) .......................................... 22, 23

*In re Zillow Grp., Inc. S'holder Deriv. Litig.*,
  2020 WL 978503 (W.D. Wash. Feb. 28, 2020) .............................. 15

*In re Zoran Corp. Deriv. Litig.*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007) ........................................... 24

**STATUTES, RULES, AND REGULATIONS**

8 Del. C.
  §102(b)(7) ..................................................................................... 9, 10
  §220 .................................................................................................. 31

15 U.S.C.
  §77z-2(a) ......................................................................................... 22
  §77z-2(c)(1)(A)(i) ........................................................................... 23
  §78n(a)(1) ........................................................................................ 19

17 C.F.R.
  §240.14a-9(a) .................................................................................. 19

Federal Rules of Civil Procedure
  Rule 8(a)(2) ..................................................................................... 17
  Rule 9(b) .......................................................................................... 20
  Rule 12(b)(6) ................................................................. 14, 17, 18, 30
  Rule 14 ............................................................................................. 26
  Rule 14a-9 ....................................................................................... 19
  Rule 23.1 ....................................................................... 8, 14, 18, 30

## I.    INTRODUCTION

This stockholder derivative action concerns Defendants'[1] willful disregard of their fiduciary duties to conduct the Company's business in compliance with the law and their duty of candor when communicating with Canoo's stockholders.  Canoo was formed through a merger between Canoo Holdings and Hennessy Capital Acquisition Corp. IV ("HCAC IV") (the "Merger"), a special purpose acquisition company ("SPAC") created to raise funds from public markets for the express purpose of pursuing a business combination with a private company. However, unlike a traditional Initial Public Offering ("IPO"), HCAC IV had to affect its business combination within 18 months of its offering to avoid redeeming all of its publicly traded shares, thus incentivizing its sponsor to quickly find an acquisition target at nearly any cost.

Rather than uphold their fiduciary obligations to stockholders, Defendants spun a web of false and misleading information designed to garner stockholder approval of the Merger between HCAC IV and Canoo Holdings and then to raise additional funds in a later offering.  In August 2020, HCAC IV and Canoo Holdings announced the Merger.  Through the Merger Canoo Holdings would become a publicly traded company.  Defendants commenced a publicity campaign (i) highlighting the importance of Canoo Holdings' engineering and technology services business as "a unique opportunity to generate immediate revenues" while the Company works on its first electric vehicle ("EV") offering; and (ii) hyping Canoo Holding's agreement with Hyundai Motor Company ("Hyundai") to jointly develop an EV platform for future Hyundai models.  These

---

[1]    "Defendants" are Canoo, Hennessy Capital Group LLC ("HC LLC"), Hennessy Capital Partners IV LLC ("HCP IV Sponsor"), Daniel J. Hennessy, Nicholas A. Petruska, Bradley Bell, Peter Shea, Richard Burns, James F. O'Neil III, Juan Carlos Mas, Gretchen W. McClain, Greg Ethridge, Ulrich Kranz, Tony Aquila, Paul Balciunas, Thomas Dattilo, Foster Chiang, Rainer Schmueckle, Josette Sheeran, and Debra von Storch.  Defendants Hennessy, Petruska, Bell, Shea, Burns, O'Neil, Mas, McClain, Ethridge, Dattilo, Chiang, Schmueckle, Sheeran, von Storch, Kranz, Aquila, and Balciunas are collectively referred to herein as the "Individual Defendants."

statements had their intended effect, and shareholders voted to approve the Merger in December 2020.

Defendants repeated their statements about the importance of the Company's engineering and technology services business and its agreement with Hyundai in a January 2021 Shelf Registration Statement and related Prospectus filed with the SEC.  The Shelf Registration Statement announced Canoo's intent to sell additional shares and to allow the Individual Defendants, among others, to sell warrants they received as part of the Merger – raising an additional $280 million from the exercise of the warrants.

These statements, however, were materially false and misleading when made.  Defendants, in fact, had abandoned Canoo's engineering and technology business and its partnership with Hyundai at the beginning of the fourth quarter of 2020.  Defendants admitted as much when, on March 29, 2021, the Company issued its 2020 financial results and booked *no revenue* for its engineering and technology services business during the fourth quarter of 2020 and admitted that they had suspended their agreement with Hyundai.

In the face of the particularized allegations in the Verified Stockholder Derivative Complaint for Violations of the Federal Securities Laws, Breach of Fiduciary Duty, and Unjust Enrichment (D.I. 1) (the "Complaint"), the arguments in Defendants' Motion to Dismiss or, in the Alternative, to Stay the Action (D.I. 37) ("Motion to Dismiss" or "Motion to Stay") fall flat and should be rejected.

First, Canoo claims that Plaintiff failed to plead that a demand upon the Canoo Board would be futile, but this argument fails because the Complaint details how Defendants – including a majority of the Canoo Board – breached their fiduciary duties for which they face a substantial

risk of liability under Delaware law by hiding the fact that the Company had abandoned its engineering and technology business and its partnership with Hyundai.

Second, Defendants claim the Complaint should be dismissed because Plaintiff failed to state a claim under the Federal Rules of Civil Procedure ("Rule" or "Rules") and for lack of subject matter jurisdiction. Wrong again. In addition to pleading viable breach of fiduciary duty claims under Delaware law, Plaintiff also pleads viable claims that Defendants' Proxy was false and/or misleading under the federal securities laws. As such, Defendants' Motion to Dismiss should be denied.

Finally, Defendants claim that this action should, in the alternative, be stayed in favor of related securities class actions. However, as demonstrated herein, Defendants fail to carry their burden of demonstrating why a stay should ensue and do not overcome the deleterious burden such a stay would have on Canoo or Plaintiff.

## II.    FACTUAL ALLEGATIONS

HCAC IV is a SPAC – sometimes called a "blank check" company – formed under the laws of the state of Delaware to effect a merger, capital stock exchange, asset acquisition, stock purchase, or similar business combination with one or more businesses. ¶¶2, 57.[2] Defendant Hennessy was CEO and Chairman of HCAC IV. *Id.* HCAC IV's sponsor, Hennessy Capital Partners IV LLC ("HCP IV Sponsor"), is a Delaware limited liability company controlled by defendant Hennessy through HC LLC. *Id.*

HCAC IV registered its IPO on February 11, 2019. ¶58. The Registration Statement filed with the SEC stated that HCAC IV was targeting "one or more businesses with an aggregate

---

[2]    All "¶" or "¶¶" references are to the Complaint unless otherwise noted.

enterprise value of $750 million or greater" with an intent "to focus on opportunities that will deliver outsized growth to its investors." ¶¶60-61.

On March 5, 2019, HCAC IV announced that its IPO issued 30,015,000 units at an offering price of $10.00 per unit, resulting in gross proceeds of $300,150,000. ¶68. The IPO also resulted in HCAC IV issuing 13,581,500 warrants at a price of $1.00 per private placement warrant, generating an additional $13,581,500 in proceeds. *Id.*

On August 18, 2020, HCAC IV and Canoo Holdings announced that it had entered into a definitive agreement for a business combination, which would result in Canoo Holdings becoming a publicly traded company under the name Canoo Inc. ¶¶5, 74, 85. On September 18, 2020, HCAC IV filed its Registration Statement on SEC Form S-4, in which its board of directors requested that stockholders vote in favor of the Merger. ¶100.

