**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CLAUDE L. PATTERSON, Derivatively on Behalf of CANOO INC., f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV,<br><br>        Plaintiff,<br><br>        v.<br><br>DANIEL J. HENNESSY, *et al.*,<br><br>        Defendants,<br><br>        - and -<br><br>CANOO INC., f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV,<br><br>        Nominal Defendant. | C.A. No. 1:21-cv-00907-RGA |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, OR**
**IN THE ALTERNATIVE, STAY VERIFIED DERIVATIVE COMPLAINT**

OF COUNSEL:

KIRKLAND & ELLIS LLP

Mark C. Holscher, P.C. (*pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
(213) 680-8400
mark.holscher@kirkland.com

David A. Klein (*pro hac vice*)
2049 Century Park East
Los Angeles, CA  90067
(310) 552-4200
david.klein@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Martin S. Lessner (No. 3109)
Daniel M. Kirshenbaum (No. 6047)
Alberto E. Chávez (No. 6395)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
dkirshenbaum@ycst.com
achavez@ycst.com

*Attorneys for Nominal Defendant Canoo Inc. and Defendants Tony Aquila, Ulrich Kranz, Paul Balciunas, Greg Ethridge, Thomas Dattilo, Foster Chiang, Rainer Schmueckle, Josette Sheeran, and Debra von Storch*

[Additional Defendants and Counsel on Signature Page]

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.   PLAINTIFF FAILS TO PLEAD THAT DEMAND IS EXCUSED ...................................3

   A.   The Opposition Does Not Allege a Substantial Likelihood of Directors' Liability for Breaches of Fiduciary Duty ...............................................................3

      1.   Plaintiff Does Not Allege With Particularity That Directors Knowingly Made False Statements ............................................................4

      2.   Plaintiff Fails to Plead Reliance .................................................................7

   B.   The Opposition Does Not Allege a Substantial Likelihood of Director Liability for Unjust Enrichment .......................................................................7

   C.   Plaintiff Fails to Adequately Allege that Aquila and Ethridge Received a Material Benefit from the Purported Misconduct ...................................................8

II.  PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE CLAIMS ...................................9

   A.   The Opposition Confirms There Is No Viable Claim for Breach of Fiduciary Duty or Unjust Enrichment .........................................................................9

   B.   The Complaint Does Not Allege a Viable Section 14(a) Claim ...........................10

      1.   The Challenged Statements Fall Within the PSLRA's Safe Harbor for Forward-Looking Statements ...............................................................10

      2.   Rule 9(b) Governs Plaintiff's Claims .......................................................12

      3.   Plaintiff Fails to Identify Any Actionable False Statements ....................13

      4.   The Complaint Does Not Allege Loss Causation .....................................14

   C.   The Court Lacks Jurisdiction over Plaintiff's Contribution Claim......................15

III. PLAINTIFF'S OPPOSITION CONFIRMS THAT A STAY IS NECESSARY ..............16

   A.   Plaintiff Does Not Meaningfully Address the Harm to Canoo That Will Result Absent a Stay .........................................................................................16

   B.   The Stay Will Not Prejudice Plaintiff...............................................................17

   C.   Simultaneous Litigation Will Not Conserve Resources or Be Efficient...............18

D.      The Early Stage of This Litigation Supports a Stay ...............................................19

IV.    CONCLUSION.................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aetna, Inc. Sec. Litig.*,
  617 F.3d 272 (3d Cir. 2010) ................................................................................... 10

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
  2012 WL 9506072 (C.D. Cal. July 31, 2012) ................................................... 18, 19

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ............................................................................................... 16

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010) ................................................................... 13

*Behrmann v. Brandt*,
  2020 WL 4432536 (D. Del. July 31, 2020) .............................................................. 9

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
  2010 WL 3522327 (D. Del. Sept. 2, 2010) ......................................................... 17, 20

*BNSF Ry. Co. v. FirstEnergy Generation, LLC*,
  2017 WL 7512944 (N.D. Tex. Nov. 27, 2017) ....................................................... 17

*Brenner v. Albrecht*,
  2012 WL 252286 (Del. Ch. Jan. 27, 2012) ............................................................ 16

*In re Cambrex Corp. Sec. Litig.*,
  2005 WL 2840336 (D.N.J. Oct. 27, 2005) ............................................................. 12

*In re China Agritech, Inc. S'holder Deriv. Litig.*,
  2013 WL 2181514 (Del. Ch. May 21, 2013) ......................................................... 19

*Clark v. Lutcher*,
  77 F.R.D. 415 (M.D. Pa. 1977) ............................................................................. 20

*In re Community Health Systems, Inc. S'holder Derivative Litig.*,
  No. 3:11-cv-00489, ECF No. 128 (M.D. Tenn.) .................................................... 17

*In re CytRx Corp. S'holder Derivative Litig.*,
  2015 WL 12745085 (C.D. Cal. June 25, 2010) ..................................................... 17

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) ............................................................................... 12

*DiBattista v. Greco*,
  2021 WL 327399 (D. Del. Jan. 31, 2021)...........................................................2, 15

*Dubroff v. Wren Holdings, LLC*,
  2010 WL 3294219 (Del. Ch. Aug. 20, 2010) ............................................................7

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978)....................................................................................................16

*In re First Solar Derivative Litig.*,
  2016 WL 687138 (D. Ariz. Feb. 19, 2016)...............................................................20

*Forestal v. Caldwell*,
  2016 WL 9774914 (C.D. Cal. Nov. 14, 2016)........................................................6, 7

*In re Galena Biopharma, Inc. Derivative Litig.*,
  83 F. Supp. 3d 1033 (D. Or. 2015) .....................................................................17, 19

*In re GoPro, Inc.*,
  2020 WL 2036602 (Del. Ch. Apr. 28, 2020) .............................................................8

*Gould v. American-Hawaiian S.S. Co.*,
  535 F.2d 761 (3d Cir. 1976)....................................................................................12

*GSC Partners CDO Fund v. Washington*,
  363 F.3d 228 (3d Cir. 2004)....................................................................................11

*Hallam v. Gemini Ins. Co.*,
  2015 WL 11237479 (S.D. Cal. Apr. 8, 2015) ..........................................................15

*In re Heckmann Corp. Sec. Litig.*,
  869 F. Supp. 2d 519 (D. Del. 2012)....................................................................12, 13

*Hemostemix, Inc. v. Accudata Sols., Inc.*,
  2021 WL 1198137 (D. Del. Mar. 30, 2021) .............................................................19

*Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*,
  2017 WL 495869 (N.D. Tex. Feb. 7, 2017)..............................................................19

*Hughes v. Xiaoming Hu*,
  2020 WL 1987029 (Del. Ch. Apr. 27, 2020) ...........................................................19

*In re INFOUSA, Inc. S'holders Litig.*,
  953 A.2d 963 (Del. Ch. Aug. 13, 2007)..................................................................6, 7

*Inst. Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)........................................................................10, 11, 12

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)...................................................................................................15

*Janklow on Behalf of Stericycle, Inc. v. Alutto*,
   2018 WL 6499869 (D. Del. Dec. 11, 2018)...............................................................16

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991).....................................................................................................17

