**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CLAUDE L. PATTERSON, derivatively on behalf of CANOO INC., f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-907-RGA |
| | ) | |
| DANIEL J. HENNESSY, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| – and – | ) | |
| | ) | |
| CANOO INC., f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV, a Delaware corporation, | ) ) ) | |
| | ) | |
| Nominal Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, to Stay the Action.  (D.I. 37.)  As announced at the hearing on June 3, 2022, I recommend that the motion be GRANTED.  My Report and Recommendation was announced from the bench at the conclusion of the hearing as follows:

> This is my Report and Recommendation on the pending motion to dismiss or, in the alternative, to stay the action in *Patterson v. Hennessy*, C.A. No. 21-907.[1]
>
> I have carefully reviewed the complaint filed by Plaintiff and the parties' briefing on the motion, including the exhibits submitted by Defendants.[2]  No one has suggested that it would be improper for the Court to consider the exhibits, which mostly consist of litigation

---

[1] (D.I. 37.)

[2] (D.I. 38, 39, 42, 43, 44.)

documents and materials filed with the SEC that were referenced in the complaint.[3]

The parties did not request argument on this motion, but I heard a lengthy oral argument yesterday, June 2, 2022.  I will summarize the reasons for my recommendation in a moment.  But before I do, I want to be clear that my failure to address a particular argument does not mean that I did not consider it.  I also note that, while we will not be issuing a separate written recommendation, we will issue a written document incorporating the recommendation that I am about to make from the bench.

For the following reasons, I recommend that the Court grant Defendants' motion to dismiss.

Plaintiff Claude L. Patterson filed this derivative action on June 25, 2021, on behalf of nominal defendant Canoo, Inc. ("Canoo").  Canoo was formed after a merger between Hennessy Capital Acquisition Corp. IV ("HCAC IV") and Canoo Holdings, Ltd. ("Canoo Holdings").

Prior to the merger HCAC IV was a special purpose acquisition company (SPAC)—that is, it was a company formed for the sole purpose of acquiring an existing business, sometimes referred to as a "blank check" company.[4]  On August 18, 2020, HCAC IV announced that it had entered into a merger agreement (the "Merger") with Canoo Holdings.[5]  In connection with the Merger announcement, HCAC IV and Canoo Holdings filed a registration statement on SEC Form S-4, which included a solicitation of HCAC IV shareholder proxies to approve the Merger (the "Proxy Statement").[6]

---

[3] *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint . . . and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))).

[4] (D.I. 1 ¶ 2.)

[5] (*Id.* ¶¶ 5, 74.)

[6] (*Id.* ¶¶ 100–03; *see also* D.I. 39, Ex. 12 (Proxy Statement excerpts); Hennessy Capital Acquisition Corp. IV, *Form S-4: Registration Statement* (Sept. 18, 2020), https://www.sec.gov/Archives/edgar/data/1750153/000121390020027400/fs42020_hennessycapital4.htm.

The proxy statement disclosed various information about Canoo. It described Canoo as an electric vehicle company with a modular "skateboard" technology platform to facilitate electric vehicle development.[7] The proxy also stated that Canoo had an "engineering and technology services" business that "covers material consulting and contract engineering work" done by the company.[8] According to the proxy, "Contract Engineering services offer a separate revenue stream and validate the quality of our technology."[9]

Relevant to this case, the proxy also stated the following:

(1) "The [engineering and technology services] business offers a unique opportunity to generate immediate revenues in advance of the offering of our first vehicles and our current pipeline in this area is supportive of a projected $120 million of revenue in 2021";[10] and

(2) "In February 2020, Hyundai Motor Group entered into an agreement with Canoo to co-develop a future EV platform based on Canoo's modular and scalable skateboard technology, providing further validation of Canoo's technical leadership and external confidence in its commercial prospects."[11]

The Proxy Statement was amended on November 25, 2020.[12] The Merger was approved at a shareholder meeting on December 21, 2020.[13]

On January 13, 2021, Canoo filed a Shelf Registration Statement on Form S-1 with the SEC. It contained similar

---

[7] (D.I. 39, Ex. 12 at 170.)

[8] (*Id.* at 177.)

[9] (D.I. 1 ¶ 102; D.I. 39, Ex. 12 at 180.)

[10] (D.I. 39, Ex. 12 at 170.)

[11] (*Id.* at 163.)

[12] (D.I. 39, Ex. 10.)