Canoo is an EV startup co-founded by Kranz. ¶70. Canoo allegedly developed a breakthrough EV platform with plans to build up to four new EVs. *Id.* Canoo Holdings debuted its first subscription-only electric model, called "canoo," on September 24, 2019. ¶71. According to technology blog, *The Verge*, "Canoo reportedly [had] a commitment of around $1 billion from a group of unnamed investors" with "plans to start road testing [a] vehicle later this year, ahead of the planned 2021 launch." ¶72. Online newspaper, *TechCrunch*, reported that "Canoo has finally unveiled its first model, the eponymously named canoo, . . . slated to appear on the road by 2021." ¶73. Kranz told *TechCrunch* that Canoo would begin offering a vehicle subscription. *Id.* A "Netflix . . . [for] the auto industry" on a "'city-by-city'" basis as "'[e]ight to 10 cities represent more than 70% of all the electric vehicle population.'" *Id.*

A primary rationale for the Merger was Canoo's purportedly ready-made source of revenue from its engineering and technology services unit and partnership with Hyundai. In connection

with the Merger announcement, Defendants caused Canoo to represent that Canoo Holdings' engineering and technology services business *was expected to generate a compounded average growth rate of 39%* and that its "current pipeline in this area" supported a "projected $120 million of revenue in 2021." ¶¶6, 18, 94-95, 100, 107.  On an August 18, 2020 conference call, Balciunas, then Canoo's Chief of Finance and Corporate Development, called the relationship with Hyundai a "multiple phase partnership" and described Canoo's engineering services line of business as a "very important part of our overall strategy."  ¶¶95-96.  Similarly, in a September 24, 2020 presentation to analysts and investors, Defendants caused HCAC IV and Canoo Holdings to represent that Canoo's engineering and technology services business enjoyed strong partnerships with major automotive original equipment manufacturers ("OEMs").  ¶8.  Such OEMS included Hyundai due to Canoo's skateboard design for Hyundai and Kia EVs and purpose-build vehicles. *Id.*  Defendants caused Canoo Holdings and HCAC IV to repeatedly tout the engineering and technology services unit and Canoo Holding's Hyundai partnership throughout the run up to the Merger.  ¶¶8-9, 87, 91, 93-96, 98, 100-104.

On December 21, 2020, HCAC IV and Canoo Holdings announced that stockholders approved the Merger, which closed the same day.  ¶79.  The combined company was named Canoo Inc. and continues to be listed on NASDAQ.  ¶5.

On January 13, 2021, the Company filed with the SEC a Shelf Registration Statement signed by Aquila, Dattilo, Chiang, Ethridge, Schmueckle, Sheeran, and von Storch.  ¶106.  On January 25, 2021, Canoo filed a Prospectus with the SEC, which formed part of the Shelf Registration Statement.  ¶22.  The Shelf Registration Statement carried forward the same materially false and misleading statements used in the run-up to the Merger.  For example, Canoo stated throughout the Shelf Registration Statement that its engineering and technology services

provided the Company with "a unique opportunity to generate . . . a projected $120 million of revenue," a "strategic pipeline for future business opportunities and de-risk [of the] overall business," and "significant growth potential" based on the growing EV market.  ¶¶18-21, 95.  Additionally, the Shelf Registration Statement stated that "[i]n February 2020, [the Company] entered into an agreement with Hyundai Motor Group to co-develop a future EV platform."  ¶21.

However, when the Company announced its financial results for the fourth quarter and full year of 2020 on March 29, 2021, shareholders were shocked to learn that Canoo reported *no engineering services revenue* for the 2020 fourth quarter despite reporting $2.55 million in engineering services revenue during the first nine months of 2020.  ¶24.  On April 2, 2021, Canoo held an earnings conference call with analysts and investors during which Aquila, Canoo's Executive Chairman, revealed that Canoo decided to "de-emphasize the originally stated contract engineering services line," and that its arrangement with Hyundai had been placed "on hold." ¶¶25, 46, 112.  Securities analysts noted that this strategy contradicted Defendants' statements prior to, and after, the Merger.  ¶114.  Analyst Craig Irwin, from Roth Capital Partners, acknowledged the "significant surprises on the call today, and that's not ideal after a SPAC. . . ." *Id.*  Steve Sakanos, an analyst from Cronos Capital, asked what happened to the discussions with some OEMs.  ¶117.  Defendant Aquila apologized, saying, "[a]s a leader, you always own the past before the present or the future."  ¶118.  The Company also announced that Balciunas, Canoo's CFO, had resigned effective that day.  ¶24.

On this news, the trading price of Canoo common stock crashed more than 21%, from $11.80 per share on March 29, 2021 to $9.30 per share on March 30, 2021, and eventually to $8.47 per share on April 5, 2021, a loss of $1.6 billion in stockholders' equity.  ¶26.  Canoo now faces class action lawsuits brought by Canoo stockholders (the "Securities Class Actions") alleging that

the Company, Petruska, Bell, Shea, Burns, O'Neil, Mas, McClain, Ethridge, Kranz, Aquila, Balciunas, HCP IV, and HC LLC violated §§10(b) and 20(a) of the Securities Exchange Act of 1934.  ¶28.

## III.   ARGUMENT

### A.     Demand Is Excused as Futile

#### 1.     Pleading Standards for Demand Futility

"[T]he purpose of the derivative action [is] to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'"  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991).[3]  Canoo is a Delaware corporation.  Therefore, Delaware law controls the demand futility analysis.  *Id.* at 109; *In re SFBC Int'l, Inc. Sec. & Deriv. Litig.*, 495 F. Supp. 2d 477, 483 (D.N.J. 2007).

The Delaware Supreme Court recently adopted a "universal test" for pleading demand futility.  *United Food & Com. Workers Union v. Zuckerberg*, 2021 WL 4344361, at *16 (Del. Sept. 23, 2021).  Under the new standard, "courts should ask the following three questions on a director-by-director basis when evaluating allegations of demand futility":

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

---

[3]   Citations and footnotes are omitted and emphasis is added unless otherwise noted.

> If the answer to any of the questions is "yes" for at least half of the members of the demand board, then demand is excused as futile. It is no longer necessary to determine whether the *Aronson* test or the *Rales* test governs a complaint's demand-futility allegations.

*Id.* at *17. The new three-pronged test blends the tests from *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled in part by Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000) and *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), which "'both "address the same question of whether the board can exercise its business judgment on the corporat[ion]'s behalf" in considering demand,'" and is "consistent with and enhances" those cases and their progeny. *Zuckerberg*, 2021 WL 4344361, at *16-*17. Because of that continuity, the "cases properly construing *Aronson*, *Rales*, and their progeny remain good law." *Patel v. Duncan*, 2021 WL 4482157, at *18-*19 (Del. Ch. Sept. 30, 2021).

In assessing demand futility, the Court must "consider all the particularized facts pled by the plaintiffs . . . in their totality and not in isolation from each other, and draw all reasonable inferences from the totality of those facts in favor of the plaintiffs." *See Del. Cnty. Emps.' Ret. Fund v. Sanchez*, 124 A.3d 1017, 1019 (Del. 2015); *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) ("On the other hand, the pleader is not required to plead evidence" under Rule 23.1.). These standards "recognize[] that the purpose of the particularity requirement is not to prevent derivative actions from going forward, but rather 'to ensure only derivative actions supported by a reasonable factual basis proceed.'" *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *16 (Del. Ch. May 21, 2013).

Plaintiff does not assert a so-called *Caremark* claim.[4] In *Stone v. Ritter*, 911 A.2d 362 (Del. 2006), the Delaware Supreme Court confirmed that not every shareholder derivative action

---

[4]   Canoo incorrectly claims Plaintiff has asserted an "oversight" claim based on *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967, 971 (Del. Ch. 1996). *See* D.I. 38 at 12-15. In *Genworth Financial. Inc. Consolidated Derivative Litigation*, the Delaware Chancery Court

is a third-party oversight *Caremark* action.  As here, "[w]here directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities," they can be held liable for their own misconduct.  *Id.* at 370.  Plaintiffs need only show that Defendants had a known legal duty to act – here, a fiduciary duty of loyalty to speak the entire truth whenever they chose to say anything about Canoo's financial performance and prospects – and that Defendants consciously failed to act as their legal duty required.  *Malone v. Brincat*, 722 A.2d 5, 10-12 (Del. 1998); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 157-58 (Del. Ch. 2004).