*Kandell on behalf of FXCM, Inc. v. Niv*,
   2017 WL 4334149 (Del. Ch. Sept. 29, 2017) .............................................................7

*Gen. Elec. Co. ex rel. Levit v. Cathcart*,
   980 F.2d 927 (3d Cir. 1992)........................................................................................14

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*,
   2011 WL 2444675 (D. Del. June 14, 2011)................................................................12

*In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.*,
   No. 4:15-cv-00016-AWA-LRL, ECF No. 22 (E.D. Va.) .........................................17

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998) .....................................................................................3, 4, 6, 7

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
   854 A.2d 121 (Del. Ch. 2004)......................................................................................7

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970).....................................................................................................15

*Minerva Surgical, Inc. v. Hologic, Inc.*,
   2021 WL 1840645 (D. Del. May 7, 2021)...................................................................19

*Mitzner v. Hastings*,
   2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ..................................................................7

*In re Molycorp, Inc. S'holder Derivative Litig.*,
   2014 WL 1891384 (Del. Ch. May 12, 2014)...............................................................17

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002).......................................................................................14

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
   2018 WL 7019481 (N.D. Cal. Oct. 16, 2018)..............................................................15

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016).................................................................................11, 12

*Pall v. KPMG, LLP*,
    2006 WL 2800064 (D. Conn. Sept. 29, 2006) ........................................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
    2012 WL 424557 (N.D. Cal. Feb. 9, 2012) .............................................................6

*In re Resolute Energy Corp. Sec. Litig.*,
    2021 WL 327385 (D. Del. Feb. 1, 2021) ...............................................................15

*Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ..........................................................................12, 14

*In re Rh S'holder Derivative Litig.*,
    2019 WL 580668 (N.D. Cal. Jan. 23, 2019) ...........................................................20

*Seibert v. Gene Sec. Network*,
    2013 WL 564309 (N.D. Cal. Oct. 16, 2013) ..........................................................15

*SEPTA v. Orrstown Financial Services, Inc.*,
    2015 WL 3833849 (M.D. Pa. June 22, 2015) ...................................................12, 13

*Shaev v. Baker*,
    2017 WL 1735573 (N.D. Cal. May 4, 2017) ...........................................................6

*Smith of Zion Oil & Gas, Inc. v. Carrillo*,
    2019 WL 6328033 (D. Del. Nov. 26, 2019) ..........................................................1, 6

*Sonkin v. Barker*,
    670 F. Supp. 249 (S.D. Ind. 1987) ...........................................................17, 19, 20

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ................................................................................13

*In re Twitter, Inc. S'holder Derivative Litig.*,
    2018 WL 3536085 (D. Del. July 23, 2018) ........................................................18, 20

*In re Tyco Int'l Ltd.*,
    2004 WL 524429 (D.N.H. Mar. 16, 2004) .............................................................15

*In re Tyson Foods, Inc.*,
    2007 WL 2351071 (Del. Ch. Aug. 15, 2007) ...........................................................6

*In re Universal Health Servs., Inc.*,
    2018 WL 8758704 (E.D. Pa. Dec. 10, 2018) ..........................................................19

*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006) .....................................................................7

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
   2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ..................................................7

*Wilkin v. Narachi*,
   2018 WL 1100372 (Del. Ch. Feb. 28, 2018) ..................................................7, 8

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) ......................................................................12

*In re Zillow Grp., Inc. S'holder Derivative Litig.*,
   2020 WL 978503 (W.D. Wash. Feb. 28, 2020) ..............................................7

*In re Zimmer Biomet Holdings, Inc. Derivative Litig.*,
   2021 WL 3779155 (Del. Ch. Aug. 25, 2021) ................................................6

**Statutes**

15 U.S.C. § 78u-4(b)(4) .............................................................................15

15 U.S.C. § 78u-5 ...............................................................................10, 12

8 *Del. C.* § 102(b)(7) .................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................12, 13

Fed. R. Civ. P. 12(b)(6) ..............................................................................9

Fed. R. Civ. P. 23.1 ..............................................................................6, 8

**Other Authorities**

17 C.F.R. § 230.415 ....................................................................................9

**INTRODUCTION**

Plaintiff comes nowhere close to pleading his failure to make a pre-suit Demand on Canoo's Board was excused or a claim for which relief might be granted in this case.[1]  Defendants' motion to dismiss argued, among other things, that (1) Plaintiff failed to allege particularized facts showing Canoo directors received a material personal benefit from alleged misconduct or face a substantial likelihood of liability on Plaintiff's fiduciary duty and unjust enrichment claims—the only claims Plaintiff asserts against a majority of the Board; (2) Plaintiff failed to adequately plead essential elements of a § 14(a) claim, including an actionable false statement and loss causation; and (3) Plaintiff's contribution claim fails for lack of subject matter jurisdiction because it seeks contribution for liabilities Canoo has yet to incur.  As explained in this reply brief, Plaintiff's Opposition offers little substantive response to these grounds for dismissal.

First, as to demand futility, Plaintiff abandons his breach of fiduciary duty claim based on alleged failures to implement controls to prevent misleading statements.  Plaintiff does not identify any particularized facts showing directors knowingly made alleged misleading statements about Canoo's engineering services business prospects.  *See Smith on behalf of Zion Oil & Gas, Inc. v. Carrillo*, 2019 WL 6328033, at *5 (D. Del. Nov. 26, 2019) (finding plaintiffs did not plead demand futility as to fiduciary duty claim unsupported by specific facts to demonstrate knowledge).  Plaintiff does not identify any facts showing any directors traded stock at prices inflated by alleged misleading statements or address the "Lock-Up Agreements" precluding trades at those prices.  And Plaintiff does not claim a majority of the Board received a material personal benefit.

Instead, Plaintiff focuses entirely on a claim that Canoo failed to disclose that it had

---

[1]   Undefined capitalized terms are defined in Defendants' opening brief, D.I. 38.  "Ex." refers to Exhibits to the Supplemental Declaration of David A. Klein.

"abandoned" its engineering services business at some point in 2020.  Plaintiff bases this allegation on an announcement that Canoo did not report engineering services revenue in Q4 2020, and its Board decided to "de-emphasize" the business in Q1 2021.  But Canoo disclosed that it projected engineering services revenue in 2021, not 2020, based on contracts under active negotiation, and it could not report revenue under GAAP until it completed performance on a contract.  The absence of revenue in Q4 2020 from contracts disclosed as being under active negotiation thus does not mean Canoo "abandoned" the business.  Plaintiff bases his claims on speculation, not facts.

Second, as to the § 14(a) claim, Plaintiff does not explain how statements that referred to Canoo's "projected" revenue and "future" business opportunities could fall outside the PSLRA's safe harbor for forward-looking statements.  Plaintiff similarly does not explain how Canoo could have suffered a loss from its SPAC merger, despite basing his § 14(a) claim on allegations that the merger was solicited with purported misleading statements.  Although Plaintiff claims Canoo shares were overvalued in its merger, Plaintiff does not draw any direct link between the merger itself and this alleged harm as Third Circuit law requires.  Third, Plaintiff does not even address *DiBattista v. Greco*, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021), *report and recommendation adopted*, 2021 WL 5061720 (D. Del. Feb. 17, 2021), which holds a § 21D contribution claim is only ripe once judgment is entered on underlying securities claims, which has not occurred here.