[13] (D.I. 1 ¶¶ 12, 79.)

statements about the engineering and technology services business and the partnership with Hyundai.[14]

On March 29, 2021, Canoo announced its 2020 fourth quarter and full year financial results. Those results indicated that the engineering and technology services business had zero revenue during Q4.[15] Also on March 29, 2021, defendant Tony Aquila, Executive Chairman of Canoo, announced during an earnings conference call with analysts and investors that the Company had decided to "de-emphasize [its] contract engineering services line" and had placed its arrangement with Hyundai "on hold."[16]

Following that news, Canoo's stock crashed more than 21% in a single day.[17] Three separate shareholder securities fraud actions were filed in California.[18]

Plaintiff filed this derivative action on June 25, 2021. The complaint has four counts: Count I is a claim under Sections 14(a) and 20(a) of the Exchange Act;[19] Count II seeks contribution under Section 21D of the Exchange Act[20] against defendants named as defendants in the shareholder securities fraud actions; Count III is a state law breach of fiduciary duty claim against individual defendants; and Count IV is an unjust enrichment claim against individual defendants.

Defendants have moved to dismiss this action or, in the alternative, to stay it pending resolution of the California securities actions.[21]

---

[14] (*Id.* ¶¶ 17–21; D.I. 39, Ex. 13 at 174, 181.)

[15] (D.I. 1 ¶¶ 24, 111.)

[16] (*Id.* ¶¶ 25, 112–13.)

[17] (*Id.* ¶¶ 26, 119.)

[18] *Blake v. Canoo Inc.*, No. 21-2873 (C.D. Cal.); *Tyler v. Canoo Inc.*, No. 21-3080 (C.D. Cal.); *Kojak v. Canoo Inc.*, No. 21-2879 (C.D. Cal.).

[19] 15 U.S.C. §§ 78n(a), 78t(a).

[20] 15 U.S.C. § 78u-4(f).

[21] (D.I. 37.)

I am not going to read into the record the law that applies to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  My understanding of the law is set forth in my recent *Pattern Energy* decision, and I incorporate it by reference.[22]

This is a derivative suit brought on behalf of Canoo, which means that Plaintiff seeks to displace the Canoo board's decision-making authority over whether to bring this suit.  Under Delaware law, a stockholder seeking to maintain a derivative suit must either (1) make a demand on the company's board of directors or (2) show that demand would have been futile.[23]

In addition, the complaint needs to comply with Federal Rule of Civil Procedure 23.1, which requires derivative plaintiffs to plead "with particularity" efforts made to obtain the desired action from the board as well as the reasons such action was not obtained or such efforts were not made.[24]

---

[22] *In re Pattern Energy Grp. Inc. Sec. Litig.*, No. 20-275-MN-JLH, 2022 WL 263312, at *6 (D. Del. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL 957761 (Mar. 30, 2022).  A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint, I must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

[23] *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021).

[24] Fed. R. Civ. P. 23.1(b)(3); *Kantor v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

Plaintiff did not make a pre-suit demand. Accordingly, plaintiff was required to plead with particularity why demand is excused as futile under Delaware law.[25]

The Delaware Supreme Court recently set forth a three-part test for assessing whether demand should be excused as futile. As set forth by the Delaware Supreme Court,

> courts should ask the following three questions on a director-by-director basis when evaluating allegations of demand futility:
>
> > (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
> >
> > (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
> >
> > (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are subject of the litigation demand.[26]

For purposes of demand excusal, we look at the board of directors as constituted when the lawsuit was filed.[27]  If the answer to any of the *Zuckerberg* questions is "yes" for at least half of the members of the demand board, then demand is excused as futile.[28]

There were nine members on the demand board at the time Plaintiff filed this action, only seven of which are named as

---

[25] *Kanter*, 489 F.3d at 176 ("[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused.").

[26] *Zuckerberg*, 262 A.3d at 1059.

[27] *See id*. at 1048.

[28] *Id.* at 1059.

defendants.  Plaintiff does not allege that any of the nine members of the demand board lack independence under *Zuckerberg* question 3.

Plaintiff only alleges that two members of the demand board (Ethridge and Aquila) have a "yes" answer to question 1.  But I'm not even going to address question 1 because Plaintiff still needs to demonstrate that at least three additional members of the demand board have a "yes" answer to question 2, and I conclude that he has failed to do so.

Again, question 2 asks whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand.  Only two directors (Ethridge and Aquila, the same directors that Plaintiff says have a "yes" to question 1) are named as defendants in the federal claims (the assertion of which is the reason this case is in federal court instead of state court).  Plaintiff doesn't dispute that if only the federal claims were asserted, Plaintiff could not show demand futility and the case would have to be dismissed.

However, Plaintiff contends that he has adequately alleged that at least three additional directors face a substantial likelihood of liability with respect to the state law claim for breach of fiduciary duty.  It was clarified during the course of briefing and oral argument that Plaintiff's theory on the fiduciary duty claim is that the board members knowingly made (or caused) misleading statements.  This type of claim is referred to as a *Malone* claim.[29]

Putting aside Ethridge and Aquila, and putting aside the two members of the demand board who aren't named as defendants, there are five members of the demand board left, so the complaint needs to plead with particularity that at least three of those five knowingly disseminated or permitted misleading statements.