Here, when all of the facts alleged in the Complaint are viewed collectively, as they must be, a plausible inference can be drawn that Defendants knew that their statements made in connection with the financial performance and prospects of the Company's engineering and technology services business and the status of its agreement with Hyundai were false and misleading.  Importantly, nothing in Canoo's Motion to Dismiss contradicts this plausible inference.  *Int'l Equity Cap. Growth Fund, L.P. v. Clegg*, 1997 WL 208955, at *5 (Del. Ch. Apr. 22, 1997) (even if no single allegation taken in isolation would be sufficient to raise a reasonable doubt regarding a director's independence, *the totality of the plaintiffs' allegations in combination* may be sufficient to do so); *Bergstein v. Tex. Int'l Co.*, 453 A.2d 467, 469 (Del. Ch. 1982).

---

recently rejected defendants' attempt to impose *Caremark* under similar circumstances, noting that the "Plaintiffs' claim is *not* that the Board missed red flags . . . but rather that the Board had direct knowledge of the contemporaneous wrongdoing *and participated in it* by endorsing the false and misleading disclosures and allowing them to stand uncorrected." 2021 WL 4452338, at *14-*15 (Del. Ch. Sept. 29, 2021) (emphasis in original).  The court was explicit that "[t]his is not a *Caremark* claim." *Id.* at *14; *see also City of Hialeah Emps.' Ret. Sys. v. Begley*, 2018 WL 1912840, at *2 (Del. Ch. Apr. 20, 2018) (stating that *Caremark* did not apply where "the complaint allege[d] that the directors *in fact knew* about the misleading nature of [the Company's statements] and *consciously chose* to continue making misrepresentations") (emphasis in original).  Such is the case here.

Canoo's certificate of incorporation does not change the analysis or the applicable standards. "Directors are not protected under a §102(b)(7) provision when a complaint alleges facts that infer a breach of loyalty or good faith." *In re Abbott Lab'ys Deriv. S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003). Plausible claims of bad faith are not exculpated under §102(b)(7). *See Stone*, 911 A.2d at 367 (§102(b)(7) "can exculpate directors from monetary liability *for a breach of the duty of care*, but not for conduct that is not in good faith or a breach of the duty of loyalty"). Moreover, Aquila, Hennessey, Kranz, and Balciunas' breaches of care *as officers* cannot be exculpated under §102(b)(7). *See, e.g.*, *In re Rural Metro Corp.*, 88 A.3d 54, 85 (Del. Ch. 2014) ("The presence of an exculpatory provision does not eliminate the underlying duty of care or the potential for fiduciaries to breach that duty."); *see also* 8 *Del. C.* §102(b)(7) (excludes officers).

At the time this action was commenced, Canoo's Board consisted of nine members. ¶140. A pre-suit demand is excused because the particularized facts pled sufficiently raise a reasonable doubt that a majority of the Board are interested in the Merger as each face a substantial likelihood of liability and/or received a unique benefit in the Merger. *Zuckerberg*, 2021 WL 4344361, at *17; *Aronson*, 473 A.2d at 814; *Rales*, 634 A.2d at 930.

### 2.    Defendants Aquila, Dattilo, Chiang, Etheridge, Schmueckle, Sheeran, and Von Storch Each Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty

Demand upon Aquila, Chiang, Dattilo, Etheridge, Schmueckle, Sheeran, and von Storch is futile because they each face a substantial likelihood of liability for issuing and/or failing to correct materially false and misleading statements to shareholders via SEC filings, press releases, and other statements. Specifically, each of these defendants signed the Company's January 12, 2021 Shelf Registration Statement which registered for sale Canoo shares and misrepresented and/or omitted material facts reflecting the true state of the Company's engineering and technology

services business and its partnership with Hyundai. *Shaev v. Baker*, 2017 WL 1735573, at \*14, \*19 (N.D. Cal. May 4, 2017) ("a director cannot simply implement control systems, consciously fail to oversee its operations, and then claim to have satisfied [their] fiduciary duty to monitor"). Under Delaware law, "[f]iduciary duty requires honesty from corporate directors in their communications with the public and shareholders about corporate matters." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*, 2012 WL 424557, at \*6 (N.D. Cal. Feb. 9, 2012). "When . . . directors communicate with shareholders, they also must do so with *complete candor*." *In re Tyson Foods, Inc.*, 2007 WL 2351071, at \*3 (Del. Ch. Aug. 15, 2007) (emphasis in original).

The Complaint alleges that as part of the Merger, Defendants misrepresented that the Company's then-developed sole line of business generating any revenue – its engineering and technology services business – was expected to generate a compounded average growth rate of 39% and that the "current pipeline in this area is supportive of a projected $120 million of revenue in 2021." ¶¶6, 18, 94-95, 100, 107. In addition, Defendants misrepresented that the Company's engineering and technology services business enjoyed a strong partnership with Hyundai which they represented had chosen Canoo as its EV partner to jointly develop an all-electric platform based on Canoo's skateboard design for Hyundai and Kia EVs and purpose-built vehicles. ¶¶8, 87-90, 93, 96, 98, 103.

After the Merger, Defendants continued to misrepresent that the engineering and technology services business was robust and that the partnership with Hyundai was an important part of the Company's growth strategy. For example, on January 13, 2021, Canoo filed a Shelf Registration Statement on Form S-1 with the SEC in which the Company announced that it intended to raise approximately $280.1 million from the exercise of warrants by most of the Individual Defendants. ¶¶15, 106.

The Shelf Registration Statement carried forward many of the material misrepresentations and omission first made in connection with the Merger and thereafter.  For example, the Shelf Registration Statement stated that: (1) Canoo's engineering services provided the Company with "a unique opportunity to generate immediate revenues in advance of the offering of our first vehicle and our current pipeline in this area is supportive of a projected $120 million of revenue in 2021"; (2) the engineering and technology services business would "offer significant growth potential in the future as projected demand grows for EVs and their related technologies, namely in platform/skateboard development, powertrain, battery technologies and power electronics, among other areas, in which we have substantial expertise"; and (3) that "[i]n February 2020, we entered into an agreement with Hyundai Motor Group to co-develop a future EV platform based on our modular and scalable skateboard technology, providing further validation of our technical leadership and external confidence in our commercial prospects."  ¶¶15-21, 107-108.  The Shelf Registration Statement was signed by Aquila, Chiang, Dattilo, Ethridge, Schmueckle, Sheeran, and von Storch.  ¶106.  On January 25, 2021, Canoo filed a Prospectus with the SEC, which formed part of the Shelf Registration Statement.  ¶22.

However, on March 29, 2021, Defendants caused Canoo to announce its fourth quarter 2020 and full year financial results that demonstrated that each of the above statements were materially false and misleading when made.  Specifically, Canoo reported *no engineering services revenue* during the fourth quarter of 2020, after reporting $2.55 million in engineering services revenue during the first nine months of 2020.  ¶111.  Thus, the Company had already abandoned its engineering services at least three months before it issued the Shelf Registration Statement touting the value and revenues its engineering services business was bringing.  During an earnings conference call with analysts that day, Aquila also admitted that Defendants had decided to "de-

emphasize the originally stated contract engineering services line" and that the partnership with Hyundai had been put "on hold." ¶112.  Despite touting Canoo's engineering services business as a "unique opportunity" that would generate $120 million of revenue, Aquila now admitted that engineering services is "not the best business line to be in" and that "obviously, [Aquila is] not a big fan of doing that type of business." ¶¶112-113.  When questioned by another analyst, Aquila admitted that the "original SPAC model" had been abandoned.  ¶¶115-116.  Aquila similarly admitted that the previous statements were "a little more aggressive" than they should have been and were not "at our standard of representation to the public markets." ¶117.  Aquila ended the call stating "again I apologize to anybody." ¶118.  Accordingly, each of these defendants knew as early as the end of the third quarter of 2020 that all of their statements regarding Canoo's engineering services and its partnership with Hyundai were materially false and misleading because they each knew the Company had abandoned the engineering services business and ended the partnership with Hyundai.