The Court should dismiss the Complaint.  However, if the Court declines to dismiss, the Court should stay this case pending resolution of the Securities Actions arising from the same facts alleged here to prevent harming the Company's defense of the Securities Actions.  Plaintiff makes no serious effort to distinguish the facts or issues in the Securities Actions and this Derivative Action, and does not explain how simultaneous litigation could proceed without unnecessarily wasting resources.  Instead, Plaintiff's principal argument is that a stay will delay this case.  But

2

mere delay does not outweigh the prejudice Canoo would suffer from simultaneous litigation.

## ARGUMENT

## I.      PLAINTIFF FAILS TO PLEAD THAT DEMAND IS EXCUSED

Plaintiff concedes that he must plead with particularity why a majority of Canoo's nine-person Board in place when Plaintiff filed his Complaint is so conflicted that Demand is futile. The Complaint alleged that a Demand on the Board was futile based on a "substantial likelihood" that a majority of directors face liability on Plaintiff's claims for breach of fiduciary duty and unjust enrichment. D.I. 1 ¶¶ 144-148. (Plaintiff asserts claims for violations of Exchange Act §§ 14(a) and 20(a) and contribution under Exchange Act § 21D against only two directors: Aquila and Ethridge.) Plaintiff also contends that Aquila and Ethridge purportedly received a "unique material personal benefit from the alleged misconduct." D.I. 42 at 18. Both of these theories fail.

### A.      The Opposition Does Not Allege a Substantial Likelihood of Directors' Liability for Breaches of Fiduciary Duty

Plaintiff abandons his *Caremark* clam and relies solely on *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), to argue the Board faces liability for breaches of fiduciary duty relating to the Company's disclosures. *See* D.I. 42 at 8-9. Plaintiff concedes that, under *Malone*, Plaintiff's challenge against alleged "misdisclosure . . . in the absence of a request for shareholder action" requires pleading with particularity that the directors "knowingly disseminate[d] false information." *Malone*, 722 A.2d at 9.[2] Plaintiff argues that "[k]nowingly making materially false

---

[2]   Defendants' opening brief explained that due to the Delaware General Corporation Law § 102(b)(7) provision in Canoo's certificate of incorporation, which exculpates directors from liability for duty of care breaches provided their actions were not done in bad faith, Plaintiff must allege facts showing a majority of directors knowingly engaged in fraudulent or bad-faith conduct. D.I. 38 at 11-12. Plaintiff's argument that this exculpatory provision does not apply to officers, D.I. 42 at 10, is beside the point because a majority of directors are not officers. *See* D.I. 38 at 4-5. Moreover, Plaintiff's *Malone* misrepresentation claim independently requires the knowing issuance of false statements.

and misleading statements to shareholders in SEC filings . . . subjects Aquila, Chiang, Etheridge [sic], Schmueckle, Sheeran, and von Storch to a substantial likelihood of liability." D.I. 42 at 13. Plaintiff, however, fails to allege particularized facts to support this conclusory statement.

### 1.    Plaintiff Does Not Allege With Particularity That Directors Knowingly Made False Statements

Plaintiff acknowledges the only purportedly false or misleading statements by a majority of directors he challenges were in the January 13, 2021 SEC Form S-1 Registration Statement.[3] *Id.* at 12. Plaintiff cites statements that engineering services provided a "unique opportunity to generate . . . a projected $120 million of revenue" and a "strategic pipeline for future business opportunities." *Id.* at 6 (citing D.I. 1 ¶¶ 18-21, 95). Plaintiff also relies on the statement that "[i]n February 2020, [Canoo] entered into an agreement with Hyundai Motor Group to co-develop a future EV platform." *Id.* (citing D.I. 1 ¶ 21). Plaintiff argues these statements "were materially false and misleading because [directors] knew the Company had abandoned the engineering services business and ended the partnership with Hyundai." *Id.* at 13. In support, Plaintiff offers two points: the Company did not report engineering services revenue in Q4 2020; and Aquila's statements in a March 29, 2021 earnings call announcing that it was decided by the Board "to 'de-emphasize. . . the contract engineering services line.'" *Id.* at 12-13. Neither has any merit.

Plaintiff's requested inference that Canoo "abandoned" its engineering services business by Q4 2020 because it did not receive revenue that quarter contradicts the disclosures Plaintiff cites in his Complaint. In August 2020, Canoo disclosed that it had "$120 million of projected

---

[3]    Any alleged misrepresentations by unidentified "Defendants" before Canoo's December 21, 2020 merger are irrelevant to whether a majority of directors face liability on Plaintiff's *Malone* claim, as a majority of directors were not appointed until the merger closed and thus had no involvement with these statements. *See* D.I. 38 at 4-5, 15-18. Further, none of these pre-merger statements were false or misleading. *Id.* at 15-18, 20-21; *infra* § II.B.1.

revenue in 2021, which consists of a couple of projects that are in the advanced stages of negotiation." D.I. 39-1 at 460; *see also* D.I. 1 ¶¶ 94-95. Thus, months before Plaintiff claims Canoo "abandoned" its engineering services business, it only projected engineering services ***revenue in 2021—not 2020***. In the S-1, Canoo explained that, under GAAP, it recognized revenue only when it "satisfie[d] the performance obligations" of an engineering services contract. Ex. 1 at F-33. In fact, as Canoo explained, it recognized and recorded the entire $2.55 million in engineering services revenue in 2020 on a single day in July 2020, when it satisfied its performance obligations on a project. *Id.* Accordingly, the absence of Q4 2020 revenue from contracts that were under active negotiation in 2020 does not suggest that Canoo had abandoned the business line and ceased negotiating engineering services contracts during that period.

Plaintiff's selective summary of Aquila's statements in a March 29, 2021 earnings call is likewise insufficient. Plaintiff cites Aqulia's statements that engineering services is "not the best line to be in" and he is "not a big fan of doing that type of business." D.I. 42 at 13. But these statements regarding Canoo's decision to de-emphasize engineering services does not mean that the Board decided to "abandon" that market several months earlier. Plaintiff also cites Aquila's statement that previous statements on this topic were "aggressive." *Id.* But that implies that the decision to de-emphasize such services was made around March 2021. After all, why would directors deliberately misrepresent the prospects for the engineering services business when they had already made a decision to "abandon" that business, if, under Plaintiff's theory, that fact would necessarily (and did) become clear to the investment public only a short time later? Such an inference is especially illogical given the absence of any allegations that any of the directors sold (or even could have sold) shares at a price artificially "inflated" by the purported omissions.