There is no dispute that those five board members did not become board members until after the merger in December 2020.  There is also no dispute that the only challenged statements that occurred after the merger are the statements in the January 13, 2021 SEC Form S-1 Registration statement that Canoo's engineering and technology services business was "supportive of a projected $120 million of revenue in 2021" and a "strategic pipeline for future business opportunities," and that "[i]n February 2020, [Canoo]

---

[29] *See Malone v. Brincat*, 722 A.2d 5 (Del. 1998).

entered into an agreement with Hyundai [] to develop a future EV platform . . . ."[30]

Plaintiff contends that those statements are false and misleading because, at the time they were made, Canoo "had already, or was in the process of, abandoning [sic] its engineering and technology services business, . . . was no longer generating engineering and technology services revenues, [and] had already, or was in the process of, curtailing [sic] its arrangement with Hyundai."[31]

The biggest problem for Plaintiff is that his theory depends entirely on his assertion that Canoo had in fact abandoned its engineering and technology services business prior to the filing of the S-1 registration statement, but Plaintiff's complaint does not contain factual content that allows the Court to draw that inference.[32]   Plaintiff points to the fact that Canoo announced in March 2021 that it had decided to "de-emphasiz[e]" its engineering and technology services business and that its agreement with Hyundai was "on hold."[33]   But that doesn't suggest that either of those things had been decided before the S-1 was filed in January 2021.

Plaintiff also points to the fact that Canoo revealed in March 2021 that it did not record any revenue for its engineering and technology services business for Q4 2020.  According to Plaintiff, that suggests that Canoo abandoned that business even before the beginning of Q4 2020.  I disagree.  As Defendants point out, the same S-1 filing on which Plaintiff relies also explained to shareholders that, under GAAP, Canoo recognized revenue only when it "satisfie[d] the performance obligations" of an engineering services contract.[34]   And while the S-1 stated that its engineering and technology services business was "supportive of a projected

---

[30] (D.I. 1 ¶¶ 17–21; D.I. 39, Ex. 13 at 174, 181.)

[31] (D.I. 1 ¶ 83.)

[32] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

[33] (D.I. 1 ¶¶ 25, 112–113.)

[34] (D.I. 44-1, Ex. 1 at F-33.)

$120 million of revenue in 2021" there was nothing to suggest that Canoo was expecting to record revenue in that business in Q4 2020.[35]

Plaintiff points out that Canoo had recorded revenue in its engineering and technology services business earlier in 2020. According to Plaintiff, the fact that Canoo recorded zero revenue in Q4 after booking revenue in the first three quarters leads to a plausible inference that the company had "abandoned" that business prior to Q4.

I disagree.  Notwithstanding the S-1's projection of $120 million in service revenue for 2021, that same S-1 filing disclosed that the company had only recorded $2.55 million in service revenue in the first three quarters of 2020 and that all of that revenue related to a single performance obligation, which had been satisfied in July 2020 when the company had provided the final report to the customer.  Contrary to the picture Plaintiff is trying to paint, this is not a situation where a company had a steady flow of cash coming in the door for a particular business that abruptly stopped.

And there are no other allegations suggesting that the board had discussed at any time prior to the S-1 the de-emphasis of the engineering services business or putting the relationship with Hyundai on hold.

In short, I agree with Defendants that the complaint fails to plead facts supporting Plaintiff's assertion that Canoo had abandoned its engineering services business or Hyundai opportunity at the time of the January 2021 S-1.  Plaintiff's breach of fiduciary duty claim is based entirely on that assertion and there are insufficient pleaded facts to support it.  For that reason, the complaint fails to demonstrate that at least three additional board members face a substantial likelihood of liability on Plaintiff's breach of fiduciary duty claim.

During the hearing, Plaintiff agreed that his argument in support of demand futility on his unjust enrichment claim rises or falls with his argument about demand futility on his breach of fiduciary duty claim.

Plaintiff has failed to plead particularized facts showing that demand should be excused as futile.  The complaint should therefore be dismissed.

---

[35] (D.I. 39, Ex. 13 at 174.)

I have carefully considered the remaining arguments made by the parties and have determined that they do not warrant further discussion in light of the conclusions already stated. In other words, I do not need to reach and therefore won't spend additional valuable Court time and resources addressing Defendants' additional arguments in support of dismissal, but I will say that there are other meritorious bases for dismissing and/or declining to exercise jurisdiction over Plaintiff's claims.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

**It is FURTHER ORDERED that if Plaintiff objects to any part of this Report & Recommendation, Plaintiff shall accompany his objection with a one-page letter to the Court setting forth whether he intends to amend his pleading if the Court adopts this Report & Recommendation and why that amendment would not be futile. Defendants may file a one-page response letter at the same time as their responses to Plaintiff's objections.**

Dated: June 21, 2022

_____
The Honorable Jennifer L. Hall
United States Magistrate Judge

10