Knowingly making materially false and misleading statements to shareholders in SEC filings is a loyalty breach and subjects Aquila, Chiang, Dattilo, Etheridge, Schmueckle, Sheeran, and von Storch to a substantial likelihood of liability.  *Pirelli*, 2012 WL 424557, at *6; *Tyson*, 2007 WL 2351071, at *3 ("When . . . directors communicate with shareholders, they also must do so with *complete candor*.") (emphasis in original); *see also In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. Aug. 13, 2007) (noting signatures on false and misleading Forms 10-K are "egregious enough that the directors involved are likely to face personal liability"); *Forestal v. Caldwell*, 2016 WL 9774914, at *10 (C.D. Cal. Nov. 14, 2016) (finding that directors face a significant likelihood of personal liability for signing off on misstatements in the company's Form

10-K).  Accordingly, these material misrepresentations and omissions breached these defendants' duty of loyalty and candor and renders them liable to Canoo.

Demand upon Dattilo, Schmueckle, and von Storch, is also futile because they each face a substantial likelihood of liability based on their conduct as Audit Committee members.  ¶145. Specifically, as members of Canoo's Audit Committee, Dattilo, Schmueckle, and von Storch were directly charged with, among other things, reviewing and discussing with management and the Auditors "any proposed earnings press releases and other financial information and guidance regarding the Company's results of operations provided publicly" and reviewing the "preparation of any report of the Committee required by applicable law or stock exchange listing requirements." ¶134.

Due to their role in reviewing public statements regarding the Company's financial results and the reports required by applicable law, Dattilo, Schmueckle, and von Storch were aware that the Company had abandoned the engineering services business prior to the fourth quarter of 2020 and had suspended its partnership with Hyundai.  Thus, they also knew that the public statements regarding the importance of the engineering services segment and touting the Hyundai partnership in the Shelf Registration Statement were materially false and misleading.  Nevertheless, Dattilo, Schmueckle, and von Storch abdicated their responsibilities by: (1) issuing materially false and misleading statements, or failing to correct such statements, regarding the importance of the engineering segment of Canoo's operations and touting the partnership with Hyundai; (2) failing to monitor or enforce adherence to what controls did exist, such as Canoo's Code of Conduct; and (3) failing to disclose Canoo's true operational and financial condition to investors as required by the federal securities laws.  Thus, Dattilo, Schmueckle, and von Storch each face a substantial

- 14 -

likelihood of liability.[5]  *Kandell ex. rel. FXCM, Inc. v. Niv*, 2017 WL 4334149, at \*17 (Del. Ch. Sept. 29, 2017) ("'Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.'"); *Metro Commc'n*, 854 A.2d at 159 (same); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 278 (S.D.N.Y. 2006) (applying Delaware law and holding that board members serving on the company's audit committee faced a substantial likelihood of liability for failing to fulfill their responsibilities expressly referenced in the committee's charter, thereby "'conscientiously permitt[ing] a known violation of law by the corporation to occur'"); *Mitzner v. Hastings*, 2005 WL 88966, at \*5-\*6 (N.D. Cal. Jan. 14, 2005) (same); *Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, 2009 WL 3853592, at \*1, \*3-\*4 (M.D. Fla. Mar. 30, 2009) (same); *In re Zillow Grp., Inc. S'holder Deriv. Litig.*, 2020 WL 978503, at \*3 (W.D. Wash. Feb. 28, 2020) (same).

Finally, Plaintiff need not plead reliance.  D.I. 37 at 17. Unlike direct actions challenging disclosures, derivative disclosure cases are analyzed without any reference to a reliance element. *See, e.g.*, *INFOUSA*, 953 A.2d at 990 (finding that directors violated fiduciary duties by not communicating with "complete candor and in good faith," and holding this was "sufficient to subject directors to liability in a derivative claim"); *Caldwell*, 2016 WL 9774914, at \*9 (same);

---

[5]    Demand futility is also sufficiently alleged with respect to Plaintiff's unjust enrichment claim. *See, e.g.*, *Hughes v. Xiaoming Hu*, 2020 WL 1987029, at \*18 (Del. Ch. Apr. 27, 2020) ("*Kandi*") (excusing demand as to unjust enrichment claim where directors faced a substantial likelihood of liability for breach of fiduciary duty claim and noting that where a substantial threat of liability is adequately alleged for Rule 23.1 purposes, the complaint will also survive a Rule 12(b)(6) motion to dismiss); *Baker*, 2017 WL 1735573, at \*19 ("Because Plaintiffs' claim for unjust enrichment rests on the same theory as the claim for breach of fiduciary duty, the Court concludes that Defendants also face a substantial likelihood of liability as to that claim for the same reasons."); *Pfeiffer v. Leedle*, 2013 WL 5988416, at \*10 (Del. Ch. Nov. 8, 2013) (same); *Teamsters Loc. 443 Health Servs. & Ins. Plan v. Chou*, 2020 WL 5028065, at \*26 (Del. Ch. Aug. 24, 2020) (same).

*Zillow Grp.*, 2020 WL 978503, at *3 (same).  Accordingly, the Individual Defendants' reliance defense fails.

Thus, a majority of the Board faces a substantial likelihood of liability for their breaches of fiduciary duty of loyalty and demand is excused.  Moreover, because "the activities alleged as breaches of fiduciary obligations is the same conduct" that underlies the wrongdoing defined in each of the four counts defined in the Complaint, an investigation of the Proxy Defendants and the Securities Class Action defendants would "necessarily implicate" the same set of facts as Counts III and IV.  *Teamsters*, 2020 WL 5028065, at *26; *accord Zuckerberg*, 2021 WL 4344361, at *17 (stating that demand is futile on a particular director if that "director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand"); ¶¶155-171. A Board majority faces a substantial likelihood of liability as to Counts III and IV and, thus, they cannot impartially consider a demand as to Counts I and II.  *Id.*  Defendants are wrong to claim otherwise.  D.I. 37 at 12.

### 3. Demand Is Excused as to Defendants Aquila and Ethridge Because They Each Received a Unique Material Personal Benefit from the Alleged Misconduct

Demand is futile where directors have "received a material personal benefit from the alleged misconduct that is the subject of the litigation demand."  *Zuckerberg*, 2021 WL 4344361, at *17; *see also Kahn v. Portnoy*, 2008 WL 5197164, at *9 (Del. Ch. Dec. 11, 2008) (a director is "interested in a transaction when the director receives a personal benefit . . . not shared by the other shareholders of the corporation and the benefit is of subjective material significance to the director" or "where the director stands on both sides of the transaction"); *Calma ex rel. Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 575 (Del. Ch. 2015) ("a director is not disinterested if he or she 'appear[s] on both sides of a transaction [or] expect[s] to derive any personal financial benefit from it in the sense of self-dealing'") (quoting *Aronson*, 473 A.2d at 812).  This is because "directors

- 16 -

cannot faithfully decide whether proceeding with the corporation's litigation is in the corporation's best interest when the complaint seeks redress for the conduct that gives rise to the personal financial benefit for which the directors alone have received." *In re Gen. Instrument Corp. Sec. Litig.*, 23 F. Supp. 2d 867, 873 (N.D. Ill. 1998) (citing *Aronson*, 473 A.2d at 814).

As detailed at page 5 *supra*, Ethridge and Aquila each signed the January 13, 2021 Shelf Registration Statement that contained materially false and misleading statements regarding Canoo's focus on engineering services and the partnership with Hyundai. In addition, both of these defendants were involved in disseminating (or allowing to be disseminated) materially false and misleading statements prior to the Merger regarding the same subject matter. *Id.* In fact, defendants Ethridge and Aquila were incentivized to issue materially false and misleading statements regarding the true state of affairs at Canoo because they each received a material personal benefit from the closing of the Merger. At the close of the Merger, Ethridge received a payment of more than $500,000 from the Company. ¶¶44, 143. Similarly, Aquila received over $35 million from the Company in 2020 and, because the investing public did not know the true state of affairs at Canoo, was able to sell more than 15 million shares of Canoo stock for over $220 million in unlawful proceeds through the January 12, 2021 Shelf Registration Statement. ¶¶15, 46, 143.