*Smith* is instructive. In *Smith*, plaintiffs alleged board members knew that statements

5

regarding the prospects of the company were false because those directors were employees of the company and would have had access to information about the company's commercial productivity. 2019 WL 6328033, at *5.  The Court did not find that these "inferences of knowledge" were "supported by particularized facts" required to establish a substantial likelihood of liability under *Malone. Id.*  Although Defendants cited *Smith* at length in their opening brief, Plaintiff ignores *Smith* and fails to identify any particularized factual allegations regarding directors' knowledge that this Court held were required to state a claim under *Malone* like the one Plaintiff asserts here.[4]

Plaintiff's argument that Datillo, Schmueckle, and von Storch face a substantial likelihood of liability based solely on their roles as Audit Committee directors is meritless.  D.I. 42 at 14. Plaintiff cannot infer deliberate, knowing directorial misconduct by referencing the Audit Committee's responsibilities or the mere approval or signing of public filings.  *See* D.I. 38 at 15 (citing cases).  Conclusory allegations that the Audit Committee reviewed financial results and reports and therefore knew the alleged misstatements were false do not meet the stringent requirements of Rule 23.1.  *In re Zimmer Biomet Holdings, Inc. Derivative Litig.*, 2021 WL 3779155, at *15 (Del. Ch. Aug. 25, 2021).  Plaintiff cites no authority to the contrary.  Instead, the cases on which Plaintiff relies are inapposite as they describe factual allegations that established

---

[4] Plaintiff cites five inapposite cases that involved detailed factual allegations of knowledge, intent, or bad faith or a claim based on a request for shareholder action (which the S-1 is not) that does not require such a showing. *See Shaev v. Baker*, 2017 WL 1735573, at **14-15, 19 (N.D. Cal. May 4, 2017) (alleging details of directors' knowledge of illegal account-creation scheme that made disclosures false and misleading); *Forestal v. Caldwell*, 2016 WL 9774914, at *10 (C.D. Cal. Nov. 14, 2016) (alleging each director's knowledge of the status of FDA compliance that contradicted statements in 10-K); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*, 2012 WL 424557, at **6-7 (N.D. Cal. Feb. 9, 2012) (involving false and misleading statements in a request for shareholder action); *In re Tyson Foods, Inc.*, 2007 WL 2351071, at **3, 6 (Del. Ch. Aug. 15, 2007) (containing detailed allegations of director's intentional concealment of reasons for stock grants); *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. Aug. 13, 2007) (alleging directors received a report that directly contradicted statements in 10-K over a month before 10-K was filed).

directors' knowledge that statements were false.[5]  Those factual allegations are missing here.

### 2.    Plaintiff Fails to Plead Reliance

Plaintiff's assertion that he "need not plead reliance" is wrong.  D.I. 42 at 15.  Delaware

courts consistently hold that, "in disclosure suits not involving a request for shareholder action,

each plaintiff must make an individualized showing of reliance, causation, and damages." *Dubroff*

*v. Wren Holdings, LLC*, 2010 WL 3294219, at *6 (Del. Ch. Aug. 20, 2010); *see also, e.g.*, *Wilkin*

*v. Narachi*, 2018 WL 1100372, at *15 (Del. Ch. Feb. 28, 2018) (finding *Malone* claim could not

support demand futility if individual reliance was not pled).  Plaintiff ignores this authority.[6]  His

failure to plead individual reliance is yet another reason why there is no "substantial likelihood"

of liability for the purported disclosure violations by the Board.

### B.    The Opposition Does Not Allege a Substantial Likelihood of Director Liability for Unjust Enrichment

Plaintiff fails to plead demand futility as to his unjust enrichment claim for the same

reasons.  The entirety of Plaintiff's argument on this point resides in a conclusory footnote:

---

[5]   *See Kandell on behalf of FXCM, Inc. v. Niv*, 2017 WL 4334149, at *18 (Del. Ch. Sept. 29, 2017) (directors knew of ongoing prohibited activity at company); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 159 (Del. Ch. 2004) (directors actively participated in but failed to disclose bribery scheme); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 278 (S.D.N.Y. 2006) (committee presented with an actual report of wrongdoing and failed to take appropriate action); *Mitzner v. Hastings*, 2005 WL 88966, at **5-6 (N.D. Cal. Jan. 14, 2005) (assuming without deciding in dicta that allegations involving audit committee members "may suffice," but still dismissing the complaint for failure to plead demand futility); *Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, 2009 WL 3853592, at **1, 3-4 (M.D. Fla. Mar. 30, 2009) (alleging with particularity information known, or consciously disregarded, by defendants at the time of highly suspicious trades); *In re Zillow Grp., Inc. S'holder Derivative Litig.*, 2020 WL 978503, at *3 (W.D. Wash. Feb. 28, 2020) (alleging audit committee members received a civil investigative demand and were therefore on notice that the company's co-marketing program potentially violated federal law).

[6]   Plaintiff relies on three cases—*INFOUSA*, 953 A.2d at 991, *Forestal*, 2016 WL 9774914 *10, and *Zillow*, 2020 WL 978503, at *3—none of which directly address the element of reliance in a *Malone* misrepresentation claim.

"Demand futility is also sufficiently alleged with respect to Plaintiff's unjust enrichment claim." D.I. 42 at 15 n.5. But the few cases Plaintiff cites stand only for the proposition that adequately pleading a substantial likelihood of liability on a fiduciary claim pleads a substantial likelihood of liability for an unjust enrichment claim based on the same theory. *Id.* Thus, Plaintiff's unjust enrichment claim rests on alleged breaches of fiduciary duty, and Plaintiff's failure to sufficiently plead breaches of fiduciary duty precludes demand futility as to his unjust enrichment claim.

### C. Plaintiff Fails to Adequately Allege that Aquila and Ethridge Received a Material Benefit from the Purported Misconduct

Finally, Plaintiff's argument that Aquila and Ethridge are conflicted because they each received a unique material personal benefit from the alleged misconduct fails in every respect, including because allegations as to two of nine directors—far less than a majority—cannot establish demand futility. *Id.* at 16. The Opposition argues that Ethridge received around $500,000 "[a]t the close of the Merger" and Aquila "received over $35 million from the Company in 2020." *Id.* at 17. [7] But the Complaint fails to distinguish these payments from the ordinary compensation that courts have repeatedly found to be insufficient to establish demand futility. *See* D.I. 38 at 10 (citing cases); *see also In re GoPro, Inc.*, 2020 WL 2036602, at *11 n.143 (Del. Ch. Apr. 28, 2020). Here, the Complaint does not provide *any* details about the alleged payments to Ethridge and Aquila, beyond the amount and timing of the payments, or draw a link between payments and alleged misconduct. *See* D.I. 1 ¶¶ 44, 46, 142. There is thus no reason to infer that these payments are anything but routine compensation. These threadbare allegations cannot satisfy Plaintiff's obligation to "state with particularity" the reasons Demand is futile. Fed. R. Civ. P. 23.1(b)(3)(B).

---

[7]   As reflected in the S-1, the $35 million Plaintiff references was Aquila's total compensation for 2020, which included stock awards. Ex. 1 at 114. The Court may take judicial notice of an SEC filing also incorporated by reference in the Complaint. *See* D.I. 38 at 28 n. 15 (citing cases).

Similarly, the Opposition's argument that Aquila "was able to sell more than 15 million shares of Canoo stock . . . through the January 12, 2021 [sic] Shelf Registration Statement," D.I. 42 at 17, is contradicted by the S-1 and other securities filings repeatedly cited in the Complaint. The purpose of a shelf registration statement is to allow for the sale of stock "in the future." *See* D.I. 38 at 29 (quoting 17 C.F.R. § 230.415).  The January S-1 thus does not evidence that Aquila actually sold any shares before the alleged decline in Canoo's stock price after the March earnings call.  In fact, he could not have done so:  Lock-Up Agreements prohibited "all Canoo officers," including Aquila, from "sell[ing], offer[ing] to sell, . . . or otherwise dispos[ing] of" their Canoo shares for "180 days after the [merger] Closing"—i.e., until June 2021.  *See, e.g.*, D.I. 38 at 28-29 (citing D.I. 39-1 Ex. 10 at 2-4, 22, 137-138, Annex J1-4, 12, 16-17; Ex. 11 at 123).  The Opposition does not address these Lock-Up Agreements at all, let alone point to any facts showing Aquila bypassed his Lock-Up Agreement and sold shares at an allegedly inflated price.