Thus, demand is excused as to Ethridge and Aquila because they each received a material personal financial benefit from the wrongdoing alleged.

### B.     Plaintiff Adequately Alleges Claims Against the Individual Defendants

#### 1.     Applicable Legal Standards

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual

allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint need only contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Because only the legal sufficiency of the Complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, the Court is "require[d] . . . to accept as true all material allegations of the complaint . . . 'and view [] them in the light most favorable to the plaintiff.'" *King v. Baldino*, 648 F. Supp. 2d 609, 615 (D. Del. 2009), *aff'd*, *King ex. rel. Cephalon Inc. v. Baldino*, 409 F. App'x 535 (3d Cir. 2010).

### 2.    Plaintiff Has Stated Claims for Breach of Fiduciary Duty and Unjust Enrichment

"In the context of a motion to dismiss for failure to state a claim . . . the pleading standard does not reach so high a bar as Rule 23.1." *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007). "If the complaint survives the 'more onerous' pleading standard required by Rule 23.1, 'assuming that it otherwise contains sufficient facts to state a cognizable claim,' it necessarily will survive the Rule 12(b)(6) notice pleading standard." *H & N Mgmt. Grp., Inc. v. Couch*, 2017 WL 3500245, at *3 (Del. Ch. Aug. 1, 2017); *see also Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *7 (Del. Ch. Oct. 10, 2006) ("Court of Chancery Rule 23.1 imposes on a plaintiff prosecuting a derivative action a pleading burden that is 'more onerous' than the burden a plaintiff must satisfy when confronted with a motion to dismiss under Court of Chancery Rule 12(b)(6).").

Plaintiff has established that each Board member faces a substantial likelihood of liability for breaching non-exculpated fiduciary duties of loyalty and good faith by, among other things,

disseminating materially false and misleading statements and trading Company stock on non-public information. *See* § III.A., *supra.* Thus, Plaintiff has also met the more lenient Rule 12(b)(6) standard and established a claim upon which relief can be granted.

Plaintiff has also adequately stated a claim against the Individual Defendants for unjust enrichment. To plead a claim for unjust enrichment, Plaintiff must show that Defendants "'secured a benefit, and that it would be unconscionable to allow them to retain that benefit.'" *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1105 (Del. Ch. 2003), *aff'd*, 847 A.2d 1121 (Del. 2004). Here, the Individual Defendants received hundreds of millions of dollars in undeserved compensation, bonuses, benefits and ill-gotten insider trading gains from the sale of their warrants pursuant to the January 2021 Shelf Registration Statement while knowingly breaching their fiduciary duties to Canoo and causing the Company to incur millions of dollars in damages. ¶¶36-47, 50-54. Because these benefits were not obtained "justifiably," but rather were obtained against "the fundamental principles of justice or equity and good conscience," the Individual Defendants were unjustly enriched. *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999); *In re Oracle Corp.*, 867 A.2d 904, 932 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005). Thus, Plaintiff has adequately alleged a claim against the Individual Defendants for unjust enrichment.

### C.    Plaintiff Has Stated a Claim for Violations of Section 14(a)

#### 1.    Legal Standards Applicable to Section 14(a)

Section 14(a) makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy" in contravention of SEC rules and regulations. 15 U.S.C. §78n(a)(1). SEC Rule 14a-9 provides that no proxy solicitation shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is [materially] false or misleading, . . . or which omits to state any material fact necessary" to render "the statements . . . not false or misleading." 17 C.F.R. §240.14a-9(a). "The 'broad remedial purpose' of Rule 14a-9 'is not

merely to ensure by judicial means that the transaction, when judged by its real terms, is fair and otherwise adequate, but to ensure disclosures by corporate management in order to enable the shareholders to make an informed choice.'"  *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 289-90 (S.D.N.Y. 2010) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976)).  "Section 14(a) is satisfied '[o]nly when the proxy statement fully and fairly furnishes all the objective material facts' to allow a reasonably prudent investor 'to make an informed investment decision . . . .'"  *Id.* at 290.  "In interpreting the language of a proxy statement, doubts are to 'be resolved in favor of those the statute is designed to protect.'"  *Id.* (quoting *TSC Indus.*, 426 U.S. at 448).

Defendants argue that because Plaintiff's §14(a) claim sounds in fraud, Plaintiff's allegations must meet the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  D.I. 37 at 24-25.  Defendants' arguments betray their misunderstanding of the pleading requirements for stating a claim under §14(a) and should be rejected.  Plaintiff explicitly disclaimed any §14(a) claim sounding in fraud.  ¶157.  Courts in the Third Circuit have also repeatedly held that Plaintiff need only show negligence to succeed under §14(a); *not* scienter.  *See, e.g.*, *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 777 (3d Cir. 1976) ("[T]he district court held negligence to be the appropriate standard under section 14(a) and we agree."); *In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 538 (D. Del. 2012) (same); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143-44 (3d Cir. 2004) ("[S]cienter is not a necessary element in alleging a section 14(a) claim.").

Where, as here, there is no allegation sounding in fraud, there is no application of Rule 9(b) or the PSLRA.  *SEPTA v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at \*11 (M.D. Pa. June 22, 2015) ("[I]f the allegations are pled separately and plaintiffs expressly premise Securities Act

claims on negligence rather than fraud, Rule 9(b) is inapplicable."); *Heckmann*, 869 F. Supp. 2d at 538 ("This court has declined to apply the PSLRA's heightened pleading requirements that a plaintiff 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind' to claims brought under §14(a)."); *Bank of Am.*, 757 F. Supp. 2d at 320-22 (same). Plaintiff need only plead a "'short and plain statement'" describing Defendants' plausibly negligent issuance of the misleading proxy and its link to shareholder votes on the Merger proposal. *Twombly*, 550 U.S. at 545. Plaintiff has easily satisfied this standard.

### 2. Plaintiff Adequately Alleges that the Proxy Defendants Made Materially Misleading Statements and Omissions

In the proxy, Ethridge, Kranz, Aquila, Balciunas, and Hennessy (the "Proxy Defendants") solicited proxies to approve a merger with Canoo Holdings. ¶¶100, 160. In soliciting stockholders' vote on the Merger, the Proxy Defendants highlighted Canoo Holdings' engineering services business as "a unique opportunity to generate immediate revenues" in advance of the post-merger company's first EV offering. ¶100. They claimed that Canoo Holdings' engineering and technology services business was expected to generate a compounded average growth rate of 39%, and that its "current pipeline in this area is supportive of a projected $120 million of revenue in 2021." ¶¶6, 100. The Proxy Defendants also highlighted Canoo Holdings' agreement with Hyundai to jointly develop an EV platform for future Hyundai models, which they emphasized as evidence of Canoo's technical capabilities. ¶103. These statements were materially misleading when made. By the time the proxy solicitation was issued, Canoo Holdings had already abandoned its engineering services line of business, was not generating engineering services revenue, and its arrangement with Hyundai had already been suspended. ¶111. The Proxy Defendants' failure to disclose these material facts renders the above statements about Canoo Holdings' relationship with Hyundai and its business, operations, and prospects materially false and/or misleading.

In response to these well-pled allegations, Defendants argue that Plaintiff failed to allege facts showing Canoo Holdings had decided to abandon its engineering services business and suspend its arrangement with Hyundai by the time of the proxy solicitation.  D.I. 37 at 21-22.  Not so.  Plaintiff alleged that after having reported $2.55 million in engineering services revenue during the first nine months of 2020, Canoo reported *no engineering services revenue* for fourth quarter 2020.  ¶111.  The plausible – and, in fact, the only – inference that can be drawn from these factual allegations is that Canoo Holdings did not generate any engineering services revenue during the fourth quarter of 2020 because it had already abandoned its engineering services line of business and already suspended its arrangement with Hyundai by that time.