## II.   PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE CLAIMS

### A.   The Opposition Confirms There Is No Viable Claim for Breach of Fiduciary Duty or Unjust Enrichment

Plaintiff failed to state breach of fiduciary duty and unjust enrichment claims under Rule 12(b)(6) for the same reasons that he failed to plead demand futility.  The Opposition recycles conclusory allegations of undeserved compensation, bonuses, benefits, and insider trading from the sale of warrants.  D.I. 42 at 17-19.  But ordinary compensation cannot be the basis for an unjust enrichment claim.  *See, e.g.*, *Behrmann v. Brandt*, 2020 WL 4432536, at *17 (D. Del. July 31, 2020).  And Plaintiff's silence on the Lock-Up Agreements that precluded directors Aquila, Kranz, Balciunas, Hennessy, Petruska, Bell, Shea, Burns, O'Neil III, Mas, and McClain from selling Canoo stock until June 2021—*after* Canoo's stock price declined—is a concession that Plaintiff's insider trading theory is implausible on its face.  D.I. 38 at 28-29.

B.      **The Complaint Does Not Allege a Viable Section 14(a) Claim**

1.      **The Challenged Statements Fall Within the PSLRA's Safe Harbor for Forward-Looking Statements**

Plaintiff's Opposition confirms that he also failed to state a § 14(a) claim.  Plaintiff's §

14(a) claim is barred by the PSLRA's safe harbor for forward-looking statements.  Plaintiff

contends two statements—a statement about an engineering services business "pipeline" that was

"supportive of a projected $120 million of revenue" and a statement about a Hyundai contract that

contributed to "an attractive strategic pipeline for future business opportunities"—are not forward-

looking statements.  D.I. 42 at 21-23.  This argument disregards the text of the PSLRA and Third

Circuit case law.  Indeed, the PSLRA "broadly define[s]" the term "forward-looking statement" to

include any "statements 'containing a projection of revenues'" and any "statements of 'future

economic performance.'"  *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 254-55 (3d Cir. 2009)

(quoting 15 U.S.C. § 78u-5(i)(1)(A), (C)) (cited in Opp'n at 22).  Canoo's statements regarding its

engineering services revenue specifically notes that it "*projected* $120 million of revenue," D.I. 1

¶ 100 (emphasis added), and accordingly is a "statement containing a projection of revenues."  15

U.S.C. § 78u-5(i)(1)(A); s*ee also In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 281 (3d Cir. 2010)

("Statements about future profitability . . . fall squarely within the definition of forward-looking

statement.").  Similarly, Canoo's statement that the Hyundai deal helped "establish an attractive

strategic pipeline for future business opportunities and de-risk[ed] the overall business model,"

D.I. 1 ¶ 103, is a "statement of future economic performance."  15 U.S.C. § 78u-5(i)(1)(C).

Plaintiff argues that the statements concerned Canoo's "then-current ability to generate

revenue from its engineering services . . . business . . . ."  D.I. 42 at 23.  These purported statements

of current fact, however, "cannot meaningfully be distinguished from the future projection of

which they are a part" and therefore do not cause the projections to lose the protections of the safe

harbor.  *Avaya*, 564 F.3d at 255.   Indeed, the challenged statement about Canoo's "current pipeline" provides no details about the *current* status of its pipeline, other than the fact that it would yield *future* revenue.  *See id.* (holding that a statement was forward-looking when its "assertions of current fact" merely indicated that current conditions "ma[de] the future projection attainable").  Likewise, the challenged statement concerning the Hyundai agreement makes no representation about the current status of the Hyundai relationship, other than the potential for future business opportunities.[8]  Thus, the cited statements are quintessential forward-looking statements.

Plaintiff's argument that these forward-looking statements are unaccompanied by meaningful cautionary statements lacks any merit.  D.I. 42 at 34.  To qualify under the safe harbor, the cautionary statements accompanying a forward-looking statement "must be substantive and tailored to the specific future projections, estimates or opinions in the [documents] which the plaintiffs challenge." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 491 (3d Cir. 2016) (quoting *GSC Partners CDO Fund v. Washington*, 363 F.3d 228, 243 n.3 (3d Cir. 2004)).  Each filing at issue included a "Cautionary Note Regarding Forward-Looking Statements" with a lengthy list of "factors that could cause actual results to differ," including risks related to "the ability of Canoo to execute its business model."  D.I. 39-1 at 175-76; *see also* D.I. 38 at 23 (citing other occurrences of cautionary statements).  This is sufficient, as the Third Circuit has found cautionary statements to be adequate when they "contain[ed] a detailed list of specific factors and uncertainties" and mentioned the specific risk that the plaintiffs "assert[ed] was responsible for

---

[8]   Plaintiff also argues, "Canoo Holdings had already abandoned its engineering services business and its arrangement with Hyundai" at the time that the statements at issue were made.  D.I. 42 at 23.  But the Complaint fails to adequately allege the purported abandonment had already occurred when the statements were made.  *See supra* § II.B.2; *see also* D.I. 38 at 14, 21-22.

11

[the defendant] missing its projections." *Avaya*, 564 F.3d at 257.[9]

Finally, the safe harbor applies to the challenged statements regardless of whether meaningful cautionary language was present, given Plaintiff "failed to adequately plead that the [statements] were made with actual knowledge of falsehood." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 245 (3d Cir. 2017); *OFI*, 834 F.3d at 491 (quoting *Avaya*, 564 F.3d at 254); *see also* 15 U.S.C. § 78u-5(c)(1)(B). Plaintiff's Opposition fails to address this independent prong of the safe harbor, *see generally* D.I. 42 at 22-24, and, as noted above, the Complaint fails to allege actual knowledge of falsity. *See supra* § I.A.1. The PSLRA's safe harbor bars Plaintiff's § 14(a) claim.

## 2. Rule 9(b) Governs Plaintiff's Claims

The heightened pleading standard of Rule 9(b) applies to Plaintiff's § 14(a) claim. The Opposition makes no effort to show that Plaintiff can meet this standard, and instead contends that "Plaintiff need only show negligence to succeed under §14(a)." *See* D.I. 42 at 20 (citing *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143-44 (3d Cir. 2004); *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 777 (3d Cir. 1976); *In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 538 (D. Del. 2012)). To the contrary, the Third Circuit has held that Rule 9(b) applies to a § 14(a) claim that sounds in fraud. D.I. 38 at 24; *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 & n.5 (9th Cir. 2000) (holding that a § 14(a) claim "clearly sounds in fraud" when it "asserts 'knowing[] and intentional[]' misconduct"). Plaintiff's arguments against the application of Rule 9(b) rely on inapposite case law. Plaintiff first cites *SEPTA v. Orrstown*

---

[9]   The cases Plaintiff cites involved cautionary statements that failed to address the specific risk at issue in the plaintiff's claims. *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, 2011 WL 2444675, at *13 (D. Del. June 14, 2011) (noting that the cautionary statements did not mention "the issue that Plaintiff here claims Defendant failed to disclose"); *In re Cambrex Corp. Sec. Litig.*, 2005 WL 2840336, at *8 (D.N.J. Oct. 27, 2005) (noting that the cautionary statements at issue generally warned of "'risks and uncertainties that exist' which might cause 'results to differ materially from the Company's expectations'").