Defendants also argue that the challenged statements are inactionable forward-looking statements.  D.I. 37 at 22-24.  But Defendants ignore the fact that these statements omitted material information about present conditions and risks.  The PSLRA's safe-harbor provision applies only to "forward-looking statement[s]."  15 U.S.C. §77z-2(a).  "'[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present.'" *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009).  Further, "omissions of existing facts or circumstances are not forward-looking, and thus do not qualify for safe harbor protection."  *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 471 (E.D. Pa. 2014); *see also Carmignac Gestion, S.A. v. Perrigo Co. PLC*, 2019 WL 3451523, at *11 (D.N.J. July 31, 2019) ("The statements . . . cannot constitute forward-looking statements for safe harbor purposes because they omit existing facts that bear on the . . . projections . . . .").

Here, Defendants' statements about Canoo Holdings' business and operations misrepresented and omitted material information concerning its present state.  For instance, Defendants stated that Canoo Holdings' "*current* pipeline in [engineering and technology services]

- 22 -

is supportive of a projected $120 million of revenue in 2021." ¶100. Similarly, Defendants represented that Canoo Holdings' arrangement with Hyundai "establish[ed] an attractive strategic pipeline for future business opportunities and de-risk[ed] the overall business model." ¶103. These statements constitute definitive representations about Canoo Holdings' then-current ability to generate revenue from its engineering and technology services business and arrangement with Hyundai. And, in making these statements, Defendants knowingly omitted then-existing material facts, including, namely, that Canoo Holdings had already abandoned its engineering services business and its arrangement with Hyundai was then suspended. Accordingly, the Company's statements are not "forward-looking" and, therefore, do not fall within the PSLRA's safe-harbor provision. *See, e.g.*, *Viropharma*, 21 F. Supp. 3d at 471.

Even if Defendants' statements were forward-looking (which they were not), they still fail to qualify for safe-harbor protection because they were not accompanied by "meaningful cautionary statements." The PSLRA requires "meaningful cautionary statements" that "identif[y] important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. §77z-2(c)(1)(A)(i); *see, e.g.*, *Avaya, Inc.*, 564 F.3d at 256 ("'Cautionary language must be "extensive and specific." [V]ague or blanket (boilerplate) disclaimer . . . merely warn[ing] the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge.'").

In support of their argument that the Company's SEC filings contained sufficient cautionary language, Defendants rely on their warnings that "'th[e] forward-looking statements . . . involve a number of judgments, risks, and uncertainties,'" and "'the ability of Canoo to execute

its business model'" "'could cause actual results to differ.'"  D.I. 37 at 23.  But general warnings are insufficient to preclude liability for misleading statements under the auspices of the PSLRA's safe-harbor.  *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, 2011 WL 2444675, at *13 (D. Del. June 14, 2011) ("'Safe Harbor Statement'" in media presentations failed to adequately warn of "secular decline" in operations); *In re Cambrex Corp. Sec. Litig.*, 2005 WL 2840336, at *8 (D.N.J. Oct. 27, 2005) ("high standard required for cautionary language to negate a misrepresentation [was] not met" where warnings were "too vague to protect earnings estimates that were based on allegedly fraudulent accounting practices").

### 3.     Plaintiff Adequately Pleads Loss Causation

Defendants also argue that Plaintiff's §14(a) claim should be dismissed for failure to plead loss causation.  D.I. 37 at 25-27.  Wrong.  In *General Electric Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992), the Third Circuit held that damages are recoverable under §14(a) when "the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought."  *Id.*

That is precisely what Plaintiff alleged here.  In the Complaint, Plaintiff alleges that the Proxy Defendants solicited stockholder votes in favor of the Merger based on a false and incomplete proxy statement that misrepresented Canoo Holdings' business and relationship with Hyundai, and that such proxy solicitation resulted in the stockholders approving the Merger and the Company acquiring Canoo Holdings, for which it substantially overpaid.[6]  In other words,

---

[6]     At the pleading stage, Plaintiff need not plead damages with particularity, but merely needs to provide a plausible connection between the Individual Defendants' improper conduct and some damage to the corporation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (stating that to plead loss causation, a plaintiff need only "provide a defendant with *some* indication of the loss and the causal connection that the plaintiff has in mind"); *Bank of Am.*, 757 F. Supp. 2d at 329

Plaintiff alleged that: (i) the "transaction" for which stockholder votes were solicited was the Merger; the proxy statement contained material misstatements about Canoo Holdings' business, operations, and prospects; (ii) stockholders approved the "transaction" (the Merger) based on the misleading proxy statement; and (iii) caused the Company to purchase Canoo Holdings at an inflated price.  This sufficiently alleges a direct loss causation, an "essential link," between the misleading proxy statement and the harm to the Company.

The Supreme Court has repeatedly upheld derivative §14(a) liability based on this precise theory, *i.e.*, that proxy misled stockholders about the value of a merger target, that stockholders would not have voted to approve the merger had the proxy statements been truthful about the acquisition target, and that the merger caused injury.  *See, e.g.*, *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 381-82 (1970).  The Motion dismissing Plaintiff's §14(a) claim should be denied.[7]

### D.     Plaintiff's Contribution Claim Should Stand or Be Stayed

Defendants argue that Plaintiff's claims for contribution must be dismissed as unripe because no judgement has yet been entered.  D.I. 37 at 27.  But Defendants ignore that Canoo has already incurred substantial damages as a result of the Individual Defendants' wrongdoing and breaches of fiduciary duty, including litigation-related damages and reputational harm.  Where, as

---

(same); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1016 (N.D. Cal. 2007) (same). Plaintiff has done so here.

[7]    In the event the Court finds that Plaintiff has not adequately stated a §14(a) claim, it should retain jurisdiction of this action because the claim is not "'*so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction.'"  *Duke Power Co. v. Carolina Env't Study Grp.*, 438 U.S. 59, 70 (1978) (omission and emphasis in original); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 n.3 (2009) ("Federal courts lack subject-matter jurisdiction when an asserted federal claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'").

here, a company faces significant damages in related litigation, courts have found contribution claims to be ripe despite the fact that they are contingent upon final judgment being rendered in a related action.  *See, e.g.*, *Seibert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *3 (N.D. Cal. Oct. 16, 2013) (Tigar, J.) (denying challenge to contribution and indemnity claims on ripeness grounds, and noting that federal courts that have faced this question "have concluded either that indemnity and contribution claims are ripe, or that the contribution and indemnity claims are properly brought but should be stayed pending resolution of the underlying claim on which those claims are based"); *In re Tyco Int'l Ltd.*, 2004 WL 524429, at *4 (D.N.H. Mar. 16, 2004) (A contribution claim brought by corporate defendant against former CEO was ripe: "Tyco currently faces multiple lawsuits for extraordinary damages stemming, arguably, from Kozlowski's alleged breach of fiduciary duties.  The facts underlying Kozlowski's alleged liability for contribution will be developed in the present litigation and Tyco and Kozlowski are clearly adverse parties.  With this in mind, Tyco's contribution claim against Kozlowski is fit for judicial review.").

Further, allowing these claims to proceed will promote judicial efficiency by avoiding seriatim proceedings.  *See, e.g.*, *Hallam v. Gemini Ins. Co.*, 2015 WL 11237479, at *2-*3 (S.D. Cal. Apr. 8, 2015) (refusing to dismiss contribution claim despite fact it had yet to accrue, and stating that to do so "would contravene the purpose of Rule 14, which 'is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim'").  Were this Court to dismiss Plaintiff's contribution claim, Plaintiff would have to later bring a separate derivative action against the Securities Class Action defendants in the event Canoo is found liable for the misconduct alleged in the Complaint.  In the

interests of promoting judicial efficiency, Plaintiff's contribution claim should stand, or at the very least be stayed pending final judgment in the related Securities Class Action.