*Financial Services, Inc.*, but that court found that the plaintiff's claims under the Securities Act did not sound in fraud in part because the complaint "separate[d] the factual allegations supporting its Securities Act claims from those supporting its Exchange Act claims." 2015 WL 3833849, at *18 (M.D. Pa. June 22, 2015). Here, Plaintiff not only failed to separate the factual allegations but also "incorporate[d]" more than half of his Complaint into the § 14(a) claim. D.I. 1 ¶ 155. Plaintiff next cites *Heckmann Corp.*, which acknowledges that "the enhanced requirements of Rule 9(b)" still apply to § 14(a) claims that sound in fraud, even though § 14(a) claims do not necessarily require scienter. *See* 869 F. Supp. 2d at 536 (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006)). Plaintiff's final case on this issue is similarly inapposite because the complaint alleged only that a proxy statement was "false and misleading," but not that the allegedly false statements were made knowingly. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 321 (S.D.N.Y. 2010). Here, by contrast, Plaintiff accuses Defendants of intentional or knowing misconduct. *See* D.I. 38 at 24; *see also* D.I. 42 at 13. Plaintiff's § 14(a) claim thus sounds in fraud and is subject to Rule 9(b)'s requirements, including that Plaintiff allege with particularity the allegedly fraudulent statements, the Proxy Defendants knew those statements were false when made, and the alleged misleading facts induced shareholders to approve the merger. *See* D.I. 38 at 25. Plaintiff fails to meet those requirements.

### 3.   Plaintiff Fails to Identify Any Actionable False Statements

Besides Plaintiff's failure to meet Rule 9(b)'s requirements, Plaintiff's § 14(a) claim fails because he does not identify any statement in Canoo's filings that is actually false. The Opposition challenges four statements in Canoo's Form S-4 Registration Statement:  (1) that Canoo's engineering services business was "a unique opportunity to generate immediate revenues"; (2) that Canoo entered into an agreement with Hyundai to develop a vehicle platform; (3) that Canoo's engineering services business "was expected to generate a compounded annual growth rate of

39%"; and (4) that Canoo projected $120 million of revenue in its 2021 fiscal year based on its current pipeline. *See id.* at 21 (citing D.I. 1 ¶¶ 6, 100, 103). Plaintiff's Opposition fails to explain how any of these statements are false. Canoo's engineering services business in fact presented an opportunity to generate immediate revenue: Plaintiff concedes that Canoo received $2.55 million from engineering services in the nine months ending on September 30, 2020. *Id.* at 6, 12; *see also* D.I. 39-1 at 259. And as discussed above, the claim that the Company "abandoned" the business in Q4 because it did not record revenue during that period is misplaced. Plaintiff's Opposition likewise does not allege that Canoo's filings misrepresented the terms of its agreement with Hyundai in any way. *See* D.I. 1 ¶ 103; *see also* D.I. 39-1 at 225 (describing Hyundai agreement).

Plaintiff also fails to allege that any challenged statement was "misleading at the time it was made." *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002). Both this Court and the Third Circuit have repeatedly emphasized that a statement that was true when made but inconsistent with future developments is not actionable under § 14(a). *See* D.I. 38 at 21 (collecting cases). Plaintiff's Opposition cites a single fact—that Canoo reported no engineering services revenue in Q4 2020—to argue the challenged statements were false when made. *See* D.I. 42 at 22. But the statements Plaintiff challenges address Canoo's pipeline of revenue for 2021. *Id.* (citing D.I. 1 ¶ 100). Canoo's disclosure of its pipeline for *2021* says nothing about the revenue amount it expected for *2020*. Plaintiff's reliance on Canoo's Q4 performance is an erroneous effort to "plead fraud by hindsight" that courts reject. *E.g., Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 158.

### 4. The Complaint Does Not Allege Loss Causation

Plaintiff's loss causation argument fares no better. Loss causation requires plaintiffs to show that a challenged merger was the "*direct* cause of the pecuniary injury for which recovery is sought." *Gen. Elec. Co. ex rel. Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (emphasis added). This Court has specifically held that a plaintiff "cannot state an economic loss and loss

14

causation simply by alleging that the [defendant's] stock was undervalued at the time of the merger." *In re Resolute Energy Corp. Sec. Litig.*, 2021 WL 327385, at *4 (D. Del. Feb. 1, 2021), *appeal filed*, No. 21-1412 (3d Cir. Mar. 4, 2021).  Here, Plaintiff alleges Canoo Holding's stock was overvalued, rather than undervalued, but makes no attempt to distinguish *Resolute Energy*. *See* D.I. 42 at 24-25.  The Court should apply the same reasoning the Court applied in *Resolute Energy*, and find Plaintiff failed to allege any harm to Canoo directly from the merger.[10]  Having failed to allege essential elements of a § 14(a) claim, the claim must be dismissed.

### C.     The Court Lacks Jurisdiction over Plaintiff's Contribution Claim

Plaintiff's § 21D contribution claim is even more untenable.  Courts in the Third Circuit have held that a contribution claim in the derivative context is not ripe when based on a contingent liability in another case.  *DiBattista*, 2021 WL 327399, at *7 (quoting *Pall v. KPMG, LLP*, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006)).  Plaintiff cites cases from district courts outside the Third Circuit that cannot trump this in-Circuit on point authority.[11]  In fact, this Court rejected two cases Plaintiff cites, *Siebert* and *Hallam*, on this point because the contribution claims in those cases, unlike the contribution claim here, were filed in the same action in which liability would be determined.  *Dibattista*, 2021 WL 327399, at *7 n.3.  Plaintiff's argument that the Court should

---

[10]   Plaintiff relies on decades-old Supreme Court cases that do not help him.  First, neither of these cases addresses the issue of loss causation; in *J.I. Case Co. v. Borak*, the Supreme Court "consider[ed] only the question of whether s[ection] 27 of the [Exchange] Act authorizes a federal cause of action," 377 U.S. 426, 428 (1964), and in *Mills v. Electric Auto-Lite Co.*, the Supreme Court addressed the issue of *transaction* causation, not *loss* causation.  396 U.S. 375, 386 (1970).  Importantly, both of these cases predate the PSLRA, which explicitly provides that securities plaintiffs must prove loss causation.  15 U.S.C. § 78u-4(b)(4).  These cases are therefore "not binding" and "of limited persuasive value" on the issue of loss causation.  *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018).