### E.  Defendants' Alternative Request for a Stay Pending Resolution of the Related Securities Class Actions Should Be Denied

"[T]he power to temporarily stay proceedings lies within the informed, sound discretion of the district courts."  *Nicholas v. Wyndham Int'l, Inc.*, 149 F. App'x 79, 81 (3d Cir. 2005).  Where a discretionary stay is proposed, the moving party bears the burden to show why a stay should be granted.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.").

Defendants fail to meet their burden of demonstrating the propriety of a stay "pending resolution of the Securities Actions," a process that could take years.  D.I. 37 at 29; *Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) (A party seeking a discretionary stay "'must demonstrate "a clear case of hardship or inequity," if there is "even a fair possibility" that the stay would work damage on another party.'").  They also ignore the fact that an indefinite stay will harm Canoo, on whose behalf the action is brought, by forcing it to wait years before having an opportunity to recoup the substantial damages it has suffered, and will continue to suffer, through Defendants' breaches of fiduciary duty and related misconduct.  This hardship far outweighs any purported benefit that might be gained by imposing a stay.  *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 2010 WL 3522327 (D. Del. Sept. 2, 2010) (declining to grant defendant's motion to stay proceedings when considerations did not favor either party).  Accordingly, Defendants' Motion to Stay should be denied.[8]

---

[8]  Defendants identify several instances in which a derivative case was stayed in favor of a related securities class action. D.I. 37 at 29.  The norm under such circumstances is for both actions to proceed simultaneously without delay.  *See, e.g.*, *In re CytRx S'holder Deriv. Litig.*, 2015 WL 12745085, at *3 (C.D. Cal. June 24, 2015); *In re Lumber Liquidators Holdings, Inc. S'holder Deriv. Litig.*, No. 4:15-cv-00016-AWA-LRL (E.D. Va.); *Hefler v. Wells Fargo & Co.*, No. 3:16-

### 1.   A Stay Would Harm Canoo and Plaintiff

A stay – particularly one of indefinite duration as that sought by Defendants – would cause unnecessary delay, inefficiencies, and costs that would prejudice Canoo and its shareholders. *CytRx*, 2015 WL 12745085, at *3 ("Upon review of the relevant factors, we are unconvinced that an indefinite stay of these proceedings is in the corporation's best interest."); *Sonkin v. Barker*, 670 F. Supp. 249, 253 (S.D. Ind. 1987) (stay would not serve "the interest of economy for itself, counsel, or the litigants" and "[a] stay of only the derivative action would run contrary to the objective of an orderly, coordinated progression of discovery in all of these [related] cases"); *BNSF Ry. Co. v. FirstEnergy Generation, LLC*, 2017 WL 7512944, at *1 (N.D. Tex. Nov. 27, 2017) (declining to stay action "[i]n the interest of resolving this action in a timely manner"). It may be years, if not decades, before the Securities Class Actions reach a full resolution. In that time, witnesses will scatter and memories will undoubtedly fade, destroying Canoo's chances of recovery in this action. *In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F. Supp. 3d 1033, 1043 (D. Or. 2015) (finding that "there is at least 'a fair possibility' that Plaintiffs will be harmed by a stay because of potential loss of evidence"); *Clark v. Lutcher*, 77 F.R.D. 415, 418 (M.D. Pa. 1977) ("As time progresses, evidence becomes stale, memories dim, and the search for truth, always a difficult task, becomes more and more burdensome.").

Moreover, in derivative actions such as this where resolution can result in improved controls and other governance enhancements at the company harmed by the underlying

---

cv-5479 (N.D. Cal.); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, No. 3:16-cv-5541 (N.D. Cal.); *In re Apple Inc. Sec. Litig.*, No. C-06-5208-JF (N.D. Cal.); *In re Apple Inc. Deriv. Litig.*, No. 5:06-cv-04128-JF (N.D. Cal.); *Norfolk Cnty. Ret. Sys. v. Cnty. Health Sys., Inc.*, No. 3:11-cv-0433 (M.D. Tenn.); *In re Cmty. Health Sys., Inc. S'holder Deriv. Litig.*, No. 3:11-cv-00489 (M.D. Tenn.); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-01691-JMR-FLN (D. Minn.); *In re UnitedHealth Grp. Inc. Deriv. Litig.*, No. 0:06-cv-1216 (D. Minn.).

wrongdoing, courts have recognized that a stay would prejudice corporate interests by delaying such a reckoning.  *See, e.g.*, *CytRx*, 2015 WL 12745085, at *3 (denying stay where "an extended delay would allow CytRx's defective internal controls to continue with no recourse"); *In re Universal Health Servs., Inc., Deriv. Litig.*, 2018 WL 8758704, at *1 n.1 (E.D. Pa. Dec. 10, 2018) (denying stay motion where "a long delay would allow the company's defective internal mechanisms, if any, to continue unchecked").  Canoo's interests are best served by allowing this action to proceed.

### 2.   Concurrent Prosecution Will Not Compromise Canoo's Defenses in the Securities Class Actions

Proceeding with this action now would not "divert the Company's financial and managerial resources from defending the pending Securities Actions" nor "undermine Canoo's defense in the Securities Actions" as Defendants suggest.  D.I. 37 at 31.  The argument that a public company's "interests in the derivative action conflict with its interests in the securities class action is formalistic and sacrifices pragmatic common sense."  *See, e.g.*, *Galena*, 83 F. Supp. 3d at 1044.  The Delaware Chancery Court criticized this very argument in *In re Molycorp, Inc. S'holder Derivative Litigation*:

> [A] corporation may be unfairly prejudiced if forced to adopt conflicting litigation strategies in related actions where it is simultaneously a defendant and a plaintiff.  But, a derivative action that seeks distinct damages for alleged breaches of fiduciary duty, rather than indemnification for possible securities laws violations, does not implicate the same practical considerations in the Court's calculus of whether to grant a stay.  In those circumstances, the Court may rationally conclude that a stay is not warranted if the potential overlap between the actions is not prejudicial.

2014 WL 1891384, at *5 (Del. Ch. May 12, 2014); *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007) ("'the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction'").

Similarly, Defendants' argument that litigating this action will unnecessarily divert Canoo's financial and management resources is also untenable.  D.I. 37 at 31.  Indeed, the opposite is true.  "[I]t is more efficient for [Canoo] to litigate the securities class action and the derivative cases simultaneously. . . . If [this action] is stayed and discovery progresses in the [S]ecurities [C]lass [A]ction[s], [then Canoo] ultimately may be subject to duplicative discovery, which would be a greater drain on the Company's managerial and financial resources."  *Galena*, 83 F. Supp. 3d at 1044 (citing *Smith ex. rel. Apollo Grp., Inc. v. Sperling*, 2012 WL 79237, at *3 (D. Ariz. Jan. 11, 2012)).  Indeed, this action and the Securities Class Actions arise out of substantially similar facts and should be litigated in parallel to conserve the Company's financial resources, rather than serially which would require the duplication of discovery.

Defendants fail to carry their heavy burden of showing actual hardship to the Company should a stay not be granted, and their concerns about potential prejudices to the Company are strongly outweighed by the efficiencies to be gained by prosecuting this action and the Securities Class Actions on similar tracks.  *See CytRx*, 2015 WL 12745085, at *3 (denying motion to stay despite noting that resources would be diverted from class action defense "and may undermine CytRx's defense in the securities action").  Accordingly, their arguments to the contrary should be rejected.