[11]   D.I. 42 at 26 (citing *Seibert v. Gene Sec. Network*, 2013 WL 564309, at *3 (N.D. Cal. Oct. 16, 2013); *In re Tyco Int'l Ltd.*, 2004 WL 524429, at *4 (D.N.H. Mar. 16, 2004); *Hallam v. Gemini Ins. Co.*, 2015 WL 11237470, at **2-3 (S.D. Cal. Apr. 8, 2015)).

stay rather than dismiss this claim has no merit given that the Court lacks jurisdiction over unripe claims.[12]

## III.   PLAINTIFF'S OPPOSITION CONFIRMS THAT A STAY IS NECESSARY

### A.   Plaintiff Does Not Meaningfully Address the Harm to Canoo That Will Result Absent a Stay

If the Court declines to dismiss this action, the case should be stayed pending resolution of the Securities Actions.  Plaintiff makes much of the harm he contends Canoo suffered from Defendants' alleged unproven conduct, while ignoring the concrete and immediate harm Canoo will suffer by being forced to litigate this case while the Securities Actions are pending.  *See* D.I. 42 at 28-34.  Denying a stay forces Canoo to take "inconsistent positions" and incentivizes Plaintiff to pursue discovery that would undermine the credibility of its witnesses and defense in the Securities Actions.  *Janklow on Behalf of Stericycle, Inc. v. Alutto*, 2018 WL 6499869, at *2 (D. Del. Dec. 11, 2018) (citing *Brenner v. Albrecht*, 2012 WL 252286, at * 4 (Del. Ch. Jan. 27, 2012)).

Plaintiff argues that he will be prejudiced by lost evidence and faded memories if the case is stayed.  D.I. 42 at 28.  To the contrary, Plaintiff may benefit from the Securities Actions proceedings (if the Securities Actions are not dismissed), which are likely to develop the evidence relevant to this case.  Further, any potential harm from delayed litigation is more than outweighed by the harm of forcing Canoo to expend resources on this derivative suit and risk its witnesses for

---

[12]   The Court should not exercise supplemental jurisdiction over Plaintiff's state law claims if the Court dismisses Plaintiff's § 14(a) and contribution claims because Plaintiff only included the Exchange Act claims to circumvent the Delaware Court of Chancery's jurisdiction.  D.I. 38 at 27.  Plaintiff offers no response to this point.  Instead, Plaintiff cites two cases that involved the distinct issue of determining whether jurisdiction existed over *federal* claims.  D.I. 42 at 25 n.7 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 n.3 (2009); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 70 (1978)).  Neither of these cases addresses the discretionary decision of whether to exercise supplemental jurisdiction over a *state-law* claim.

the Securities Action being undermined in this action.  *See* D.I. 38 at 31-32 (collecting cases).[13]

In a last-ditch effort, Plaintiff argues that concurrent prosecution of this action and the Securities Actions will not compromise Canoo's defenses in the Securities Actions because the claims in the Derivative Action and the Securities Actions are purportedly different.  D.I. 42 at 29-30.  Here, the key issues in the Securities Actions and this Derivative Action substantially overlap. *See* D.I. 38 at 31-33.[14]  A stay is necessary to prevent significant harm to Canoo.

### B.       The Stay Will Not Prejudice Plaintiff

As Plaintiff's own authority confirms, derivative plaintiffs stand in for the company and must act "to protect the interests of the corporation."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S.

---

[13]   Plaintiff's string cite of cases purporting to rebut Defendants' contention that these types of cases are routinely stayed, does not change the analysis.  D.I. 42 at 27–28 n.3.  Many of those cases do not even address a motion for a stay, and the few cases that do address motions to stay are not relevant here because the procedural posture in each was different from this case. *See In re CytRx Corp. S'holder Derivative Litig.*, 2015 WL 12745085, at *3 (C.D. Cal. June 25, 2010) (the court had already granted a stay for six months while parallel Delaware litigation proceeded, and only lifted the stay after the Delaware court entered its own stay of the federal issues in that case), *In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.*, No. 4:15-cv-00016-AWA-LRL, ECF No. 22 (E.D. Va.) (Ex. 2) (defendants asked for a stay, or, alternatively, to consolidate the derivative cases with the class action for pre-trial purposes, and the court stayed discovery in the derivative actions "until all motions to dismiss in the derivative actions and the Class Action are resolved."); *In re Community Health Systems, Inc. S'holder Derivative Litig.*, No. 3:11-cv-00489, ECF No. 128 (M.D. Tenn.) (Ex. 3) (motion to stay discovery years after the action was filed, and after the court denied a motion to dismiss).

[14]   For this reason, Plaintiff's cited cases are distinguishable.  For example, the court in *In re Molycorp, Inc. S'holder Derivative Litig.*, 2014 WL 1891384 (Del. Ch. May 12, 2014), lifted a year-long stay where the allegations in the two cases "did not overlap entirely" and plaintiffs filed an amended complaint that modified the relevant allegations, and raised an important question of Delaware law.  *Id.* at **2, 5-7; *see also BNSF Ry. Co. v. FirstEnergy Generation, LLC*, 2017 WL 7512944, at *1 (N.D. Tex. Nov. 27, 2017) (denying the stay because there were "material differences" between the contracts at issue in the cases); *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 2010 WL 3522327, **1-3 (D. Del. Sept. 2, 2010) (involving two patent actions that did not have a factual overlap); *Sonkin v. Barker*, 670 F. Supp. 249, 253-54 (S.D. Ind. 1987) (finding distinct claims in derivative and securities actions); *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1033, 1043 (D. Or. 2015) (finding the overlap between two matters was not yet clear).

90, 95 (1991); *see* D.I. 42 at 7.  It is in the Company's interest to save resources and avoid the prejudice that would result from simultaneous litigation.  *See* D.I. 38 at 30-31 (collecting cases). Canoo is not prejudiced by a stay; it is protected.  Plaintiff relies only on the specter of delay to argue a stay would prejudice Plaintiff.  That is not enough to establish prejudice.  *See In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at *3 (D. Del. July 13, 2018).  Plaintiff's authority again supports Defendants' position here: "A delay in recovering potential monetary damages is not sufficient prejudice to warrant denial of a stay."  *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *43 (C.D. Cal. July 31, 2012) (cited at D.I. 42 at 33).[15]

### C.     Simultaneous Litigation Will Not Conserve Resources or Be Efficient

Plaintiff next argues that allowing the Derivative Action and the Securities Actions to proceed at the same time is more efficient than a stay.  D.I. 42 at 30-33.  This argument defies common sense and applicable case law.  To promote efficiency and economy, courts routinely stay derivative cases based on the same issues as pending securities class actions to avoid duplicative discovery.  *See* D.I. 38 at 34 (collecting cases).  Rather than distinguish these cases, Plaintiff argues that simultaneous litigation is preferable because this action and the Securities Actions are "legally and substantively distinct," and discovery can be coordinated.  D.I. 42 at 30-33.  This is not so.  In fact, Plaintiff concedes that this action and the Securities Actions share common witnesses (*id*. at 28), that Plaintiff's contribution claim turns on resolution of the Securities Actions and, if the Central  District  of  California  court  determines  that  the  defendants  made  no  material

---

[15]  Additionally, the Court should reject Plaintiff's suggestion that a stay would delay corporate controls and governance enhancements.  The basis for relief in this case is the purported breach of fiduciary duties arising from the same core facts alleged in the Securities Actions.  Factual determinations made in the Securities Actions will assist the Court in assessing Plaintiff's claims and issuing relief, if any, at the appropriate time.  The Company does not need this litigation to consider governance reforms (if any are appropriate).

misrepresentations or omissions, then Plaintiff's Exchange Act, fiduciary duty, and unjust enrichment claims in this case all fail. The Securities Actions and the Derivative Action overlap.