### 3. Efficiencies Support the Denial of a Stay

In derivative cases such as this, stays in favor of a related securities class action are routinely denied based on the fact that such a stay will do little or nothing to avoid duplication or promote judicial economy.  *See, e.g.*, *Universal Health Servs.*, 2018 WL 8758704, at *1 n.1 (stay not appropriate where derivative action raised issues "not at issue in the federal securities action"); *Molycorp*, 2014 WL 1891384, at *5 (stay not appropriate where "a derivative action . . . seeks distinct damages for alleged breaches of fiduciary duty, rather than [simply] indemnification for

possible securities laws violations"); *China Agritech*, 2013 WL 2181514, at *27; *Sonkin*, 670 F. Supp. at 254. Here, the action is legally and substantively distinct from the Securities Class Actions and the viability of Plaintiff's derivative claims do not turn on the resolutions of the Securities Class Actions. *See Hemostemix, Inc. v. Accudata Sols., Inc.*, 2021 WL 1198137, at *4 (D. Del. Mar. 30, 2021) ("[A]s there are different issues in each of the cases, it would not be beneficial to judicial economy to stay this action while the [other a]ction is pending."). Thus, Defendants' proposed stay will not "resolve or simplify" the legal issues central to the action as Defendants suggest. D.I. 37 at 33.

The recent Delaware Court of Chancery decision of *Kandi* explains why judicial economy is not served by a stay of derivative litigation. 2020 WL 1987029. In *Kandi*, the Court denied Rules 12(b)(6) and 23.1 motions seeking dismissal of the derivative claims despite the fact that related securities class actions had been dismissed for failure to plead facts with sufficient particularity to support a strong inference of scienter. *Id.* at *8 (citing *In re Kandi Techs. Grp., Inc. Sec. Litig.*, No. 17 Civ. 1944 (ER), 2019 WL 4918649, at *3-*6 (S.D.N.Y. Oct. 4, 2019)). Specifically, the Chancery Court rejected the derivative defendants' argument that they "should not be subject to liability" because the securities class action holding that the "restatement had no effect on the Company's net income . . . undercut the inference of fraud":

> For purposes of this [derivative] litigation, the defendants' observation is misplaced. "Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly." In the absence of quantifiable damages to net income, defendants are "still liable for damages incidental to their breach of duty." The plaintiff claims that the Company suffered incidental damages that include "costs and expenses incurred with the restatements, significant reputational harm in the markets, the defense of several lawsuits filed against the Company for violations of federal securities law, and the defense of an action

commenced by Plaintiff pursuant to 8 Del. C. §220." At the pleading stage, this allegation is sufficient to support a claim for relief.[9]

As in *Kandi*, the damages incurred by Canoo resulting from Defendants' breaches of fiduciary duty and related misconduct go well beyond the damages incurred, or to be incurred, as a result of the Securities Class Actions, including: "(i) costs and damages associated with the overpayment for the acquisition of Canoo Holdings in the Merger; (ii) costs incurred in connection with issuing false and misleading proxy solicitations seeking approval of the Merger; (iii) costs incurred in investigating and defending Canoo and its top insiders in the Securities Class Actions; (iv) lost sales and orders resulting from exposure of the Company's misleading disclosures regarding its business, operations and prospects; and (v) costs incurred from compensation and benefits paid to the Individual Defendants." ¶123. Thus, this action's survival is not contingent on the Securities Class Actions, and Defendants' arguments to the contrary should be rejected. *See Minerva Surgical, Inc. v. Hologic, Inc.*, 2021 WL 1840645 (D. Del. May 7, 2021), *aff'd*, 2021 WL 2856596 (D. Del. July 8, 2021); *Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*, 2017 WL 495869, at *1 (N.D. Tex. Feb. 7, 2017) (denying stay because allowing prior litigation to proceed would resolve "fewer than all issues before [the] court"); *Molycorp*, 2014 WL 1891384, at *7.

Moreover, once this action and the Securities Class Actions survive their respective pleading-stage burdens, the factual overlap of the claims will benefit, not harm, Defendants' respective discovery efforts. *See Galena*, 83 F. Supp. 3d at 1044 ("Further, the securities class action and the derivative cases are both in such early stages that they can, upon request, be consolidated for discovery purposes, thereby further conserving Galena's resources."); *CytRx*, 2015 WL 12745085, at *3 ("[W]e agree with Plaintiffs that 'allowing both cases to proceed in

---

[9]   *Id.* at *17.

- 32 -

their normal course would allow the respective parties to coordinate certain stages of the litigation, such as discovery, providing for greater judicial economy and efficiency.'").

### 4.    The Stage of Litigation Supports Denial of a Stay

The Securities Class Actions are in their infancy, which also weighs against a stay.  *See In re Rh S'holder Deriv. Litig.*, 2019 WL 580668, at *3 (N.D. Cal. Jan. 23, 2019) (staying derivative action where the "plaintiffs need not wait long for the [related securities class action] to conclude" due to fact discovery closing in eight days and a trial date set for later that year).  If the stay is granted, nothing will happen in this action while motion to dismiss briefing and potentially discovery, trial and appellate proceedings would all go forward in the Securities Class Actions – a process that could take years.  *See In re First Solar Deriv. Litig.*, 2016 WL 687138, at *1 (D. Ariz. Feb. 19, 2016) (lifting stay of derivative action due to "lengthy" delays caused by appellate proceedings in related securities class action).

*In re American Apparel, Inc. Shareholder Derivative Litigation*, 2012 WL 9506072, at *1 (C.D. Cal. July 31, 2012), is instructive.  The *American Apparel* court refused to stay the derivative case behind a related securities action, finding instead that setting the pleadings in both cases and thereafter coordinating discovery presented the most efficient path forward.  *Id.* at *47.  The court reasoned that "[n]either defendants' defense in the securities fraud case nor the shareholder derivative action will be prejudiced by resolving the pleadings in both actions," and that "once the pleadings are set" the defendants would not "be prejudiced by propounding and/or responding to discovery that will be usable in both actions."  *Id.* at *46.  The court therefore concluded that "[f]rom a case management perspective, there is substantial benefit to settling the pleadings and determining whether plaintiffs are able successfully to state a claim" and that "once the pleadings in this action and the securities fraud class action are set, consolidating discovery in the two

action[s] will result in substantial case management benefits." *Id.* at *47.  The same can and should be accomplished here.

Defendants' heavy reliance on *In re Twitter, Inc. Shareholder Derivative Litigation*, 2018 WL 3536085 (D. Del. 2018), is misplaced.  In granting a stay of the derivative action for "a limited time period" – not the indefinite stay the defendants' requested – the Court took into consideration that "the discovery schedule and the trial date in the Securities Action are established."  *Id.* at *3. Here, the Securities Class Actions are still pending consolidation and the appointment of a leadership structure.  Thus, Defendants' Motion to Dismiss this action is likely to be decided before Defendants and/or Canoo even begin to brief their motions to dismiss the eventually-consolidated Securities Class Actions, largely eliminating Defendants' efficiency and prejudice concerns.

The hardship that a stay would impose on Canoo and Plaintiff far outweighs any purported benefit that might be gained by imposing a stay.  The Stay should be denied.

IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendants' Motion should be denied.

                                                    ANDREWS & SPRINGER LLC

*Of Counsel:*                                        */s/ David M. Sborz*
                                                    Peter B. Andrews (#4623)
Travis E. Downs III                                 Craig J. Springer (#5529)
Benny C. Goodman III                                David M. Sborz (#6203)
Erik W. Luedeke                                      4001 Kennett Pike, Suite 250
ROBBINS GELLER RUDMAN                               Wilmington, DE 19807
   & DOWD LLP                                        (302) 504-4957
655 West Broadway, Suite 1900                       Email: pandrews@andrewsspringer.com
San Diego, CA  92101                                       cspringer@andrewsspringer.com
(619) 231-1058                                             dsborz@andrewsspringer.com
Email:  TravisD@rgrdlaw.com
        BennyG@rgrdlaw.com                          *Attorneys for Plaintiff*
        ELuedeke@rgrdlaw.com


Brian J. Robbins
ROBBINS LLP
5040 Shoreham Place
San Diego, CA  92122
(619) 525-3990
Email:  BRobbins@robbinsllp.com

Dated: December 16, 2021