Plaintiff's argument that discovery can be coordinated likewise carries no weight. Plaintiff offers no specifics on how coordinated discovery would work, or how it would be efficient to add even more lawyers and defendants and judges to the already expansive case in California. Staying the case offers a simpler resolution: one case that produces key discovery and rulings. And a stay conserves judicial resources because if Canoo prevails in the Securities Actions, there would be no need for discovery in this case.[16] Plaintiff's cited cases do not counsel otherwise.[17]

**D.     The Early Stage of This Litigation Supports a Stay**

Finally, Plaintiff fails to address the District of Delaware cases Defendants cited, which found that the early stage of a derivative action favors a stay pending resolution of a related

---

[16]   In support of his argument, Plaintiff again cites inapposite cases where, unlike here, the allegations in the actions did not substantially overlap. *See In re Universal Health Servs., Inc.*, 2018 WL 8758704, at *1 n.1 (E.D. Pa. Dec. 10, 2018) (derivative action raised claims not at issue in the securities action); *Minerva Surgical, Inc. v. Hologic, Inc.*, 2021 WL 1840645 (D. Del. May 7, 2021) (derivative and securities actions with distinct allegations and resolution of the securities action would not completely resolve the derivative action); *Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*, 2017 WL 495869, at *1 (N.D. Tex. Feb. 7, 2017) (same); *Sonkin v. Barker*, 670 F. Supp. 249, 254 (S.D. Ind. 1987) (same); *Hemostemix, Inc. v. Accudata Sols., Inc.*, 2021 WL 1198137, at *4 (D. Del. Mar. 30, 2021) (same); *Hughes v. Xiaoming Hu*, 2020 WL 1987029, at *8, 17 (Del. Ch. Apr. 27, 2020) (same); *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *27 (Del. Ch. May 21, 2013) (same).

[17]   *See* D.I. 42 at 32 (citing *Galena*, 83 F. Supp. 3d at 1044; *Universal Health*, 2018 WL 8758704, at *1 n.1). In *Galena*, the court found that because the "same judge" was handling both cases, "discovery issues can be resolved in a consistent manner." 83 F. Supp. 3d at 1044. Likewise, in *In Universal Health*, actions were pending before the same judge. 2018 WL 8758704, at *1 n.1. That is not the case here: it makes no sense for this Court to risk inconsistent rulings or duplicate Judge Olguin's work in the Securities Actions. Plaintiff's citation to *In re Am. Apparel, Inc.*, 2012 WL 9506072, at *47, stands only for the point that the court should resolve the pleadings first, before ruling on a stay. *See* D.I. 42 at 33. But that is exactly what Defendants propose here: the Court should first consider Defendants' motion to dismiss in this case, and only then (if necessary) examine whether a stay is appropriate.

securities action.  *See* D.I. 38 at 35.[18]  Plaintiff argues that the fact that the Securities Actions here are also in their infancy weighs against a stay.  D.I. 42 at 33-34.  But none of Plaintiff's cited authority from outside the Third Circuit supports that proposition.  Plaintiff cites a case where the court *granted a stay* of a derivative action when a related securities action was in advanced stages of litigation.  *In re Rh S'holder Derivative Litig.*, 2019 WL 580668, at *3 (N.D. Cal. Jan. 23, 2019).  And Plaintiff cites a case where the court *lifted a stay* that was granted due to appellate delays in a related securities action.  *In re First Solar Derivative Litig.*, 2016 WL 687138, at *1 (D. Ariz. Feb. 19, 2016).[19]  These cases reflect that stays of derivative actions in favor of a related securities action are routine and that the mere delay of derivative litigation does not warrant denying a stay.[20]

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this Derivative Action or, in the alternative, stay any remaining proceedings until the final resolution of the Securities Actions.

---

[18]  Plaintiff argues that Canoo's reliance on *Twitter*, 2018 WL 3536085 is "misplaced" because that case involved a stay for a "limited time period."  D.I. 42 at 32.  The length of the stay, however, was not dispositive of the Court's decision.  Rather, *Twitter* specifically found that a stay delaying the "resolution of litigation . . . alone does not warrant a finding that [p]laintiffs will be unduly prejudiced."  *Id.*  (citation omitted).  All of the factors the court found supported a stay in *Twitter* support a stay here.  *See* D.I. 38 at 29, 32-33.

[19]  Plaintiff also cites cases where, unlike here, defendants moved to stay cases that were in advanced litigation stages.  *Belden*, 2010 WL 3522327, **1-3 (stay request after discovery had been completed and 11 days before trial); *Sonkin*, 670 F. Supp. 249, 253-54 (stay request years after litigation had commenced and discovery had already been coordinated); *Clark v. Lutcher*, 77 F.R.D. 415, 418 (M.D. Pa. 1977) (stay request after a trial date had been set).

[20]  Plaintiff claims that this motion is likely to be decided before briefing begins on a motion to dismiss in the Securities Actions because they are still pending consolidation and appointment of a leadership structure, which "largely eliminat[es] Defendants' efficiency and prejudice concerns."  D.I. 42 at 34.  This is mere speculation and the prejudice to Canoo can only be eliminated by the dismissal or stay of this Derivative Action.  *See supra* § III.B.

OF COUNSEL:

KIRKLAND & ELLIS LLP

Mark C. Holscher, P.C. (*pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
(213) 680-8400
mark.holscher@kirkland.com

David A. Klein (*pro hac vice*)
2049 Century Park East
Los Angeles, CA  90067
(310) 552-4200
david.klein@kirkland.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Martin S. Lessner*
Martin S. Lessner (No. 3109)
Daniel M. Kirshenbaum (No. 6047)
Alberto E. Chávez (No. 6395)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
dkirshenbaum@ycst.com
achavez@ycst.com

*Attorneys for Nominal Defendant Canoo Inc.
and Defendants Tony Aquila, Ulrich Kranz, Paul
Balciunas, Greg Ethridge, Thomas Dattilo,
Foster Chiang, Rainer Schmueckle, Josette
Sheeran, and Debra Von Storch*

OF COUNSEL:

SIDLEY AUSTIN LLP

James W. Ducayet (*pro hac vice*)
Heather Benzmiller Sultanian (*pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
(312) 853 7621
Jducayet@sidley.com
HSultanian@sidley.com

POTTER ANDERSON & CORROON LLP

*/s/ Kevin R. Shannon*
Kevin R. Shannon  (No. 3137)
Jonathan A. Choa (No. 5319)
Christopher N. Kelly (No. 5717)
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000
kshannon@potteranderson.com
jchoa@potteranderson.com
ckelly@potteranderson.com

*Attorneys for Defendants Hennessy Capital
Group LLC, Hennessy Capital Partners IV LLC,
Daniel J. Hennessy, Nicholas A. Petruska,
Bradley Bell, Peter Shea, Richard Burns, James
F. O'Neil III, Juan Carlos Mas, and Gretchen W.
McClain*

Dated: January 21, 2022